# IN THE UNITED STATES DICTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RECEIVED
MAY 26 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05 - 332

**TIMOTHY N JOYNES,   PRO SE**
**55 WEST CHESTNUT HILL ROAD**
**APARTMENT # 5**
**NEWARK, DE 19713-2264**
    **(302) 737-0783**

**QUESTIONS PRESENTED FOR REVIEW**

1

The Purpose of this civil complaint is to challenge if the State of Delaware denied the Plaintiff his due process rights as guaranteed by the Fourteenth Amendment.

Did the Defendants listed in this complaint subject the Plaintiff to a life of a Peon, which is a direct violation of the Thirteenth Amendment, and of 18 U.S.C 1581 and 1584?

Did the Defendants deny the Plaintiff to the right to effective counsel and an impartial judge, as required by the Sixth Amendment?

Did the State of Delaware enact laws that discriminate against a class of citizens [Bill of Attainder], to exact punishment on them, without a due process hearing, a second violation of the Fourteenth Amendment?

Did the State of Delaware establish the Delaware Ad Hoc Committee to make the Rules of Support and incorporate them into law, a violation of the Separation of Powers Doctrine as provided in The United States Constitution?

Did the Delaware Ad Hoc Committee hold closed door meetings, which is a violation of the Administrative Procedures Act, as codified 5 U.S.C. 552B, to establish guidelines that are null and void under the guarantee of family privacy in Amendment Fourteen because they needlessly intrude upon the discretion of parents to raise their children as they see fit, once their reasonable needs have been met?

| TABLE OF CONTENTS | PAGE |
| --- | --- |
| PARTIES | 1 |
| JURISDICTION | 3 |
| PLAINTIFF | 4 |
| DEFENDANTS | 4 |
| CONSTITUTIONAL SOVEREIGNTY | 11 |
| FACTS AS TO THE PLAINTIFF | 13 |
| FEDERAL CAUSES OF ACTION | 37 |
| MOTION TO ENLARGE ORIGINAL COMPLAINT TO INCLUDE A CONSTITUIONAL CHALLENGE | 46 |

**CONCLUSION**        **56**

## FEDERAL CASES

| | | |
|---|---|---|
| Mitchum vs Foster | 407 US 225 | (1972) |
| Lugar vs. Edmonson Oil Co. | 457 US 9 | (1982) |
| Haines vs. Kemer | 404 US 519 | (1972) |
| Jenkins vs. Mckeithen | 395 US 411 | (1969) |
| United States vs. Guest | 383 US 745 | (1966) |
| Fitzpatrick vs. Bitzer | 427 US 445 | (1976) |
| Ex-parte Virginia | 100 US 339 | (1879) |
| Monell vs. NYC Dept. of Social Svcs. | 436 US 657 | (1978) |
| Gomez vs. Toledo | 446 US 635 | (1980) |
| Foman vs. Davis | 371 US 178 | (1962) |
| Wallace vs. affree | 472 US 38 | (1985) |
| Reynolds vs. Babyfold, Inc. | 435 US 963 | (1977) |
| Quilloin vs. Walcott | 434 US 246 | (1978) |
| Stanley vs. Illinois | 405 US 645 | (1972) |
| Smith vs. Organization of foster Fam. | 431 US 816 | (1977) |
| Craig vs. Boren | 429 US 190 | (1976) |
| Frontiero vs. Richardson | 411 US 677 | (1973) |
| Boddie vs. Connecticut | 401 US 371 | (1971) |
| Dunn vs. Blumstein | 405 US 330 | (1972) |
| Ankenbrandt vs. Richards | 504 US 68 | (1992) |
| Roe vs. Wade | 410 US 113 | (1973) |
| Cohen vs. Chesterfield County Sch. Bd. | 414 US 632 | (1974) |
| Communist Party vs. Subversive Activities | 367 US 1,6 | (1961) |
| Bailey vs. Alabama | 219 US 219 | |
| (1911) | | |
| Bigelow vs.Virginia | 421 US 809 | (1975) |
| US vs. Brown | 381 US 303 | (1946) |
| May vs. Anderson | 345 US 528 | (1953) |
| Pierson vs. Ray | 386 US 547 | (1967) |
| Reed vs. Reed | 404 US 71 | (1971) |
| Goldberg vs. Kelly | 397 US 254 | (1970) |
| Stanton vs. Stanton | 421 US 76 | (1975) |
| Califano vs. Webster | 430 US 313 | (1977) |
| Weinberger vs. Weisenfeld | 420 US 636 | (1975) |
| Shapiro vs. Thompson | 394 US 618 | (1969) |
| Orr vs. Orr | 440 US 268 | (1979) |
| US vs. Reynolds | 235 US 133 | (1914) |

## UNITED STATES DISTRICT COURT CASES

| | |
|---|---|
| Westberry vs. Fisher | 309 F Supp 95 |
| Doe vs. Irwin | 441 F Supp. 1247 |
| Weinberger vs. Weisenfeld | 95 S Ct 1225 (1975) |
| Santiago vs. Philadelphia | 435 F Supp. 136 |
| Gregoire vs. Biddle | 177 F 2d 579 |
| Carter vs. Philadelphia | 181 F 3rd 339 Fed R Serv. 3d 915 (1999) |

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In The Matter Of:


**Timothy N Joynes**
Plaintiff

       Vs.


**Vincent P Meconi**
Secretary,
Delaware Health and Social Services

**Charles E Hayward**
Director,
Delaware Division of Child Support Enforcement

**The Honorable Martha Sackovich**
Commissioner,
State of Delaware Family Court: New Castle County, Delaware

**The Honorable Mary Ann Herlihy**
Commissioner,
State of Delaware Family Court: New Castle County, Delaware

**The Honorable Judge Jay H Conner**
Judge,
State of Delaware Family Court: New Castle County, Delaware

**Christopher Spizzirri**
Deputy Attorney General
State of Delaware Department of Justice

**Stephanie Fitzgerald**
Mediator,
State of Delaware Family Court: New Castle County, Delaware

**The Family Court of The State of Delaware**

**Delaware Department of Health and Social Services**

**State of Delaware Division of Child Support Enforcement**

**State of Delaware Department of Justice**

**State of Delaware Judiciary**

**State of Delaware**

**Delaware Support Formula Ad Hoc Committee**
Honorable Vincent J Poppiti, Chief Judge
Honorable Patricia Blevins
Honorable Robert J Valihura Jr Esq.
Peter S Feliceangeli, Esq.
Andrew Haman
Commissioner Joelle Hitch
Commissioner Andrew T Horsey
Janine Howard, Esq.
Alisa Mawson
Ellen Meyer, Esq.
Commissioner Andrew K. Southmayd
Mona Steele
Barbara E. Corrozi

**Honorable Ruth Ann Minner**
Governor, State of Delaware

**Denise Lewis**
Spouse

**Christine K Demsey**
Attorney for Denise Lewis

Defendants

**VERIFIED COMPLAINT AND AFFIDAVIT UNDER OATH
AND JURY DEMAND ON ALL COUNTS**

**COMES NOW,** the Plaintiff in the above styled action and complains and alleges the following Torts and Public Offenses:

1.     I am Timothy N. Joynes and do swear, under oath, the following complaint is true and correct. This complaint is based on my personal knowledge of the essential facts as contained in this affidavit.

2.     Plaintiff hereby motions this Honorable Court to subpoena and review all documents contained in the "social files" in <u>Denise Lewis/DCSE vs.Timothy N Joynes CN02-06855</u> and <u>Timothy N Joynes vs. Denise Lewis/DCSE CPI 04-27865 and CPI 03-36757</u> for violations of Federal Criminal Laws and Statutes.

3.   Plaintiff also compels the United States Attorney General to investigate the embezzlement of the interest made from collections (public money) by the State of Delaware.

4.   Plaintiff hereby files this motion to compel the United States Attorney General to do their duty to investigate the allegations contained in this Civil Action for violations of Federal laws. The violations are incidents that resulted in damages to the plaintiff and are claims upon which the Court may issue orders for redress and remuneration. That this Court compels the United States Attorney General to determine if a probable cause hearing should be scheduled and that the United States enter this action as a plaintiff to protect the Constitutional Rights of Plaintiff, and to prosecute crimes against the "Public and National Interest." The District Court, through the United States Attorney General, to the Federal Bureau of Investigations, has the authority to order an investigation to be conducted of the violations of Federal Criminal Laws. If the violations are confirmed, then the Court has a mandate to compel the United States Attorney General to enter this action as a plaintiff on behalf of the citizens of the United States. The Court has a mandate under 42 USC 2000h-2 to certify these facts to the United States Attorney General. These violations are also considered by the plaintiff to be actual "incidents and causes of action" for which damages have been suffered by the Plaintiff and restitution is warranted. The Federal Bureau of Investigation has jurisdiction over the investigation of the court, fraud, embezzlement of monies in a Federal financial assistance program, and civil rights violations. In 1996, the **FBI** brought 2,108 counts against defendants for 18 USC 242, violations for "deprivation of rights under color of law," therefore establishing jurisdiction over this case. That same year, the FBI brought 554 counts against defendants for "conspiracy against civil rights" therefore establishing jurisdiction over this case. Also in 1996, the FBI  brought 854 counts against defendants for "conspiracy to defraud the United States," therefore establishing jurisdiction over this case. Jurisdiction of this court is authorized by Federal Rules of Civil Procedure 18(a) and arises under the doctrine of pendent jurisdiction set forth in Mine Workers  V.  Gibbs 383 US 715 (1966). Jurisdiction of this court also arises under 28 U.S.C. Secs. 1331,1332, 1343,1443, and 1367(a), 42 U.S.C. 1983,1985,18 U.S.C. 1961-1968, and 18 U.S.C. 241. The Civil Rights Division-The Special Litigation Section has the jurisdiction to investigate state and local enforcement agencies alleged in engaging in a pattern of violating citizen's federal rights and deprivation of rights under the color of law, and may bring civil lawsuits to remedy such abuses. The State of Delaware, Delaware Division of Child Support Enforcement, The Family Court of The State of Delaware and The State of Delaware Department of Justice as financed with Federal funds have incarcerated and/or threaten to incarcerate citizens at will regardless of Federal Civil Rights Violations.

5.   The District Court and "all courts" have a mandate to report "evidence of criminal activity" discovered during litigation to the appropriate enforcement agency. The United States Attorney General is the appropriate agency to enter into this action in behalf of the Plaintiff and the United States. The Plaintiff has a "due process and constitutional right" to report criminal activities against the United States and to have them investigated. The United States Attorney General owes the Plaintiff the right (as a

U.S. citizen), to face alleged perpetrators of crimes against the Plaintiff and the United States and to receive restitution in the form of monetary and penal actions.

6.    The Federal Court Judges have the authority to set aside or overturn state courts in order to preserve constitutional rights.    MITCHUM  V.  FOSTER  407 US 225 (1972) , and  LUGAR  V.  EDMONDSON  OIL  CO.  457 U.S. 9 (1982).

7.    Plaintiff hereby states that this civil action is not, at this time, a class action, nor is it currently a criminal action until the United States Attorney General enters into the action as a Plaintiff for the United States. The Plaintiff reserves the right to change the nature of this action in future filings to join others into it as a class action.

8.    Plaintiff incorporates by reference paragraphs 1-7, as set forth in their entirety herein.

Timothy N Joynes of Newark, Delaware in his full capacity as an individual asserts the following claims against the Defendants in the above titled action:

(1.) Violation of 42 U.S.C. 1985; (2.) Violation of 42 U.S.C. 1983;  (3.) Violation of 42 U.S.C.1981; (4.) Civil Rico; (5.) Violation of 18 U.S.C. 241; (6.)  Violation of 18 U.S.C 1503; (7.) Violation of 18 U.S.C. 1512(b)(c)(d); (8.) Intentional Infliction of Emotional Distress; (9.) Negligent  Infliction of Emotional Distress; (10.) Violation of 18 USC 1581; (11.) Violation of 18 USC 1584; (12.) Violation of 18 USC 1589.

### PLAINTIFF

9.    **Plaintiff, Timothy N Joynes,** is a natural person, residing at 55 West Chestnut Hill Road, Newark, Delaware, United States of America, a U.S. and Delaware resident during all times relevant to this action.

### DEFENDANTS

10.    **Defendant, Vincent P Meconi,** 1901 N Dupont Hwy. New Castle, DE 19720, is the Secretary of the Delaware Health and Social Services during all relevant times of this action. He is responsible for the administration of social programs in the State, including the administration of the Child Support Enforcement program. Whereas, Defendant is sued individually and in his official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the Plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which he by reasonable diligence could have prevented.

11.    **Defendant, Charles E Hayward,** 84A Christiana Road, New Castle, DE 19720, is the Director of the Division of Child Support Enforcement during all relevant times of this action. He is responsible for overseeing the Child Support Enforcement

Agency program administration and implementation in the State of Delaware. Whereas, Defendant is sued individually and in his official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the Plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which he by reasonable diligence could have prevented.

12. <u>**Defendant, The Honorable Martha Sackovich,**</u> is a Commissioner of The State of Delaware Family Court during all times relevant of this action. Whereas, Defendant is sued individually and in her official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That she had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

13. <u>**Defendant, The Honorable Mary Ann Herlihy,**</u> is a Commissioner of The State of Delaware Family Court during all times relevant of this action. Whereas, Defendant is sued individually and in her official capacity, Wherein, it is alleged while cloaked " under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That she had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

14. <u>**Defendant, The Honorable Judge Jay H Conner,**</u> is a State of Delaware Family Court judge during all times relevant of this action. Wherein, it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

15. <u>**Defendant, Christopher Spizzirri,**</u> is a Deputy Attorney General for the State of Delaware Department of Justice during all times relevant of this action. He is responsible for prosecuting cases for the Division of Child Support Enforcement for The Family Court of The State of Delaware. Wherein, it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That he prosecutes cases without having full knowledge of the facts as required by the Federal Rules of Evidence 602 & 603, harassing, obstructing and suppressing pro-se litigants by denying them due process rights, making false statements to influence the judiciary, and having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

16. **Defendant, Stephanie Fitzgerald,** is a Mediator for the State of Delaware Family Court during all times relevant of this action. She is responsible for establishing child support orders for the State. Wherein, it is alleged while cloaked "under the color of law," harassed and suppressed plaintiff's due process rights, makes court procedures as difficult as possible, doctors child support formulas in favor of custodial parent (prejudice), treats custodial and non-custodial parents differently, fails to establish child support orders as per established guidelines and discriminates against the plaintiff because he is a man. This defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or doing the same, neglected or refused to do that by which by reasonable diligence could have prevented.

17. **Defendant, The Family Court of The State of Delaware,** is a court of the state judiciary that has extensive jurisdiction over all domestic relations including divorce, custody, child and spousal support and property division. This branch of the state judiciary is at all times relevant of this action. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that, "under the color of law," the Defendant willfully classifies and treats fathers and mothers differently, though similarly situated if not the same (gender discrimination), with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose, in dealing with support of children conceived between parents. This court has a history of showing unconstitutional favoritism toward mothers and denying fathers equal protection as required by the 14th amendment of the Constitution of The United States. This Defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or doing the same, neglected or refused to do that by which by reasonable diligence could have prevented. This court has been able to change their rules of civil procedures designed to deny non-custodial parents (mostly fathers), the right to substantive and procedural due process. This Defendant uses grants of Federal financial assistance to suppress, obstruct and deny the Plaintiff's civil rights.

18. **Defendant, Delaware Department of Health and Social Services,** 1901 N Dupont Hwy. New Castle, DE 19720, is an agency that provides health and other services to the citizens of the State of Delaware. One of its responsibilities is operating the Child Support Enforcement Program known as The Division of Child Support Enforcement. This Agency is also responsible for ensuring that the Child Support Enforcement program complies with the Federal Statues and Regulations and that it conforms to Title IV-D of The Social Security Act. This agency is responsible for assuring the protection of all civil rights of litigants involved. This Agency has appointed the Delaware Department of Justice to represent their interest in The State of Delaware Family Court and deny non-custodial parents Due Process and Civil Rights as guaranteed by the Constitution of The United States. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that under "the color of law," denied non-

custodial parents the full due process requirements of our Constitution. The motivational factor behind this Defendant's Civil and Constitutional Rights violations against the Plaintiff is to assure the continuation of Federal money received for operating the child support program. This agency does not have to show that they actually collect child support due. They would just have to show the dollar amount of established cases, therefore allowing them to increase the amount of Federal money received for enforcement, in violation of 18 U.S.C. 641, 648 and 666.

 19. **Defendant, State of Delaware Division of Child Support Enforcement,** 84A Christiana Road, New Castle, DE 19720, is an agency of the State of Delaware Department of Health and Social Services. They are responsible for administering the Child Support Enforcement Program for the State of Delaware as required by Title IV-D of The Social Security Act. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States; wherein it is alleged that, "under color of law," willfully classifies and treats mothers and fathers differently, establishing on presumption two classes of families (custodial and non-custodial) though similarly situated, with no apparent compelling state interest or interest in law, or any rational basis to legitimate state purpose, in dealing with support of a minor child and making the assumption that the custodial parent is providing all the needs of the child and the non-custodial parent is not, and denying the non-custodial parent due process as required by 42 U.S.C. 666. This Defendant has appointed the Delaware Department of Justice to represent their interest in the State of Delaware Family Court and deny non-custodial parents Due Process and Civil Rights as guaranteed by The Constitution of The United States.

 20. **Defendant, Delaware Department of Justice,** is a department of the State of Delaware. Their functions within the state is to provide successful prosecution of violations of criminal law, provide legal services to state agencies, officials, and instrumentalities, and to protect the public against fraud and deceptive trade practices. This branch of the state government is at all times relevant of this action. Whereas, this defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that, "under the color of law," willfully prosecutes cases without having full knowledge of the facts as required by the Federal Rules of Evidence 602& 603, harassing, obstructing and suppressing pro-se litigants by denying due process rights, making false statements to influence the judiciary, and having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in the preventing the same, neglected or refused to do that by which reasonable diligence could have prevented. This agency uses grants of Federal assistance to suppress, obstruct and deny the Plaintiff's civil rights. This Defendant willfully classifies and treats fathers and mothers differently, though similarly situated if not the same (gender discrimination) with no compelling state interest, interest in law, or any rational basis to a legitimate state purpose.

 21. **Defendant, State of Delaware Judiciary,** operates several courts, including the Supreme Court, Court of Chancery, Superior Court, the Family Court, the

Court of Common Pleas, the Justice of The Peace Court, and related judicial agencies. Whereas, the Defendant is sued for cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that "under the color of law," the Defendant willfully classifies and treats fathers and mothers differently, though similarly situated if not the same,(gender discrimination), with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose. Whereas, this judiciary uses Federal funds to suppress, obstruct and deny the plaintiff's rights as guaranteed by the 14th Amendment of the Constitution; and having the power to prevent or aid in preventing the same, neglected or refused to do that by which reasonable diligence could have prevented.

22. **Defendant, State of Delaware, Dover, Delaware,** is at all times relevant to this complaint. Whereas this Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of the United States wherein it is alleged that, "under the color of law," treats mothers and fathers differently, though similarly situated if not the same, with no apparent compelling state interest or interest in law, or any rational basis to a legitimate purpose, in dealing with child support and custody. Because of this classification and the use of vague and ignorant rules and laws pertaining to child support and custody, denied the Plaintiff of Procedural and Substantive Due Process of law under when it involves the deprivation of life, liberty, property, protection of the family, reputations and happiness. The Plaintiff was denied a due process hearing as required by the 6th amendment. The motivational factor behind this Defendant's Civil and Constitutional Rights violations is to insure the continuation of Federal money received for operating the Child Support Program; the greater the support obligation, the greater the subsidy. This Defendant has full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in the preventing the same, neglected or refused to do that by which reasonable diligence could have prevented.

23. **Defendant, Delaware Support Ad Hoc Committee,** is a committee established by the State of Delaware Family Court Division. This Committee is responsible for and is charged with reviewing and updating the child support guidelines in accordance with the guidelines that are set forth in Federal Regulations 45 CFR 302.56. This regulation requires that all states must have in effect guidelines for establishing and modifying child support orders within the state. This committee is at all times relevant to this complaint. The Delaware Ad Hoc Committee are sued individually and in their official "court appointed" capacity wherein it is alleged, while "cloaked under the color of law," caused the deprivation of Plaintiff's civil rights and privileges secured by the United States Constitution. That they, having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that by which they by reasonable diligence could have prevented. This Committee was delegated the authority and responsibility by the State of Delaware to deny the Plaintiff's Civil and Constitutional Rights. They have been able to establish vague and ignorant rules and laws pertaining to child support and to establish 2 classifications of families, custodial and non-custodial families, and treats each of them

differently, though similarly situated if not the same, with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose. The motivational factor behind these Defendants' Civil and Constitutional Violations is to insure the continuation of Federal money received. This Committee uses grants of Federal financial assistance to suppress, obstruct and deny the Plaintiff's civil rights. This Committee is fully aware that discrimination is prohibited in Federal financially assisted programs as alluded to in 42 U.S.C. 2000d.

24. **Defendant, The Honorable Governor Ruth Ann Minner,** was at all times relevant to this complaint. Whereas, Defendant is sued individually and in her official capacity, wherein it is alleged that while cloaked "under the color of law," caused the deprivation of the Plaintiff's civil rights and privileges secured by the United States Constitution. That she having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented. This Defendant was informed of the potential Civil Rights Violations against the Plaintiff, but chose to pass her responsibility to Charles Hayward and Vincent Meconi, and condone and conspire with them to deny Plaintiff his rights and liberties as guaranteed by the Constitution. This Defendant approved the State of Delaware child support plan and submitted for approval to the Secretary of the U.S Department of Health and Social Services Office of Child Support Enforcement.(45 CFR 301.12 and 45 CFR 301.13). This Defendant is also in the position and has a constitutional mandate to protect the "civil rights" of the Plaintiff, but instead ignored her responsibility to the Citizens of the State of Delaware and made a conscientious decision not to. Her main concern was to protect the "Block Grants" from the Federal funds and using Plaintiff's son as a pawn to obtain these funds, regardless of Plaintiff's civil rights or Federal law violations. Because of her actions, the Plaintiff suffered emotional distress, deprivation of life, liberty, property, and reputation. This Defendant has allowed the State of Delaware Judiciary to willfully discriminate between two classes of families, custodial and non-custodial, and to deny the non-custodial parents substantive and procedural due process, in order to assure the continuation of the Federal money. This Defendant uses grants of Federal assistance to suppress, obstruct and deny the Plaintiff's civil rights.

25. **Defendant, Denise Lewis,** 84 Freedom Trail, New Castle, Delaware 19720, is at all times relevant to this complaint. Whereas this Defendant is sued individually wherein it is alleged while cloaked "under the color of law," caused the deprivation of the Plaintiff's Civil Rights. This Defendant employed the use of The Division of Child Support Enforcement, The Family Court of the State of Delaware and The Delaware Department of Justice to deny the Plaintiff's civil rights as guaranteed by the Constitution of the United States. That she had the full knowledge of the wrongs conspired to be done as allude to in 42 U.S.C. 1985, or wrongs about to be done, and having the power to prevent or aid in the preventing the same, neglected or refused to do that which by reasonable diligence could have prevented. This Defendant is the spouse of the Plaintiff. As of the date of this filing, this Defendant is neither divorced nor separated from the Plaintiff. Spouses can sue each other while still married for torts, intentional and

unintentional. (Bluns v. Caudle 560 SW 2d 925 TX 1978.) By this Defendant's actions, she caused the State of Delaware to deny the Plaintiff his civil rights as guaranteed by the Constitution of The United States, and caused the Plaintiff to suffer emotional distress, deprivation of life, liberty, property and reputation. This Defendant allowed the State of Delaware to willfully discriminate between 2 classes of families, custodial and non-custodial, and deny the Plaintiff substantive and procedural due process.

26. **Defendant, Christine K Demsey,** 1328 King Street, Wilmington, DE 19801 is at all times relevant to this complaint. Whereas this Defendant is sued individually wherein it is alleged while cloaked "under the color of law," caused the deprivation of Plaintiff's Civil Rights as guaranteed by the Constitution of the United States. This Defendant became part of this civil complaint when she appeared in The State of Delaware Family Court on January 11th, 2005 to represent defendant Denise Lewis. A review of her lawyer profile revealed that she had been admitted to the Delaware and Pennsylvania Bar in 1982. For over 22 years she has specialized in family law, adoption, child custody, and child support. Now she appears as a defendant because of her willful continuation of the deprivation of Plaintiff's civil rights. This Defendant willfully prosecutes cases without having full knowledge of the facts as required by The Federal Rules of Civil Procedure 602& 603, harassing and obstructing the Plaintiff's due process rights. This Defendant has influenced the Family court by interfering with the Plaintiff's right to raise his child as he sees fit. "As long as a defendant who abridges a plaintiff's constitutional rights pursuant to a statute of local law which empowers him to commit the wrongful act, an action under the Federal Civil Rights statute is established."-Laverne vs. Corning, 316  F Supp. 629.

27. This Defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to that by which reasonable diligence could have prevented. " The United States Supreme Court held the "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials," can no longer justify a statute that discriminates on the basis of gender. "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas."-(Stanton vs. Stanton, 421 U.S. 7,10; 95) However this Defendant is trying to commit the Plaintiff to a life of a slave, which is a violation of 18 U.S.C 1581, 1584. Also, this Defendant is in direct violation of 18 U.S.C. 241 which states: " If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession or District in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or in the premise of another, with the intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured-they shall be fined under this title or imprisoned not more than ten years or both; and if death results..........they shall be fined......or may be sentenced to death." Therefore this Defendant was the direct or proximate cause of Plaintiff's injury and causes for relief.

## CONSTITUTIONAL SOVEREIGNTY

28. I, Timothy N Joynes, am a free and natural person, a citizen of the United States of America, and a resident of Delaware, all within the Federal jurisdiction of the United States District Court, District of Delaware. Now I am here appearing and pray for relief before this Honorable Court, and invoke the sovereignty of the United States Constitution.

29. This Court should not hold this litigant's pleadings to the same high standards of perfection and technicality as attorneys. If faced with a motion to dismiss, the Court should give the Plaintiff's pleadings especially lenient treatment, so that, before the Court dismisses the complaint of these in Propia Persona Plaintiff, the Plaintiff can be given an opportunity to offer evidence or further particularize his claim. The Federal Courts have ruled that in Propia Persona Civil Rights pleadings are to be liberally construed.-Haines vs. Kemer 404 U.S. 519, 92 S.Ct. 594 (1972), Jenkins vs. McKeithen, 395 U.S. 411, 421 (1969). If this Honorable Court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence structure, or unfamiliarity of pleading requirements. -Smith vs. US District Court 956 F2d 295 (D.C. 1992); Freeman vs. Department of Corrections, 949 F2d 360 (10th Cir. 1991).

30. This case involves vital questions of civil rights important to many Americans of similar circumstances throughout this nation; because of this, abstention should not be considered. The Plaintiff has suffered severe damages and is entitled to redress and remuneration, in the form of compensatory, punitive and exemplary awards for damages, for crimes against the common good and public offenses. The Plaintiff challenges the actions of the State of Delaware, The Family Court of The State of Delaware, The Delaware Division of Child Support Enforcement, The State of Delaware Department of Justice, The State of Delaware Judiciary, and Denise Lewis and her attorney, Christine K Demsey, also listed as defendants to this complaint. Because of these Defendants' actions, they infringed on the Plaintiff's Civil Rights and Liberties. The Plaintiff urges that this Honorable Court take particular concern since the State of Delaware has been unwilling to protect the rights of its own citizens.

31. The State of Delaware, as a line of defense, will try to use the 11th Amendment as a reason to request the Court to dismiss this claim. However, the Supreme Court has ruled that States do not have immunity from acts that deprive persons of life, liberty, property and reputation. They will also claim that this Honorable Court does not have the jurisdiction to here this complaint.

32. **18 USC 3231** "The District Court of The United States shall have original jurisdiction, exclusive of the Courts of the States, of all offenses against the laws of the United States.

33. **United States vs Guest** 383 U.S. 745, "Section 5 of the Fourteenth Amendment enables Congress to punish interference with constitutional rights "whether or not state officers or others acting under color of state law are implicated. There the

statute involved (18 USC 241) prescribed all conspiracies to impair any right "secured" by the Constitution. In order for a conspiracy to qualify it need not involve any state action. By the same reasoning the "custom.....of any state," as used in Sec. 1983 not involve official state development, maintenance or participation. The reach of section 1983 is Constitutional rights, including those under the 14th Amendment; and Congress rightly was concerned with their full protection, whoever might be the instigator or offender."

34. **42 USC 2000d-7** (a) (1) " A state shall not be immune under the 11[th] Amendment of the Constitution of the United States from suit in Federal Court for a violation of Title VI of the Civil Rights Act of 1964 (42 USC 2000d et seq) or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." (2.) " In a suit against a State for violation of a statute referred to in paragraph one, remedies are available for such violation to the same extent as remedies are available for such a violation in the suit against any public or private entity other than a state."

35. The Fourteenth Amendment to the United States Constitution guards against the state depriving any person of life, liberty or property, without Due Process of Law; nor deny to any person the Equal Protection of the Laws. **Section 5:** " The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

36. **Fitzpatrick vs. Bitzer,** 427 US 445 (1976) "Through the 14[th] Amendment, Federal power extended to intrude upon the province of the 11[th] Amendment and therefore Section 5 of the 14[th] Amendment allowed Congress to abrogate the state's immunity from suit guaranteed by that amendment."

37. **Ex Parte Virginia,** 100 US 339 (1879) "State officials acting in their official capacities, even in abuse of their lawful authority, generally are held to act under color of law. This is because such officials are "clothed with the authority" of state law, which gives them power to perpetrate the very wrongs that Congress intended section 1983 to prevent."

38. **Monell vs. New York City Dept. of Social Services**, 436 US 658 (1978) "Local governments can be sued directly under 1983 for monetary, declaratory, or injunctive relief where......the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

39. **Westberry vs. Fisher,** 309 F. Supp. 95 (District Court of Maine-1970) "Governmental immunity is not a defense under 42 USC 1983 making liable every person who under the color of state law deprives another person of his civil rights."

40. The State of Delaware may request dismissal for failure to state "a cause of action for equitable, injunctive, declaratory relief and restitution or to make a concise

13

path of conspiracy to deny civil rights. However, the Supreme Court of the United States makes it clear that only two allegations are required to state a cause of action under a statute.

41.**Gomez vs. Toledo** 446 US 635 (1980) " By the plain terms of section 1983, two and only two allegations are required in order to state a cause of action under that statute. First, the Plaintiff must allege that some person has deprived him of a Federal right. Second, he must allege that the person who have deprived him of that right, acted under the color of state or territorial law."

42. The Plaintiff cannot rely on the Delaware Supreme Court to correct the deprivation of civil rights. The Honorable Ruth Ann Minner has signed legislation that overrides the Delaware Supreme Court and cripples their decision-making powers. This was accomplished on February 02, 2005. This involves the deprivation of prisoner's civil rights, and the denial of Due Process. Her actions violated the separation of powers, which is a doctrine employed by the US Constitution to prevent any one branch of government from gaining too much power. Since the Governor is able to override the Delaware Supreme Court powers to interpret laws, even though state law allows the Supreme Court of Delaware to liberally interpret them, then the Delaware Supreme Court would be the wrong venue to correct the violation of Civil Rights.

43. The Plaintiff Request that before dismissing this complaint, this Honorable Court should consider Ankenbrandt vs. Richards. (504 US 68- 1992.) ""The District Court erred in abstaining from excercising jurisdiction under the Younger Doctrine. Although this Court has extended Younger abstention to the civil context, it has never applied the notions of comity so critical to Younger where, as here, no proceeding was pending in state tribunals. Similarly, while it is not inconceiveable that, in certain circumstances, the abstention principles developed in Buford v.Sun Oil Co. 319 US 315, might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony or child custody, such abstention is inappropriate here, where the status of the domestic relationship has been determined as a matter of state law, and in any event, has no bearing on the underlying torts alleged."

## FACTS AS TO THE PLAINTIFF

44. In summary, Mr. Timothy Joynes is a person who is not afraid to work and earn an honest living. At times, he would on occasion work overtime to assist his employer when they needed work to be covered.

45. Mr. Joynes originally was raised in Paterson, NJ. He completed his secondary education at Passaic County Technical and Vocational High School in Wayne, NJ, where he acquired the carpentry trade, as well as the skills of a mason and an electrician. He graduated from secondary school in 1988.

46. Mr. Joynes never continued his post-secondary education, but chose to work to help his parents at home. Around the time of his graduation, his younger sibling

became pregnant at the age of 15. Even though the Plaintiff was about to purchase his first vehicle, he made his first sacrifice by assisting in the care of his niece. In fact, Mr. Joynes postponed purchasing a car for three years in order to care for his niece. Shortly after this, his father was laid off from his job, and Mr. Joynes was the only one that was employed. He made the sacrifice for his family and to help pay many household bills so that his parents' primary needs were provided for. This was the Plaintiff's first experience of family responsibility. In fact, Mr. Joynes took on a second job working for UPS in Saddlebrook, NJ. He worked at the facility for 4 years. Around 1992, his father suggested that he study for a commercial drivers license. Reluctant at first, the Plaintiff studied, tested and acquired a CDL license. For all the sacrifices that he made, his parents, when they were financially able, loaned him the money to purchase his first vehicle. He took care of that vehicle like a child, and he felt that doing good deeds were beneficial not only to himself, but also to those he helped.

47. In 1994, Mr. Joynes moved to Trenton, NJ. His main goal was to move to Delaware, so that he can make a better life for himself. But the move to Delaware would not be facilitated until he was able to secure a job. For three years, he worked in the Trenton, NJ area driving school buses during the day, and Limousines and Charter buses at night and weekends. During his free time, he traveled to Delaware looking for a job that would provide for his needs.

48. On March 17, 1997, Mr. Joynes began to work for the Delaware Transit Corporation, also known as DART. The Plaintiff continues to work there until this day. On July 7, 1997 on his first day as a full-time operator, he met Denise Lewis. She was a 26 year-old woman that came from New York. She has just moved to Delaware to begin her job at the Chase Manhattan Bank of New York. At first, the Plaintiff and the Defendant talked quit a bit. Then the Plaintiff would visit her home on the weekends. But an accident that occurred while the Plaintiff was at work started a chain of events that would affect the Plaintiff until this day.

49. Since the Plaintiff was still living in New Jersey, Denise Lewis felt that going back home would not be wise. She invited the Plaintiff to stay overnight. The overnight turned into moving in.

50. In time, Denise Lewis became pregnant. At first, the Plaintiff became afraid. Since this was his first child, he was concerned about conceiving the child out of wedlock. Denise Lewis told the Plaintiff that she was determined to have the baby. That decision did not in any way caused the Plaintiff to run from his responsibility. In fact, on February 6, 1998, The Plaintiff and the Defendant, Denise Lewis, were married at the Clerk of The Peace Court in Wilmington, Delaware.

51. On August 25, 1998, the Plaintiff's first son was born. His name was Daniel. Two months later Denise Lewis became pregnant with the Plaintiff's 2nd child. On July 4th 1999, a second son was born to the Plaintiff and the Defendant Denise Lewis. This son is named Andrew.

52. On August 1, 2001, The Plaintiff and the Defendant, Denise Lewis encountered marital problems and were forced to separate. The separation was not officially filed in The State of Delaware Family Court. Tragically, on November 11th 2001, The Plaintiff and Defendant's son Andrew was killed in a traffic accident on the NJ Turnpike. The Defendant, Denise Lewis, did not have life insurance for the children, but the Plaintiff maintained insurance for all family members.

53. The Plaintiff covered the entire cost of the funeral, which cost almost $8,000.00. The Defendant, Denise Lewis, did not shoulder any of the cost. Prior to Andrew's death, the Plaintiff and the Defendant had agreed to send their children to New York while they were trying to work out their problems. But after the burial of their son, the Defendant, Denise Lewis requested that Daniel be returned to Delaware to be with her. Already grieving, the Plaintiff conferred.

54. Within one week after allowing the Plaintiff's and the Defendant's son to return to Delaware, the Plaintiff received a phone call from the Division of Youth and Family Services of the State of Delaware. They informed him that they were investigating him for child abuse. Daniel was 3 years old at the time.

55. By December 26, 2001 a notice was sent to the Plaintiff informing him that the State of Delaware was closing the case because they found that the accusations by Daniel were unwarranted.

56. In January 2002, The Defendant Denise Lewis, without the consent of the Plaintiff, enrolled Daniel into a counseling session that would last for about two months. This was the beginning of many successful campaigns that the Defendant Denise Lewis would institute against the Plaintiff to deny him of his parental rights.

57. In November 2002, Denise Lewis lost her job at Chase Manhattan Bank due to a reduction in the workforce. Her employer gave her a severance package that allowed her to continue receiving her full weekly pay thru late January, and a severance package that would carry her through March. At this time, the Plaintiff and Denise Lewis were trying to work out their differences. Denise wanted a house, and she wished not to search for employment until she was able to acquire a house. Since Denise was not employed, the Plaintiff asked that he not continue to retain and pay for a day-care provider. She requested that I continue to pay the provider, that way the provider would be "retained," in the event that she was to gain meaningful employment. So the Plaintiff was paying the day-care provider for services that she was not providing at the request of Denise.

58. At the same time the Plaintiff was providing full medical, dental and life insurance for Denise and their surviving son. Daniel was covered on the Plaintiff's insurance policies since birth; Denise Lewis was covered since 2000, with no lapse in coverage. The Plaintiff was fulfilling his obligation to support his family as required in the State of Delaware Domestic Relations Code.

59. By March 2003, Denise's severance package ran out and she was not employed. She was forced to begin drawing unemployment. The Defendant was encountering a drastic lost of income, but at the same time she was not actively seeking employment. The Plaintiff was actively employed and was still paying for daycare that was sparingly used. The Plaintiff also had to cover his own household expenses. Finally in August 2004, Denise secured a part-time job at The Law Office of Christine K Demsey, working only 15 hours a week at $12.00 hour. At the same time, Denise Lewis was still drawing unemployment, with no intention at the time of securing full-time employment or at least obtaining another part-time job to supplement her income.

60. Denise Lewis was expecting the Plaintiff to cover all of her home expenses or at least, a good portion of it. At this time, she had a mortgage payment, a car note, and utilities. All of these thing she acquired around the time that she was unemployed, and she was expecting the Plaintiff to assume these expenses even though he was not living at the residence.

61. Because of this expectation, she approached the Delaware Division of Child Support Enforcement. With all of her unemployment exhausted, and no other source of income other than her part-time job at the law office, she desired to take the Plaintiff "to the cleaners," further skirting her duty to provide for their son Daniel.

62. The Plaintiff was already paying $560.00 per month of for daycare expenses that was not utilized nor chosen. Denise Lewis used the provider sparingly. In addition, the insurance cost for all the members of the Plaintiff's family added an additional $300.00 to the support. This was in addition to the cost of groceries for Daniel and an occasional supplement for Denise as needed.

63. On October 16, 2003, Denise Lewis sought the services of the Division of Child Support Enforcement.

64. On November 6, 2003, the Deputy Attorney General for The State of Delaware requested the Family Court of Delaware to issue a summons to the Plaintiff.

65. On December 2, 2003, the Clerk of The Family Court issued the summons to be served through the Process Server.

66. On December 22, 2003, the Plaintiff received the summons. The summons read:

**Attention: Timothy Joynes**
**You have been named as the respondent in the attached pleading**
**Which has been filed in Family Court. You will receive written notice**
**Advising you of the date and time of your court mediation / hearing.**

**If you fail to appear at the scheduled mediation conference or judicial**
**Hearing, a default judgment may be rendered for the relief demanded**
**In the complaint. Other sanctions may be imposed as deemed**

**Appropriate by the court. Failure to report a change of address to the
Court immediately upon such a change may result in a capias for your
Arrest, the entry of a default judgment or other appropriate sanctions
Imposed against you.**

67. Nowhere on this summons did it indicate that the Plaintiff had the right to
contest this action. The State of Delaware has a rule established in the Family Court
Rules of Civil Procedure that prohibits respondents from contesting child support civil
summonses.

68. Title IV-D of the Social Security Act requires safeguards for the
protection of Due Process.

69. **42 USC 666 (6)**  "Procedures which require that a non-custodial parent
give security, post a bond, or give some other guarantee to secure payment of overdue
support, after notice has been sent to such non-custodial parent of the proposed action
and the procedures to be followed to contest it (and after full compliance with all
procedural due process requirements of the State.)

70. **42 USC 666 (7)(b)**  "Safeguards.- Procedures ensuring that, in carrying
out subparagraph (A), information with respect to a non-custodial parent is reported-only
after such parent has been afforded all due process required under State Law, including
notice and a reasonable opportunity to contest the accuracy of such information; and (2.)
only to an entity that has furnished evidence satisfactory to the State that the entity is a
consumer reporting agency."

71. **42 USC 666 (19)**  "Such procedures shall be subject to due process
safeguards, including (as appropriate) requirements for notice, opportunity to contest the
action, and opportunity for an appeal on the record to an independent administrative or
judicial tribunal."

72. **Family Court of The State of Delaware Rule 8(b)** " Answers; when
required. - An answer shall be required in all civil actions except that, rule 12 not
withstanding, an answer shall not be to those petitions in which child support is the sole
issue."

73. **Family Court Rules of Civil Procedure Rule 7(a)**  Pleadings. - There
shall be a petition and an answer; a reply to a claim and a counterclaim denominated as
such; an answer to a claim and counterclaim…….."

74. Since the Plaintiff was not given an opportunity to contest or answer the
child support petition, but was forced to attend the hearing or face arrest, his 14th
amendment rights were violated.

75. **The Fourteenth Amendment, Section 1** "All persons born or
naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the

United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

76. Now that the Plaintiff's rights have been violated, the first mediation conference was scheduled for January 15, 2004.

77. The Plaintiff, in a rush to arrive to Family Court on time, left his documentation needed for the court at home. This proved to be a major mistake since this gave the Defendant Denise Lewis and The Family Court ammunition to violate the Plaintiff's civil rights.

78. Upon arrival to the mediation room, the mediator, Stephanie Fitzgerald, requested that the litigants produce their paperwork. The Plaintiff explained that he had mistakenly left his paperwork at home. When he said this, Stephanie immediately began to become rude and disrespectful toward the Plaintiff and immediately explained that she had a copy of his income statement for 2003. It showed that the Plaintiff had an income of $61,000 for the tax year. He did not disagree with that figure, but he explained to her that this income included $20,000 in overtime that is not guaranteed. She knew this, but chose to ignore what the Plaintiff was saying. She attributed Denise Lewis with a 40-hour work week with no overtime, thus establishing gender discrimination, and a denial of equal protection under the law.

79. Also present was a representative from the Division of Child Support Enforcement. Stephanie Fitzgerald began to draw up an interim child support order based on non-guaranteed overtime, without producing evidence that the Plaintiff failed to support a child conceived; another act of denial of equal protection of the law.

80. This was in direct violation of the Plaintiff's 14th Amendment rights. Once this was done, she requested that he sign the order. The Plaintiff refused. He requested that he have his case heard in Family Court in front of a commissioner. Then she told the Plaintiff to leave the room. If he had refused, then she would have the Capital Police escort him out in handcuffs. Not only did she sign to have his pay attached, she initiated the first step toward making the Plaintiff a peon to the State of Delaware, Defendant Denise Lewis, his son and The Division of Child Support, all without proof of non-support. Defendant Denise Lewis laughed as the Plaintiff left, and she felt pleased as well as Defendant Stephanie Fitzgerald of violating Plaintiff's civil rights.

81. Stephanie Fitzgerald had access to the State of Delaware Department of Labor Wage Statistics. According to page 4 of the report, this statement was made: **Wages including base rate, cost-of-living allowances, hazardous duty pay, incentive pay (including commissions, piece rates, and production bonuses), longevity pay, on call pay, and portal to portal pay. Not included are back pay, overtime pay, severance pay, shift differential pay………**