Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge or other committing magistrate in his person or property on the account of the performance of his duties, or corruptly or by threats of force or by any threatening letter or communication, influences, obstructs, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

241. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

## COUNT SEVEN: VIOLATION OF 18 USC 1512

242. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 241 above with the same force and effect as if herein set forth.

243. At all relevant times the conduct of the Defendants were subject to 18 USC 1512.

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to-

(1) Influence, delay, or prevent the testimony of any person in an official proceeding:
(2) Cause or induce any person to-
(a) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(b) Alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
(c) Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object in an official proceeding; or
(d) Be absent from an official proceeding to which such person has been summoned by legal process; or
(3) hinder, delay or prevent the communication to a law enforcement officer or judge of

the United States of information relating to the commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than ten years, or both.

(c) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from
(1) attending or testifying in an official proceeding;
(2) reporting to a law enforcement officer or a judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
(3) arresting or seeking the arrest of another person in connection of a Federal offense or;
(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding; or attempts to do so, shall be fined under this title or imprisoned not more than one year or both.

(d) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by the preponderance of the evidence, that the conduct consisted solely of lawful conduct and the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

(e) For the purpose of this section-

(1) an official proceeding not be pending or about to be instituted at the time of the offense; and (2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim or privilege.

(f) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance-
(1) that the official proceeding before a judge, court, magistrate, grand jury, or government agency is before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or
(2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

(g) There is extraterritorial Federal jurisdiction over an offense under this section.

(h) A prosecution under the section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

   244. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest,

severally and jointly against Defendants for actual, special, compensatory and punitive
damages in an amount deemed at time of trial to be just fair and appropriate.

## COUNT EIGHT: INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

245. Plaintiff repeats and re-alleges and incorporates herein by
reference the allegations of paragraphs 1 through 244 above with the same force and
effect as herein set forth.

246. Defendants intentionally and deliberately inflicted emotional
distress on Plaintiff by making it impossible for Plaintiff to maintain his livelihood which
has always supported his family and child.

247. Defendants intentionally and deliberately inflicted emotional
distress by defaming the Plaintiff in motions filled with false allegations that put the
Plaintiff in constant fear of losing all that he worked for including the hands on parenting
relationship that he had with his surviving son.

248. As a direct result of the Defendant's extreme and outrageous
conduct, the Plaintiff was and will continue to be emotionally distressed due to the
egregious actions of the Defendants.

249. As a result of the Defendants extreme and outrageous behavior,
the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff
demands judgment, including interest, severally and jointly against Defendants for actual,
special, compensatory and punitive damages in an amount deemed at the time of trial to
be just, fair and appropriate.

## COUNT NINE: NEGLIGENT INFLICTION OF
## EMOTIONAL DISTRESS

250. Plaintiff repeats and re-alleges and incorporates herein by
reference the allegations of paragraphs 1 through 249 with the same force and effect as
herein set forth.

251. Defendants breached their duties to the Plaintiff.

252. Defendants negligently inflicted emotional distress on the
Plaintiff.

253. Defendants had a professional responsibility to the Plaintiff to
execute their duties associated with their position and title as officers and administrators
of the court system.

254. Plaintiff suffered constant and intense emotional distress as a

direct result of the Defendants actions.

255. As a result of the Defendants' negligent conduct, Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

## COUNT TEN:VIOLATION OF 18 USC 1581

256. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 255 with the same force and effect as herein set forth.

257. At all relevant times the conduct of the Defendants was subject to 18 USC 1581.

(a)Whoever holds or returns any person to a condition of peonage, or arrest any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 10 years or both.

(b) Whoever obstructs, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be liable to the penalties prescribed in subsection (a).

258. The Defendants used the State of Delaware "legal" process to deny the Plaintiff his equal protection rights and subjected the Plaintiff to distress through the threats of force or the threat of legal coercion to compel him to labor against his will. He was confronted by the existence of a superior and overpowering authority, constantly threatening to the extent that his will was completely subjugated.

259. As a result of the Defendant's negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

## COUNT ELEVEN: VIOLATION OF 18 USC 1584

260. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 259 with the same force and effect as herein set forth.

261. At all relevant times the conduct of the Defendants was subject to 18 USC 1584.

Whoever knowingly and willingly holds to involuntary servitude or sells into any condition of involuntary servitude, any person for any term, or brings into the United States any person so held, shall be fined under this title or imprisoned not more than 10 years, or both.

262. The Defendants used the State of Delaware "legal" process to deny the Plaintiff his equal protection rights and proceeded to hold the Plaintiff to a life of a Peon. They accomplished this through the threats of force and by the use of legal coercion to compel him to work against his will. He was confronted by the existence of a superior and overpowering authority, constantly threatening to the extent that his will was completely subjugated.

263. As a result of the Defendants' negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

## COUNT TWELVE: VIOLATION OF 18 USC 1589

264. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 263 with the same force and effect as herein set forth.

265. At all relevant times the conduct of the Defendants were subjected to 18 USC 1589.

Whoever knowingly provides or obtains the labor or services of a person-

(1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another would suffer serious harm or physical restraint; or (3) by means of the abuse of law or the legal process, shall be fined under this title or imprisoned not more than twenty years, or both.

266. The Defendants used the State of Delaware "legal" process to force the Plaintiff to a life of a Peon and compelled the Plaintiff to work against his will by threats and coercion. This is a direct violation of the Thirteenth Amendment.

267. As a result of the Defendant's negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

Respectfully submitted,
Timothy Nathaniel Joynes
Plaintiff

## MOTION TO ENLARGE ORIGINAL COMPLAINT
## TO INCLUDE A CONSTITUTIONAL CHALLENGE

1. A civil right is an enforceable right or privilege, which if interfered with gives rise to an action of injury. The Thirteenth Amendment abolishes slavery and all badges of it throughout the United States, and the Fourteenth Amendment assures that no state shall write laws that abridge the rights or privileges of the citizens of the United States or deprive anyone of life, liberty or property without due process of law or the equal protection of the law.

2. The Social Security Act Title IV-D requires that due process safeguards must be in place to insure that all citizens are equally protected. This would also include the Delaware Division of Child Support and the Delaware Courts, since the Delaware Division of Child Support Enforcement is governed by the regulations of Title IV-D of the Social Security Act.

3. However, the Family Court, through the Delaware Judiciary, have enacted laws that have distinctively denied non-custodial parents their "due process rights." They have repeatedly denied the non-custodial parents the right to contest child support civil complaints, and have established "temporary orders" before they have a trial, a direct violation of 42 USC 666(6)(7)(b)(19) and of the Fourteenth Amendment.

4. The United States Supreme Court has recognized the importance of an evidentiary hearing.

5. **Stanley vs. Illinois-** 405 US 645 (1972) "The State cannot, consistently with due process requirements, merely presume that unmarried fathers in general and petitioner in particular are unsuitable and neglectful parents. Parental unfitness must be established on the basis of individual proof."

6. When serious liberty or property rights are at stake, a contested evidentiary hearing must be conducted prior to any deprivation. **Goldberg vs. Kelly-** 397 US 254 (1970) **Rogoski vs. Hammond-** 9 Wn. App. 500, 513 P2d 285 (1973).

7. The State of Delaware treats custodial and non-custodial parents differently, without stating a legitimate purpose. The Family Court of the State of Delaware and the Division of Child Support Enforcement always classified non-custodial parents as deadbeats and irresponsible without any finding of fact. Basically, all that a "custodial" parent has to do is to merely go to the local child support office and fill out an application for support and the agency merely forwards it to the Attorney General's office

without verifying that the statements are true. The Attorney General petitions the Family Court to issue a summons to the "irresponsible" parent requiring him to come to court or face arrest without a opportunity to contest the action.

8. In the case of the Plaintiff, the State never established the fact that his child was in danger of becoming a ward of the State through the payment of welfare. The Plaintiff has demonstrated to the court that he has provided for his son and that he was fully covered by his employer's health, life, and dental insurance policy from birth, and that his basic needs were provided for. Despite demonstrating that he did not fail in his obligation to provide for his son, the State felt that he needed to be on their payment plan. The Plaintiff did not understand at the time why this injustice was done, despite the fact that he had demonstrated that the custodial parent has not consistently provided for their son. There was another motivational reason why the State wanted all "non-custodial" parents on the system. It is something that the Delaware Legislature and the Child Support Agency have been keeping secret from the general population.

9. In Troxel vs. Granville (000 US 99-138  2000), the United States Supreme Court made these statements concerning the parents right to make decisions concerning their children. "Accordingly, so long as a parent adequately cares for his or her children, their will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

10. "Parental choice in such matters is not merely a default rule in the absence of either governmental choice or the government's designation of an official with the power to choose for whatever reason and in whatever circumstances."

11. **Parham vs. J.R.-**  442 US 584, 602 (1979)- " Our constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents  have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations....the law's concept of the family rest upon the presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions."

12. The United States Supreme Court has long recognized that a parent's interest in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Fourteenth Amendment.

13. Upon further investigation, the Plaintiff discovered the real reason why the Division of Child Support Enforcement and the Delaware Judiciary denies the Plaintiff his due process rights, as well as thousands of "non-custodial" and "irresponsible" parents.

14. The State of Delaware benefits by receiving Federal Financial Assistance for the operation of their child support program.

15. The Federal Office of Child Support Enforcement pays each state according to the performance of their child support program.

16. The higher the child support orders, the higher the Federal financial assistance. The procedures are clearly outlined as codified 42 USC 651-666.

17. The State of Delaware can receive up to 66 percent of expenditures for established orders; 90 percent for paternity test and incentive payments if they can establish more orders. They do not have to collect the actual money from non-custodial parents to qualify for assistance.

18. In fact, to guarantee the highest possible orders, the Delaware Ad Hoc Committee has established rules that discriminate against non-custodial parents in the most adverse way, while at the same time assuring the continuation of the highest child support orders.

19. In child support cases, the custodial parent is assigned a work week of 40 hours. The non-custodial parent is assigned an income that includes overtime. If the overtime drops, then the "obligated" parent is forced to petition the court for a reduction in support. Generally, the family court denies the decrease; in fact they will raise the support to further increase the burden of the non-custodial parent. This is what was written in their formulary, dated September 23, 2002: " Is it really just helping ends meet or pay a legitimate extraordinary expense, or to substantially raise the standard of living of the obligor, and perhaps the obligor's new family, while the children who are the subject of the order remain at a lower standard of living?"

20. The court is obviously making a family decision concerning how well a child should be living. It is not normal for a state to intervene in family matters. The domain of the family is sacrosanct, based on the parental autonomy, which means that parents may decide, free from governmental interference, at what level and by what means that they will support their children.

21. The State of Delaware sets the standard of living for children, through the use of the Melson Formula, which is in clear violation of the United States Department of Health and Human Services criteria for appropriate child support awards. It specifically states that the guidelines must reflect child cost patterns shown in economic data in order to be appropriate.

22. The Division of Child Support and the Family Court of Delaware are only concerned with the highest amount of Federal Financial Assistance, rather than assuring due process, and to promote an unconstitutional taking of all non-custodial parent's income and shifting it to custodial households.

23. Most of the custodial households are women. The Plaintiff recognizes that women in general have not been given the respect that they truly deserve. There has been much discrimination against women in this country in the past; the United

States government has taking steps to improve the ability for equal treatment of women. But, at the same time, the United States government requires that laws cannot discriminate against gender to achieve a government purpose. It cannot discriminate on the basis of sex. The States cannot use child support to ameliorate the wrongs that were done to women.

24. **Stanton vs. Stanton-** 421 US 7 (1975) "Notwithstanding the "old notions" cited by the state court that it is the man's primary responsibility to provide a home, that it salutary for him to have education and training before he assumes that responsibility, and that females tend to mature and marry earlier than males, there is nothing rational in the statutory distinction between males and females........thus imposing "criteria wholly unrelated to the objective of that statute."

25. **Califano vs. Webster-** 430 US 313 (1977) " Reduction of the disparity in economic condition between men and women caused by the long history of discrimination against women has been long recognized as such an important governmental objective. But the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme. Accordingly, we have rejected attempts to justify gender classifications as compensation for past discrimination against women when classifications in fact penalized women wage earners.......or when the statutory structure and its legislative history revealed that the classification was not enacted as compensation for past discrimination........Moreover, elimination of of the more favorable benefit computation for women wage earners, even in the remedial context, is wholly consistent with those reforms, which require equal treatment of men and women in preference to the attitudes of "romantic paternalism" that have contributed to the long and unfortunate history of sex discrimination."

26. **Weinberger vs. Wiesenfeld-** 420 US 636 (1975) " Further, to the extent that women who work when they have sole responsibility for children encounter special problems, it would seem that men with sole responsibility for children will encounter the same child-care related problems.....Finally, to the extent that Congress legislated on the presumption that women as a group would chose to to forego work to care for children while men would not, the statutory structure, independent of the gender-based classification, would deny or reduce benefits to those men who conform to the presumed norm and are not hampered by their child-care responsibilities.......because they earn too much. Thus, the gender based distinction is gratuitous, without it, the statutory scheme would only provide benefits to those men who are in fact similarly situated to the women the statute aids.......like the statutes there, by providing dissimilar for men who are similarly situated, the challenged section violates the due process clause."

27. **Shapiro vs. Thompson-** 394 US 618 (1969) " We recognized that a State has a valid interest in preserving the fiscal integrity of their programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens."

28. Despite these US Supreme Court rulings, the State of Delaware continues to discriminate against men and subjecting them to life of a slave and imposing "punishment" for men who earn a honest wage, and would like to spend time with their children and enjoy the right to travel with their children.

29. By establishing high child support orders, and allowing the orders to increase every 2 years, the act violates the equal protection clause of the Fourteenth Amendment.

30. The State of Delaware has accomplished two things; they discriminate against non-custodial parents, mostly men, and they subjected them to a life of a slave by attaching their wages and forcing them to work beyond a 40 hour work week, all for the benefit of Federal financial assistance.

31. **Orr vs. Orr-** 440 US 268 (1979) " Where as here, the State's compensatory and ameliorative purposes are as well served by a gender- neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. And this is doubly so where the choice made by the State appears to redound- if only indirectly- to the benefit of those without need for special solicitude..... There is no reason, therefore, to use sex as a proxy for need."

32. The Family Court of Delaware utilizes their laws, as codified ,13 Del C 511 through 518, to acquire jurisdiction over "non- custodial" parents and deny them of their due process rights.

33. 13 Del C 511 explains that jurisdiction may be acquired by the service of a summons to the respondent without the respondent given an opportunity to contest the action.

34. 13 Del C 512 allows the court to issue an temporary child support order before a trial based merely on a complaint by the custodial parent, without a due process hearing, and without presenting any facts to substantiate the wage garnishment. The law even goes as far as allowing the Master to the Delaware Family Court to issue recommendations to the court that can be enforced by the commissioner or judge, all without substantive and procedural due process.

35. 13 Del C 513 and 13 Del C 514 allows the court to order the "respondent" to pay  all medical and a large portion of the support and not listing the obligations of the "custodial" parent. These particular laws are discriminatory, and they operate to deny the "non-custodial" parent any opportunity to defend himself against such tyrannical acts.

36. 13 Del C 515 and 13 Del C 516 allows the Court to further torture the "defendants" by imposing "arrearages," without providing proof that the arrearages

are justified, and not holding the "custodial" parent liable for support. The Court assumes that the "custodial" parents are providing the support. All of these procedures are done without showing what evidence that they relied on.

37. **Stanley vs. Illinois-** 92 S Ct. 1208 (1972) " The State insists on "presuming rather than proving Father's unfitness solely because it is more convenient to presume rather than to prove. Under the "Due Process Clause" that advantage is insufficient to justify refusing a father a hearing when the issue at stake is the dismemberment of his family." "Claim in the State courts and here is the failure to afford father a hearing on his parental qualifications while extending it to other parents denies father of "Equal Protection" of the laws. Parents are constitutionally entitled to a hearing on their fitness. Denying such a hearing to Stanley and those like him while granting it to other parents is inescapably contrary to the "Equal Protection Clause."

38. **Reed vs. Reed-** 404 US 71 (1971) " Clearly, the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy…..{But to} give mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment."

39. **Duncan vs. Louisiana-** 88  S Ct. 1444 (1968) " Chapter 39 of the Magna Charta (1215) was a guarantee that the government would take neither life, liberty, nor property without trial in accord with the law of the land that already existed at the time the alleged offense was committed. This means that due process clause gives all Americans, whoever they are and wherever they happen to be, the right to be tried by "Independent and Unprejudiced Courts" using established procedures and applying valid pre-existing laws. There is not one word of legal history that justifies making the term "Due Process of Law" mean a guarantee of a trial free from laws and conduct which the courts deem at the time to be arbitrary, unreasonable, unfair, or contrary to civilized standards. The Due Process of Law Standard for a trial is one in accordance with the "Bill of Rights" and laws passed pursuant to constitutional power, guaranteeing to all alike a trial under general law of the land."

40. The State of Delaware does not recognize the fact that both parents have the same responsibilities for providing for their children. In fact, the responsibilities of both parents to support their children are exactly the same. The Family Court of Delaware and The Delaware Division of Child Support Enforcement makes the presumption that "custodial" parents, mostly mothers, are fit and responsible to care for children and the "non-custodial" parents, mostly fathers, are not.

41. To make matters worse, the Division of Child Support Enforcement does not investigate the claims made by these parents. They just merely accept the application and forward it to the Delaware Attorney General's Office, who then petitions the court to issue a summons to the "non-custodial" parent, stating that they have refused to support their child, without providing any evidence to support their claim.

42. With all of these acts that are done to non-custodial parents, The State of Delaware and their representatives feel that they can continue to do harm to them without being held accountable. While it may be true that the Delaware Department of Justice, The Family Court of The State of Delaware, and the State of Delaware have qualified immunity when it comes to the prosecutorial aspects of a civil summons, it does not apply to the administrative functions of their positions. The same is true of the Delaware Division of Child Support Enforcement, the employees at the child support enforcement agency, The Ad Hoc Committee, and the Delaware Judiciary. Even Defendant Christine K Demsey can be held liable. A clear distinction of their duties that makes all of these defendants liable is set forth in Carter vs. Philadelphia.

43. **Carter vs. City of Philadelphia-** 181 F.3d 339, 43 Fed.R.Serv.3d 915 (1999) "Even if the DA's Office were entitled to sovereign immunity as a state actor during the performance of its prosecutorial functions, such immunity would not extend to the local office administrative, investigative and management functions which underlie this action. We will, therefore, reverse the District Court's holding that the DA's Office is entitled to sovereign immunity for purposes of the claims at hand. We reject the alternative assertion of absolute prosecutorial immunity as lacking merit where the cause of action lies on administrative and investigative, rather than prosecutorial, conduct.

44. "Moreover, even if it were true that District attorneys act as an arm of the State, entitled to its sovereign immunity, whenever they perform prosecutorial functions in the name of the Commonwealth, it would not follow that the Eleventh Amendment immunizes the conduct at issue here.......They have acknowledged the obvious basis for distinction: making and applying county-wide policy differs from carrying out state-wide policy and they have, therefore, repeatedly differentiated between administrative and prosecutorial functions, generally finding the former to be local and the latter to be state.

45. "The recurring theme that emerges from these cases is that county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices. Indeed, we ourselves concluded in Coleman vs. Kaye, 87 F.3d 1491, 1499(3d Cir 1996), that county prosecutors can have a dual or hybrid status. When "enforcing their sworn duties to enforce the law......they act as agents of the State [but] when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions....the county prosecutor in effect acts on behalf of the county that is the situs of his or her office."

46. As far as the employees of the Delaware Division of Child Support Enforcement, the Delaware Ad Hoc Committee, and the Family Court of the State of Delaware's liability concerning their lack of sensitivity and training when it comes to violating their Constitutional and "Due Process" rights of litigants, Carter vs. City of Philadelphia had this to say.

47. "As the District Court observed, the standard for personal liability under section 1983 is the same as that for municipal liability. See Sample vs. Diecks 885 F.2d 1099, 1118 (3d Cir. 1989). That standard was enunciated in Monell vs. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978): "When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury...... the government as an entity is responsible under 1983." Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact. City of Canton vs.Harris 489 US 378,388 (1989).

48. "The Court in Canton observed that failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights."

49. The Carter vs. Philadelphia case makes it clear that these Defendants named in this suit can be held liable for acts that deprive persons of their constitutional rights and privileges secured by the United States Constitution.

50. These Defendants, all of them, knew that their actions would cause the Plaintiff to be deprived of his rights as guaranteed by the Constitution, but choose to follow the concise path of conspiracy and deception to accomplish their mission. They have subjected the Plaintiff to severe financial and emotional suffering.

51. They have applied the Melson Formula to the Plaintiff that is unconstitutional because it establishes a standard of living that the Plaintiff is not accustomed to living. The Defendants, all of them, never provided evidence to justify the taking of Plaintiff's property without a evidentiary hearing.

52. They helped Defendant Denise Lewis obtain a tax benefit, while creating a tax burden on the Plaintiff, even though he is saddled with 80 percent of the cost of raising his son, a violation of equal protection of the law.

53. The Plaintiff hereby requests this Honorable Court that the Melson Formula be declared unconstitutional because it does not equally distribute income and responsibilities. It intrudes into the Plaintiff's rights to make decisions concerning his child.

54. The purpose of the State of Delaware, through the Division of Child Support Enforcement, the Family Court of the State of Delaware and the Delaware Department of Justice denial of the Plaintiff's civil rights is well explained in this US Supreme Court case.

55. **US vs. Reynolds-** 235 US 133 (1914) "Under this statute, the surety may cause the arrest of the convict for violation of his labor contract. He may be sentenced

and punished for this new offense, and undertake to liquidate the penalty by a new contract of a similar nature, and if again broken, may again be prosecuted, and the convict is thus kept chained to an ever turning wheel of servitude to discharge the obligation which he has incurred to his surety, who has entered into an undertaking with the state, or paid money in his behalf. The re-arrest of which we have spoken is not because of his failure to pay his fine and cost originally assessed against him by the State. He is arrested at the instance of the surety, and because the law punishes the violation of the contract which the convict has made with him."

56. The State of Delaware holds secret meetings concerning how they make decisions as regards to the child support formulary. This is strictly prohibited by 5 USC 552(b). This Federal law requires that federally financed programs grant public notice and participation into the meetings. Delaware never allowed the public to attend those meetings. In fact, the meetings are never announced; thereby ensuring the unconstitutional taking of "non-custodial" parents' wages. The Ad Hoc Committee meetings do not involve national security, or personnel decisions. Therefore, it should be made open to the public.

57. All these acts committed by the Defendants violate the Fifth, Thirteenth and Fourteenth Amendments. Throughout the history of the United States, Congress has enacted legislation to enforce these amendments through many Supreme Court rulings; too many to mention in this suit. The most notable one is Ex-Parte Virginia.

58. **Ex-Parte Virginia-** 100 US 339 (1879) "We have said the prohibitions of the Fourteenth Amendment are addressed to the States. They are, 'No State shall make or enforce a law which shall abridge the privileges or immunities of citizens of the United States,..... or deny to any person within its jurisdiction the equal protection of the laws.' They have reference to actions of the political body dominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or take away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State.......then the State has clothed one of its agents with power to annul or to evade it."

59. The Defendants may feel that the Plaintiff did not have the right to approach the District Courts to redress his grievances with the State of Delaware. They may feel that this matter should be relegated to the State courts. Senator Trumbull felt differently concerning this situation, on January 29, 1866.

60. "Senator Trumbull then went on to indicate that if it be necessary in order to protect the freedman in his rights that she should have authority to go into the Federal Courts in all cases where a custom [of discrimination] prevails in a State.....I think we

have the authority to confer that jurisdiction under the second clause of the constitutional amendment.

61. "So in reference to this third section, the jurisdiction is given to the Federal courts of a case affecting the person that is discriminated against. Now, he is not necessarily discriminated against, because there may be a custom in the community discriminating against him, nor because a Legislature may have passed a statute discriminating against him, the statute is no validity if it comes in conflict with a statute of the United States; and it is not to be presumed that any judge of a State court would hold that a statute of a State discriminating against a person on account of color was valid when there was a statute of the United States with which it was in direct conflict, and the case would not therefore rise in which a party was discriminated against until it was tested, and then if the discrimination was held valid he would have a right to remove it to a Federal court."

62. The damages incurred by the Plaintiff exceed Fifty thousand dollars. The Plaintiff was forced to redress his grievances by going Pro-Se because the State of Delaware deprived the right to effective counsel and a impartial judge.

63. The State of Delaware never provided any facts to sustain their claims.

64. Wherefore, the Plaintiff respectfully pray and demand judgment in his favor and against the Defendants for compensatory, exemplary, and punitive damages as the Court may by law direct, and for other relief this court deems just.

65. The Federal Courts have a right and responsibility to punish the Defendants for violating the Plaintiff's Constitutional and Civil rights, countless Federal statutes and regulations, depriving the Plaintiff, a citizen of the United States, of life, liberty, and property, in a Federal financial assisted program resulting in a substantial profit for the Defendants.

66. The Federal Courts must send a message that the Court will not tolerate, but will harshly punish, those Defendants who cause damages in a federally financed program that would benefit the Defendants and cause unconstitutional harm to the Plaintiff.

67. The Plaintiff requests that this Honorable Court allow the Plaintiff 30 days to respond to all motions filed by the Defendants, a thirty day time limit from verified receipt of motions and to protect the Plaintiff from the inundation of Defendants motions, with full knowledge of the Plaintiff's limited legal knowledge.

68. Declare the Delaware Ad Hoc Committee as unconstitutional under the "separation of powers doctrine," and order the State of Delaware to hold public meetings with sufficient notice as required by 5 USC 552(b).

69. The Plaintiff request that this complaint be forwarded to the United States

Attorney General, the Civil Rights Division, and to the Federal Bureau of Investigations, with a court order attached directing an investigation into the conduct of State officials, into the implementation of the State of Delaware Child Support Program and all conspirators as alleged in this complaint.

Respectfully submitted,

*Timothy N Joynes*

Timothy N Joynes, Pro Se
55 West Chestnut Hill Road # 5
Newark, Delaware 19713-2264

In accordance to the Federal Rules of Civil Procedure, Rule 5, this document has been sent to all named parties.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

*Timothy N Joynes*

Timothy N Joynes

57