**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY N. JOYNES, )
)
    Plaintiff, )
)
v. )   C. A. No.  05-CV332 GMS
)
VINCENT P. MACCONI; )
CHARLES E. HAYWARD; )
MARTHA SACKOVICH; )
MARY ANN HERLIHY; )
JAY H. CONNER; )
CHRISTOPHER SPIZZIRRI; )
STEPHANIE FITZGERALD; )
FAMILY COURT OF THE STATE OF DE;)
DELAWARE DEPARTMENT OF )
  HEALTH AND SOCIAL SERVICES; )
STATE OF DELAWARE DIVISION OF )
  CHILD SUPPORT ENFORCEMENT; )
STATE OF DELAWARE DEPARTMENT )
  OF JUSTICE; )
STATE OF DELAWARE JUDICIARY; )
STATE OF DELAWARE; )
VINCENT J. POPPITI; )
PATRICIA BLEVINS; )
ROBERT J. VALIHURA; )
PETER S. FELICEANGELI: )
ANDREW HAMAN; )
JOELLE HITCH; )
ANDREW T. HORSEY; )
JANINE HOWARD; )
ALISA MAWSON; )
ELLEN MEYER; )
ANDREW K. SOUTHMAYD; )
MONA STEELE; )
BARBARA E. CORROZI; )
RUTH ANN MINNER; )
DENISE LEWIS; and )
CHRISTINE K. DEMSEY )

RECEIVED

DEC 1 2 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## DEFENDANT CHRISTINE K. DEMSEY'S MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT

    AND NOW, comes Defendant, Christine K. Demsey, and moves this Honorable Court,

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's complaint for failure to state a claim upon

which relief can be granted.

1. The Pro Se Plaintiff has filed a Complaint against the Moving Defendant for claims arising out of alleged activities in connection with the child support laws. (See Plaintiff's Complaint, attached as Exhibit "A").

2. Moving Defendant formerly represented Defendant, Denise Lewis, in connection with Plaintiff's Petition for Modification of Child Support in the Family Court of the State of Delaware.

3. Moving Defendant never represented any of the other Co-Defendants at any time.

4. The Family Court of the State of Delaware scheduled a trial on Petitioner's Petition for Child Support Modification on June 6, 2005 at 12:30 p.m. before Commissioner Martha Sackovich.

5. At the start of the June 6, 2005 trial, Plaintiff withdrew his Petition, ending litigation on his request for modification of child support.

6. Moving Defendant was not involved with the initial child support petition and original litigation on child support.

7. Since Moving Defendant never litigated child support on behalf of Defendant, Denise Lewis, and against Plaintiff, there is no cause of action against Moving Defendant.

WHEREFORE, it is respectfully requested that the court dismiss Plaintiff's Complaint against Moving Defendant, Christine K. Demsey, based upon failure to state a claim upon which relief can be granted.

Christine K. Demsey, Esquire
1328 King Street
Wilmington, DE 19801
302-428-3190

# Exhibit "A"

MAY 2 6 2005

# IN THE UNITED STATES DICTRICT COURT
# FOR THE DISTRICT OF DELAWARE

**TIMOTHY N JOYNES,   PRO SE**
**55 WEST CHESTNUT HILL ROAD**
**APARTMENT # 5**
**NEWARK, DE 19713-2264**
   **(302) 737-0783**

## QUESTIONS PRESENTED FOR REVIEW

The Purpose of this civil complaint is to challenge if the State of Delaware denied the Plaintiff his due process rights as guaranteed by the Fourteenth Amendment.

Did the Defendants listed in this complaint subject the Plaintiff to a life of a Peon, which is a direct violation of the Thirteenth Amendment, and of 18 U.S.C 1581 and 1584?

Did the Defendants deny the Plaintiff to the right to effective counsel and an impartial judge, as required by the Sixth Amendment?

Did the State of Delaware enact laws that discriminate against a class of citizens [Bill of Attainder], to exact punishment on them, without a due process hearing, a second violation of the Fourteenth Amendment?

Did the State of Delaware establish the Delaware Ad Hoc Committee to make the Rules of Support and incorporate them into law, a violation of the Separation of Powers Doctrine as provided in The United States Constitution?

Did the Delaware Ad Hoc Committee hold closed door meetings, which is a violation of the Administrative Procedures Act, as codified 5 U.S.C. 552B, to establish guidelines that are null and void under the guarantee of family privacy in Amendment Fourteen because they needlessly intrude upon the discretion of parents to raise their children as they see fit, once their reasonable needs have been met?

| TABLE OF CONTENTS | PAGE |
|---|---|
| **PARTIES** | **1** |
| **JURISDICTION** | **3** |
| **PLAINTIFF** | **4** |
| **DEFENDANTS** | **4** |
| **CONSTITUTIONAL SOVEREIGNTY** | **11** |
| **FACTS AS TO THE PLAINTIFF** | **13** |
| **FEDERAL CAUSES OF ACTION** | **37** |
| **MOTION TO ENLARGE ORIGINAL COMPLAINT TO INCLUDE A CONSTITUIONAL CHALLENGE** | **46** |

**CONCLUSION**                                                       **56**


### FEDERAL CASES

| | | |
|---|---|---|
| Mitchum vs Foster | 407 US 225 | (1972) |
| Lugar vs. Edmonson Oil Co. | 457 US 9 | (1982) |
| Haines vs. Kemer | 404 US 519 | (1972) |
| Jenkins vs. Mckeithen | 395 US 411 | (1969) |
| United States vs. Guest | 383 US 745 | (1966) |
| Fitzpatrick vs. Bitzer | 427 US 445 | (1976) |
| Ex-parte Virginia | 100 US 339 | (1879) |
| Monell vs. NYC Dept. of Social Svcs. | 436 US 657 | (1978) |
| Gomez vs. Toledo | 446 US 635 | (1980) |
| Foman vs. Davis | 371 US 178 | (1962) |
| Wallace vs. affree | 472 US 38 | (1985) |
| Reynolds vs. Babyfold, Inc. | 435 US 963 | (1977) |
| Quilloin vs. Walcott | 434 US 246 | (1978) |
| Stanley vs. Illinois | 405 US 645 | (1972) |
| Smith vs. Organization of foster Fam. | 431 US 816 | (1977) |
| Craig vs. Boren | 429 US 190 | (1976) |
| Frontiero vs. Richardson | 411 US 677 | (1973) |
| Boddie vs. Connecticut | 401 US 371 | (1971) |
| Dunn vs. Blumstein | 405 US 330 | (1972) |
| Ankenbrandt vs. Richards | 504 US 68 | (1992) |
| Roe vs. Wade | 410 US 113 | (1973) |
| Cohen vs. Chesterfield County Sch. Bd. | 414 US 632 | (1974) |
| Communist Party vs. Subversive Activities | 367 US 1,6 | (1961) |
| Bailey vs. Alabama | 219 US 219 | |
| (1911) | | |
| Bigelow vs. Virginia | 421 US 809 | (1975) |
| US vs. Brown | 381 US 303 | (1946) |
| May vs. Anderson | 345 US 528 | (1953) |
| Pierson vs. Ray | 386 US 547 | (1967) |
| Reed vs. Reed | 404 US 71 | (1971) |
| Goldberg vs. Kelly | 397 US 254 | (1970) |
| Stanton vs. Stanton | 421 US 76 | (1975) |
| Califano vs. Webster | 430 US 313 | (1977) |
| Weinberger vs. Weisenfeld | 420 US 636 | (1975) |
| Shapiro vs. Thompson | 394 US 618 | (1969) |
| Orr vs. Orr | 440 US 268 | (1979) |
| US vs. Reynolds | 235 US 133 | (1914) |


### UNITED STATES DISTRICT COURT CASES

Westberry vs. Fisher                           309  F Supp 95
Doe vs. Irwin                                  441 F Supp. 1247
Weinberger vs. Weisenfeld                       95  S Ct 1225 (1975)
Santiago vs. Philadelphia                      435 F Supp. 136
Gregoire vs. Biddle                            177 F 2d 579
Carter vs. Philadelphia        181 F 3rd 339 Fed R Serv. 3d 915  (1999)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In The Matter Of:

Timothy N Joynes
Plaintiff

Vs.

Vincent P Meconi
Secretary,
Delaware Health and Social Services

Charles E Hayward
Director,
Delaware Division of Child Support Enforcement

The Honorable Martha Sackovich
Commissioner,
State of Delaware Family Court: New Castle County, Delaware

The Honorable Mary Ann Herlihy
Commissioner,
State of Delaware Family Court: New Castle County, Delaware

The Honorable Judge Jay H Conner
Judge,
State of Delaware Family Court: New Castle County, Delaware

Christopher Spizzirri
Deputy Attorney General
State of Delaware Department of Justice

Stephanie Fitzgerald
Mediator,
State of Delaware Family Court: New Castle County, Delaware

The Family Court of The State of Delaware

Delaware Department of Health and Social Services

State of Delaware Division of Child Support Enforcement

State of Delaware Department of Justice

1

State of Delaware

State of Delaware Judiciary

State of Delaware

Delaware Support Formula Ad Hoc Committee
Honorable Vincent J Poppiti, Chief Judge
Honorable Patricia Blevins
Honorable Robert J Valihura Jr Esq.
Peter S Feliceangeli, Esq
Andrew Haman
Commissioner Joelle Hitch
Commissioner Andrew T Horsey
Janine Howard, Esq.
Alisa Mawson
Ellen Meyer, Esq.
Commissioner Andrew K. Southmayd
Mona Steele
Barbara E. Corrozi

Honorable Ruth Ann Minner
Governor, State of Delaware

Denise Lewis
Spouse

Christine K Demsey
Attorney for Denise Lewis

Defendants

VERIFIED COMPLAINT AND AFFIDAVIT UNDER OATH
AND JURY DEMAND ON ALL COUNTS

COMES NOW, the Plaintiff in the above styled action and complaints and alleges the following Torts and Public Offenses:

1.   I am Timothy N. Joynes and do swear, under oath, the following complaint is true and correct. This complaint is based on my personal knowledge of the essential facts as contained in this affidavit.

2.   Plaintiff hereby motions this Honorable Court to subpoena and review all documents contained in the "social files" in Denise Lewis/DCSE vs. Timothy N Joynes CN02-06655 and Timothy N Joynes vs. Denise Lewis/DCSE CPI 04-27865 and CPI 03-36757 for violations of Federal Criminal Laws and Statutes

2

3

embezzlement of the interest made from collections (public money) by the State of Delaware.

4.   Plaintiff hereby files this motion to compel the United States Attorney General to do their duty to investigate the allegations contained in this Civil Action for violations of Federal laws. The violations are incidents that resulted in damages to the plaintiff and are claims upon which the United States Attorney General is to determine if remuneration. That this Court compels the United States Attorney General to enter this action as a plaintiff to protect the Constitutional Rights of Plaintiff, and to prosecute crimes against the "Public and National Interest." The District Court, through the United States Attorney General, to the Federal Bureau of Investigation, has the authority to void an investigation to be conducted of the violations of Federal Criminal Laws. If the violations are confirmed, then the Court has a mandate to compel the United States Attorney General to enter this action as a plaintiff on behalf of the citizens of the United States. The Court has a mandate under 42 USC 2000b-2 to certify these facts to the United States Attorney General. These violations are also considered by the plaintiff to be actual "incidents and causes of action" for which damages have been suffered by the Plaintiff and restitution is warranted. The Federal Bureau of Investigation has jurisdiction over the investigation of the court, fraud, embezzlement of monies in a Federal financial assistance program, and civil rights violations. In 1996, the FBI brought 2,108 counts against defendants for 18 USC 242, violations for "deprivation of rights under color of law," therefore establishing jurisdiction over this case. That same year, the FBI brought 554 counts against defendants for "conspiracy against civil rights" therefore establishing jurisdiction over this case. Also in 1996, the FBI  brought 854 counts against defendants for "conspiracy to defraud the United States," therefore establishing jurisdiction over this case. Jurisdiction of this court is authorized by Federal Rules of Civil Procedure 18(d) and arises under the doctrine of pendent jurisdiction set forth in Mine Workers  V. Gibbs 383 US 715 (1965). Jurisdiction of this court also arises under 28 U.S.C. Secs. 1331, 1332, 1343, 1443, and 1367(a), 42 U.S.C. 1983, 1985, 18 U.S.C. 1961-1968, and 18 U.S.C. 241. The Civil Rights Division-The Special Litigation Section has the jurisdiction to investigate state and local law enforcement agencies alleged in engaging in a pattern of violating citizen's federal rights and deprivation of rights under the color of law, and may bring civil lawsuits to remedy such abuses. The State of Delaware, Delaware Division of Child Support Enforcement, The Family Court of The State of Delaware and The State of Delaware Department of Justice so maintained with Federal Funds have incarcerated and/or threaten to incarcerate citizens at will regardless of Federal Civil Rights Violations.

5.   The District Court and "all courts" have a mandate to report "evidence of criminal activity" discovered during litigation to the appropriate enforcement agency. The United States Attorney General is the appropriate agency to enter into this action in behalf of the Plaintiff and the United States. The Plaintiff has a "due process and constitutional right" to report criminal activities against the United States and to have them investigated. The United States Attorney General owes the Plaintiff the right (as a

U.S. citizen), to face alleged perpetrators of crimes against the Plaintiff and the United States and to receive restitution in the form of monetary and penal actions.

6.   The Federal Court judges have the authority to set aside or overturn state courts in order to preserve constitutional rights. MITCHUM  V.  FOSTER  407 US 225 (1972), and  LUGAR  V.  EDMONDSON  OIL  CO.  457 US 9 (1982).

7.   Plaintiff hereby states that this civil action is not, at this time, a class action, nor is it currently a criminal action until the United States Attorney General enters into the action as a Plaintiff for the United States. The Plaintiff reserves the right to change the nature of this action in future filings to join others into it as a class action.

8.   Plaintiff incorporates by reference paragraphs 1-7, as set forth in their entirety herein.

PLAINTIFF

9.   Plaintiff Timothy N Joynes is a natural person, residing at 55 West Chestnut Hill Road, Newark, Delaware, United States of America, a U.S. and Delaware resident during all times relevant to this action.

Timothy N Joynes of Newark, Delaware in his full capacity as an individual asserts the following claims against the Defendants in the above titled action:

(1) Violation of 42 U.S.C. 1985; (2) Violation of 42 U.S.C. 1983; (3) Violation of 42 U.S.C. 1981; (4) Civil Rico; (5) Violation of 18 U.S.C. 241; (6 ) Violation of 18 U.S.C. 1503; (7) Violation of 18 U.S.C. 1512(b)(d)(d); (8) Intentional Infliction of Emotional Distress; (9 ) Negligent  Infliction of Emotional Distress; (10 ) Violation of 18 USC 1581; (11) Violation of 18 USC 1584; (12) Violation of 18 USC 1589.

DEFENDANTS

10.   **Defendant, Vincent P Meconi**, 1901 N Dupont Hwy, New Castle, DE 19720, is the Secretary of the Delaware Health and Social Services during all relevant times of this action. He is responsible for the administration of social programs in the State, including the administration of the Child Support Enforcement program. Whereas, Defendant is sued individually and in his official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of "Plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which he by reasonable diligence could have prevented.

11.   **Defendant, Charles E Hayward**, 84A Christiana Road, New Castle, DE 19720, is the Director of the Division of Child Support Enforcement during all relevant times of this action. He is responsible for overseeing the Child Support Enforcement

3

4

Agency program administration and implementation in the State of Delaware. Whereas, Defendant is sued individually and in his official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the Plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

12. **Defendant, The Honorable Martha Sackovich,** is a Commissioner of The State of Delaware Family Court during all times relevant of this action. Whereas, Defendant is sued individually and in her official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That she had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

13. **Defendant, The Honorable Mary Ann Herlihy,** is a Commissioner of The State of Delaware Family Court during all times relevant of this action. Whereas, Defendant is sued individually and in her official capacity, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That she had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

14. **Defendant, The Honorable Judge Jay H Conner,** is a State of Delaware Family Court judge during all times relevant of this action. Whereas, it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That he had knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

15. **Defendant, Christopher Spizzirri,** is a Deputy Attorney General for the State of Delaware Department of Justice during all times relevant of this action. He is responsible for prosecuting cases for the Division of Child Support Enforcement for The Family Court of The State of Delaware. Wherein, it is alleged while cloaked "under the color of law," caused the deprivation of the plaintiff's civil rights and privileges secured by the United States Constitution. That he prosecutes cases without having full knowledge of the facts as required by the Federal Rules of Evidence 602 & 603, harassing, obstructing and suppressing pro-se litigants by denying them due process rights, making false statements to influence the judiciary, and having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented.

5

16. **Defendant, Stephanie Fitzgerald,** is a Mediator for the State of Delaware Family Court during all times relevant of this action. She is responsible for establishing child support orders for the State. Wherein, it is alleged while cloaked "under the color of law," harassed and suppressed plaintiff's due process rights, makes court procedures as difficult as possible, doctors child support formulas in favor of custodial parent (prejudice), treats custodial and non-custodial parents differently, fails to establish child support orders as per established guidelines and discriminates against the plaintiff because he is a man. This defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or doing the same, neglected or refused to do that by which by reasonable diligence could have prevented.

17. **Defendant, The Family Court of The State of Delaware,** is a court of the state judiciary that has extensive jurisdiction over all domestic relations including divorce, custody, child and spousal support and property division. This branch of the state judiciary is at all times relevant of this action. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that, "under the color of law," the Defendant willfully classifies and treats fathers and mothers differently, though similarly situated if not the same (gender discrimination), with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose, in dealing with support of children conceived between parents. This court has a history of showing unconstitutional favoritism toward mothers and denying fathers equal protection as required by the 14th amendment of the Constitution of The United States. This Defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or doing the same, neglected or refused to do that by which by reasonable diligence could have prevented. This court has been able to change their rules of civil procedures designed to deny non-custodial parents (mostly fathers), the right to substantive and procedural due process. This Defendant uses grants of Federal financial assistance to suppress, obstruct and deny the Plaintiff's civil rights.

18. **Defendant, Delaware Department of Health and Social Services,** 1901 N Dupont Hwy, New Castle, DE 19720, is an agency that provides health and other services to the citizens of the State of Delaware. One of its responsibilities is operating the Child Support Enforcement Program known as The Division of Child Support Enforcement. This Agency is also responsible for ensuring that the Child Support Enforcement program complies with the Federal Statutes and Regulations and that it conforms to Title IV-D of the Social Security Act. This agency is responsible for assuring the protection of all civil rights of litigants involved. This Agency has appointed the Delaware Department of Justice to represent their interest in The State of Delaware Family Court and deny non-custodial parents Due Process and Civil Rights as guaranteed by the Constitution of The United States. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that under "the color of law," denied non-

6

custodial parents the full due process requirements of our Constitution. The motivational factor behind this Defendant's Civil and Constitutional Rights violations against the Plaintiff is to assure the continuation of Federal money received for operating the child support program. This agency does not have to show that they actually collect child support due. They would just have to show the dollar amount of established cases, therefore allowing them to increase the amount of Federal money received for enforcement, in violation of 18 U.S.C. 641, 643 and 666.

19. **Defendant State of Delaware Division of Child Support Enforcement,** 84A Christiana Road, New Castle, DE 19720, is an agency of the State of Delaware Department of Health and Social Services. They are responsible for administering the Child Support Enforcement Program for the State of Delaware as required by Title IV-D of The Social Security Act. Whereas, the Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States, wherein it is alleged that, "under color of law," willfully classifies and treats mothers and fathers differently, establishing on presumption two classes of families (custodial and non-custodial) though similarly situated, with no apparent compelling state interest or interest in law, or any rational basis to legitimate state purpose, in dealing with support of a minor child and making the assumption that the custodial parent is providing all the needs of the child and the non-custodial parent is not, and denying the non-custodial parent due process as required by 42 U.S.C. 666. This Defendant has appointed the Delaware Department of Justice to represent their interest in the State of Delaware Family Court and deny non-custodial parents Due Process and Civil Rights as guaranteed by The Constitution of The United States.

20. **Defendant, Delaware Department of Justice,** is a department of the State of Delaware. Their functions within the state is to provide successful prosecution of violations of criminal law, provide legal services to state agencies, officials, and instrumentalities, and to protect the public against fraud and deceptive trade practices. This branch of the state government is at all times relevant of this action. Whereas, this defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of The United States wherein it is alleged that, "under the color of law," willfully prosecutes cases without having full knowledge of the facts as required by the Federal Rules of Evidence 602A.603, harassing, obstructing and suppressing pro-se litigants by denying due process rights, making false statements to influence the judiciary, and having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in the preventing the same, neglected or refused to do that by which reasonable diligence could have prevented. This agency uses grants of Federal assistance to suppress, obstruct and deny the Plaintiff's civil rights. This Defendant willfully classifies and treats fathers and mothers differently, though similarly situated if not the same (gender discrimination) with no compelling state interest, interest in law, or any rational basis to a legitimate state purpose.

21. **Defendant, State of Delaware Judiciary,** operates several courts, including the Supreme Court, Court of Chancery, Superior Court, the Family Court, the

7

Court of Common Pleas, the Justice of The Peace Court, and related judicial agencies. Whereas, the Defendant is sued for cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of the United States wherein it is alleged that "under the color of law," the Defendant willfully classifies and treats mothers and fathers differently, though similarly situated if not the same,(gender discrimination), with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose. Whereas, this judiciary uses Federal funds to suppress, obstruct and deny the plaintiff's rights guaranteed by the 14th Amendment of the Constitution, and having the power to prevent or aid in preventing the same, neglected or refused to do that by which reasonable diligence could have prevented.

22. **Defendant, State of Delaware, Dover, Delaware,** is at all times relevant to this complaint. Whereas, this Defendant is sued in cause for its willful participation in the deprivation of civil rights guaranteed by the Constitution of the United States wherein it is alleged that, "under the color of law," treats mothers and fathers differently, though similarly situated, if not the same, with no apparent compelling state interest or interest in law, or any rational basis to a legitimate purpose, in dealing with child support and custody. Because of this classification and the use of vague and ignorant rules and laws pertaining to child support and custody, denied the Plaintiff of Procedural and Substantive Due Process of law under when it involves the deprivation of life, liberty, property, protection of the family, reputation and happiness. The Plaintiff was denied a due process hearing as required by the 6th amendment. The motivational factor behind this Defendant's Civil and Constitutional Rights violations is to insure the continuation of Federal money received for operating the Child Support Program, the greater the support obligation, the greater the subsidy. This Defendant has full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in the preventing the same, neglected or refused to do that by which reasonable diligence could have prevented.

23. **Defendant, Delaware Support Ad Hoc Committee,** is a committee established by the State of Delaware Family Court Division. This Committee is responsible for and is charged with reviewing and updating the child support guidelines in accordance with the guidelines that are set forth in Federal Regulations 45 CFR 302.56. This regulation requires that all states must have in effect guidelines for establishing and modifying child support orders within the state. This committee is at all times relevant to this complaint. The Defendant Ad Hoc Committee are sued individually and in their official "court appointed" capacity wherein it is alleged, while "cloaked under the color of law," caused the deprivation of Plaintiff's civil rights and privileges secured by the United States Constitution. That they, having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that by which reasonable diligence could have prevented. This Committee was delegated the authority and responsibility to child support by the State of Delaware to deny the Plaintiff's Civil and Constitutional Rights. They have been able to establish vague and ignorant rules and laws pertaining to child support and custody, and treats each of them

8

differently, though similarly situated if not the same, with no apparent compelling state interest, interest in law, or any rational basis to a legitimate state purpose. The motivational factor behind these Defendants' Civil and Constitutional Violations is to insure the continuation of Federal money received. This Committee uses grants of deprivation of Federal financial assistance to suppress, obstruct and deny the Plaintiff's civil rights. This Committee is fully aware that discrimination is prohibited in Federal financially assisted programs as alluded to in 42 U.S.C. 2000d.

24.    **Defendant, The Honorable Governor Ruth Ann Minner,** was at all times relevant to this complaint. Whereas, Defendant is sued individually and; in her official capacity, wherein it is alleged that while cloaked "under the color of law," caused the deprivation of the Plaintiff's civil rights and privileges secured by the United States Constitution. That she having full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented. This Defendant was informed of the potential Civil Rights Violations against the Plaintiff, but chose to pass her responsibility to Charles Hayward and Vincent Meconi, and condone and conspire with them to deny Plaintiff his rights and liberties as guaranteed by the Constitution. This Defendant approved the State of Delaware child support plan and submitted for approval to the Secretary of the U.S Department of Health and Social Services Office of Child Support Enforcement.(45 CFR 301.12 and 45 CFR 301.13). This Defendant is also in the position and has a constitutional mandate to protect the "civil rights" of the Plaintiff, but instead ignored her responsibility to the Citizens of the State of Delaware and made a conscientious decision not to. Her main concern was to protect the "Block Grants" from the Federal funds and using Plaintiff's son as a pawn to obtain these funds, regardless of Plaintiff's civil rights or Federal law violations. Because of her actions, the Plaintiff suffered emotional distress, deprivation of life, liberty, property, and reputation. This Defendant has allowed the State of Delaware Judiciary to willfully discriminate between two classes of families, custodial and non-custodial, and to deny the non-custodial parents substantive and procedural due process, in order to assure the continuation of the Federal money. This Defendant uses grants of Federal assistance to suppress, obstruct and deny the Plaintiff's civil rights.

25.    **Defendant, Denise Lewis,** 84 Freedom Trail, New Castle, Delaware 19720, wherein it is alleged while cloaked "under the color of law," caused the deprivation of the Plaintiff's Civil Rights. This Defendant employed the use of The Division of Child Support Enforcement, The Family Court of the State of Delaware and The Delaware Department of Justice to deny the Plaintiff's civil rights as guaranteed by the Constitution of the United States. That she had the full knowledge of the wrongs conspired to be done as allude to in 42 U.S.C. 1985, or wrongs about to be done, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented. This Defendant is the spouse of the Plaintiff. As of the date of this filing, this Defendant is neither divorced nor separated from the Plaintiff. Spouses can sue each other while still married for torts, intentional and

9

unintentional. (Bliss v. Caudle 560 SW 2d 925 TX 1978.) By this Defendant's actions, she caused the State of Delaware to deny the Plaintiff his civil rights as guaranteed by the Constitution of The United States, and caused the Plaintiff to suffer emotional distress, deprivation of life, liberty, property and reputation. This Defendant allowed the State of Delaware to willfully discriminate between 2 classes of families, custodial and non-custodial, and deny the Plaintiff substantive and procedural due process.

26.    **Defendant, Christine K Demsey,** 1328 King Street, Wilmington, DE individually wherein is it is alleged while cloaked "under the color of law," caused the deprivation of Plaintiff's Civil Rights as guaranteed by the Constitution of the United States. This Defendant became part of this civil complaint when she appeared in The State of Delaware Family Court on January 11th, 2005 to represent defendant Denise Lewis. A review of her lawyer profile revealed that she had been admitted to the Delaware and Pennsylvania Bar in 1982. For over 22 years she has specialized in family law, adoption, child custody, and child support. Now she appears as a defendant because of her willful continuation of the deprivation of Plaintiff's civil rights. This Defendant willfully prosecutes cases without having full knowledge of the facts as required by The Federal Rules of Civil Procedure 602& 603, harassing and obstructing the Plaintiff's due process rights. This Defendant has influenced the Family court by interfering with the Plaintiff's right to raise his child as he sees fit. "As long as a defendant who abridges a plaintiff's constitutional right pursuant to a statute of local law which empowers him to commit the wrongful act, an action under the Federal Civil Rights statute is established.". Lavene vs. Corning, 316. F Supp. 629

27.    This Defendant had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to that by which reasonable diligence could have prevented. "The United States Supreme Court held the "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials," can no longer justify a statute that discriminates on the basis of gender. "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." (Stanton vs. Stanton, 421 U.S. 7,10, 95) However this Defendant is trying to commit the Plaintiff to a life of a slave, which is a violation of 18 U.S.C. 1581, 1584. Also, this Defendant is in direct violation of 18 U.S.C. 241 which states: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession or District in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States, or because of his having so exercised the same, or if two or more persons go in disguise on the highway, or in the premise of another, with the intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured- they shall be fined under this title or imprisoned not more than ten years or both; and if death results.......they shall be fined...... or may be sentenced to death." Therefore this Defendant was the direct or proximate cause of Plaintiff's injury and causes for relief.

**CONSTITUTIONAL SOVEREIGNTY**

10

28. I, Timothy N Joynes, am a free and natural person, a citizen of the United States of America, and a resident of Delaware, all within the Federal jurisdiction of the United States District Court, District of Delaware. Now I am here appearing and pray for relief before this Honorable Court, and invoke the sovereignty of the United States Constitution.

29. This Court should not hold this litigant's pleadings to the same high standards of perfection and technicality as attorneys. If faced with a motion to dismiss, the Court should give the Plaintiff's pleadings especially lenient treatment, so that, before the Court dismisses the complaint of these in Propia Persona Plaintiff, the Plaintiff can be given an opportunity to offer evidence or further particularize his claim. The Federal Courts have ruled that in Propia Persona Civil Rights pleadings are to be liberally construed. Haines vs. Kerner 404 U.S. 519, 92 S. Ct 594 (1972). In the matter of Keithen, 395 U.S. 411, 421 (1969). If this Honorable Court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence structure, or unfamiliarity of pleading requirements. Smith vs. US District Court 956 F2d 295 (D.C. 1992), Freeman vs. Department of Corrections, 949 F2d 360 (10th Cir. 1991).

30. This case involves vital questions of civil rights important to many Americans of similar circumstances throughout this nation, because of this, abstention should not be considered. The Plaintiff has suffered severe damages and is entitled to redress and remuneration, in the form of compensatory, punitive and exemplary awards for damages, for crimes against the common good and public offenses. The Plaintiff challenges the actions of the State of Delaware, The Family Court of The State of Delaware, The Delaware Division of Child Support Enforcement, The State of Delaware Department of Justice, The State of Delaware Judiciary, and Denise Lewis and her attorney, Christine K Demsey, also listed as defendants to this complaint. Because of these Defendants' actions, they infringed on the Plaintiff's Civil Rights and Liberties. The Plaintiff urges that this Honorable Court take particular concern since the State of Delaware has been unwilling to protect the rights of its own citizens.

31. The State of Delaware, as a line of defense, will try to use the 11th Amendment as a reason to request the Court to dismiss this claim. However, the Supreme Court has ruled that States do not have immunity from acts that deprive persons of life, liberty, property and reputation. They will also claim that this Honorable Court does not have the jurisdiction to here this complaint.

32. 18 USC 3231 "The District Court of The United States shall have original jurisdiction, exclusive of the Courts of the States, of all offenses against the laws of the United States"

33. United States vs Guest 383 U.S. 745, "Section 5 of the Fourteenth Amendment enables Congress to punish interference with constitutional rights "whether or not state officers or others acting under color of state law are implicated. There the

statute involved (18 USC 241) prescribed all conspiracies to impair any right "secured" by the Constitution. In order for a conspiracy to qualify it need not involve any state action. By the same reasoning the "custom....of any state," as used in Sec. 1983 not involve official state development, maintenance or participation. The reach of section 1983 is Constitutional rights, including those under the 14th Amendment, and Congress rightly was concerned with their full protection, whoever might be the instigator of the offense"

34. 42 USC 2000d-7 (a) (1) " A state shall not be immune under the 11th Amendment of the Constitution of the United States from suit in Federal Court for a violation of Title VI of the Civil Rights Act of 1964 (42 USC 2000d et seq) or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." (2)." In a suit against a State for violation of a statute referred to in paragraph one, remedies are available for such violation to the same extent as remedies are available for a violation in the suit against any public or private entity other than a state."

35. The Fourteenth Amendment to the United States Constitution guards against the state depriving any person of life, liberty or property, without Due Process of Law, nor deny to any person the Equal Protection of the Laws. Section 5:" The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article"

36. Fitzpatrick vs. Bitzer, 427 US 445 (1976) "Through the 14th Amendment, Federal power extended to intrude upon the province of the 11th Amendment and therefore Section 5 of the 14th Amendment allowed Congress to abrogate the state's immunity from suit guaranteed by that amendment."

37. Ex Parte Virginia, 100 US 339 (1879) "State officials acting in their official capacities, even in abuse of their lawful authority, generally are held to act under color of law. This is because such officials are "clothed with the authority" of state law, which gives them power to perpetuate the very wrongs that Congress intended section 1983 to prevent".

38. Monell vs. New York City Dept. of Social Services, 436 US 658 (1978) "Local governments can be sued directly under 1983 for monetary, declaratory, or injunctive relief where..... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

39. Westberry vs. Fisher, 309 F. Supp. 95 (District Court of Maine-1970) "Governmental immunity is not a defense under 42 USC 1983 making liable every person who under the color of state law deprives another person of his civil rights".

40. The State of Delaware may request dismissal for failure to state "a, cause of action for equitable, injunctive, declaratory relief and restitution or to make a concise

path of conspiracy to deny civil rights. However, the Supreme Court of the United States makes it clear that only two allegations are required to state a cause of action under a statute.

41. <u>Gomez vs. Toledo</u>, 446 US 635 (1980)." By the plain terms of section 1983, two and only two allegations are required in order to state a cause of action under that statute. First, the Plaintiff must allege that some person has deprived him of a Federal right. Second, he must allege that the person who have deprived him of that right, acted under the color of state or territorial law."

42. The Plaintiff cannot rely on the Delaware Supreme Court to correct the deprivation of civil rights. The Honorable Ruth Ann Minner has signed legislation that overrides the Delaware Supreme Court and cripples their decision-making powers. This was accomplished on February 02, 2005. This involves the deprivation of prisoner's civil rights, and the denial of Due Process. Her actions violated the separation of powers, which is a doctrine employed by the US Constitution to prevent any one branch of government from gaining too much power. Since the Governor is able to override the Delaware Supreme Court powers to interpret laws, even though state law allows the Supreme Court of Delaware to liberally interpret them, then the Delaware Supreme Court would be the wrong venue to correct the violation of Civil Rights.

43. The Plaintiff Request that before dismissing this complaint, this Honorable Court should consider Ankenbrandt vs. Richards, (504 US 68- 1992.)"The District Court erred in abstaining from exercising jurisdiction under the Younger Doctrine. Although this Court has extended Younger abstention to the civil context, it has never applied the notions of comity so critical to Younger where, as here, no proceeding was pending in state tribunals. Similarly, while it is not inconceivable that, in certain circumstances, the abstention principles developed in Burford v.Sun Oil Co. 319 US 315, might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony or child custody, such abstention is inappropriate here, where the status of the domestic relationship has been determined as a matter of state law, and in any event, has no bearing on the underlying torts alleged."

## FACTS AS TO THE PLAINTIFF

44. In summary, Mr. Timothy Joynes is a person who is not afraid to work and earn an honest living. At times, he would on occasion work overtime to assist his employer when they needed work to be covered.

45. Mr. Joynes originally was raised in Paterson, NJ. He completed his secondary education at Passaic County Technical and Vocational High School in Wayne, NJ, where he acquired the carpentry trade, as well as the skills of a mason and an electrician. He graduated from secondary school in 1988.

46. Mr. Joynes never continued his post-secondary education, but chose to work to help his parents at home. Around the time of his graduation, his younger sibling

13

became pregnant at the age of 15. Even though the Plaintiff was about to purchase his first vehicle, he made his first sacrifice by assisting in the care of his niece. In fact, Mr. Joynes postponed purchasing a car for three years in order to care for his niece. Shortly after this, his father was laid off from his job, and Mr. Joynes was the only one that was employed. He made the sacrifice for his family and to help pay many household bills so that his parents' primary needs were provided for. This was the Plaintiff's first experience of family responsibility. In fact, Mr. Joynes took on a second job working for UPS in Saddlebrook, NJ. He worked at the facility for 4 years. Around 1992, his father suggested that he study for a commercial drivers license. Reluctant at first, the Plaintiff studied, tested and acquired a CDL license. For all the sacrifices that he made, his parents, when they were financially able, loaned him the money to purchase his first vehicle. He took care of that vehicle like a child, and he felt that doing good deeds were beneficial not only to himself, but also to those he helped.

47. In 1994, Mr. Joynes moved to Trenton, NJ. His main goal was to move to Delaware, so that he can make a better life for himself. But the move to Delaware would not be facilitated until he was able to secure a job. For three years, he worked in the Trenton, NJ area driving school buses during the day, and Limousines and Charter buses at night and weekends. During his free time, he traveled to Delaware looking for a job that would provide for his needs.

48. On March 17, 1997, Mr. Joynes began to work for the Delaware Transit Corporation, also known as DART. The Plaintiff continues to work there until this day. On July 7, 1997 on his first day as a full-time operator, he met Denise Lewis. Denise was a 26-year-old woman that came from New York. She has just moved to Delaware to begin her job at the Chase Manhattan Bank of New York. At first, the Plaintiff and the Defendant talked quit a lot. Then the Plaintiff would visit her home on the weekends. But an accident that occurred while the Plaintiff was at work started a chain of events that would affect the Plaintiff until this day.

49. Since the Plaintiff was still living in New Jersey, Denise Lewis felt that going back home would not be wise. She invited the Plaintiff to stay overnight. The overnight turned into moving in.

50. In time, Denise Lewis became pregnant. At first, the Plaintiff became afraid. Since this was his first child, he was concerned about conceiving the child out of wedlock. Denise Lewis told the Plaintiff that she was determined to have the baby. That decision did not in any way caused the Plaintiff to run from his responsibility. In fact, on February 6, 1998, The Plaintiff and the Defendant, Denise Lewis, were married at the Clerk of The Peace Court in Wilmington, Delaware.

51. On August 25, 1998, the Plaintiff's first son was born. His name was Daniel. Two months later Denise Lewis became pregnant with the Plaintiff's 2nd child. On July 4th 1999, a second son was born to the Plaintiff and the Defendant Denise Lewis. This son is named Andrew.

14

52. On August 1, 2001, The Plaintiff and the Defendant, Denise Lewis encountered marital problems and were forced to separate. The separation was not officially filed in The State of Delaware Family Court. Tragically, on November 11th 2001, The Plaintiff and Defendant's son Andrew was killed in a traffic accident on the NJ Turnpike. The Defendant, Denise Lewis, did not have life insurance for the children, but the Plaintiff maintained insurance for all family members.

53. The Plaintiff covered the entire cost of the funeral, which cost almost $8,000.00. The Defendant, Denise Lewis, did not shoulder any of the cost. Prior to Andrew's death, the Plaintiff and the Defendant had agreed to send their children to New York, while they were trying to work out their problems. But after the burial of their son, the Defendant, Denise Lewis requested that Daniel be returned to Delaware to be with her. Already grieving, the Plaintiff conferred.

54. Within one week after allowing the Plaintiff's and the Defendant's son to return to Delaware, the Plaintiff received a phone call from the Division of Youth and Family Services of the State of Delaware. They informed him that they were investigating him for child abuse. Daniel was 3 years old at the time

55. By December 26, 2001 a notice was sent to the Plaintiff informing him that the State of Delaware was closing the case because they found that the accusations by Daniel were unwarranted.

56. In January 2002, The Defendant Denise Lewis, without the consent of the Plaintiff, enrolled Daniel into a counseling session that would last for about two months. This was the beginning of many successful campaigns that the Defendant Denise Lewis would institute against the Plaintiff to deny him of his parental rights.

57. In November 2002, Denise Lewis lost her job at Chase Manhattan Bank due to a reduction in the workforce. Her employer gave her a severance package that allowed her to continue receiving her full week/s pay thru late January, and a severance package that would carry her through March. At this time, the Plaintiff and Denise Lewis were trying to work out their differences. Denise wanted a house, and she wished not to search for employment until she was able to acquire a house. Since Denise was not employed, the Plaintiff asked that he not continue to retain and pay for a day-care provider. She requested that I continue to pay the provider, that way the provider would be "retained," in the event that she was to gain meaningful employment. So the Plaintiff was paying the day-care provider for services that she was not providing at the request of Denise.

58. At the same time the Plaintiff was providing full medical, dental and life insurance for Denise and their surviving son. Daniel was covered on the Plaintiff's insurance policies since birth; Denise Lewis was covered since 2000, with no lapse in coverage. The Plaintiff was fulfilling his obligation to support his family as required in the State of Delaware Domestic Relations Code.

59. By March 2003, Denise's severance package ran out and she was not employed. She was forced to begin drawing unemployment. The Defendant was encountering a drastic lost of income, but at the same time she was not actively seeking employment. The Plaintiff was actively employed and was still paying for daycare that was supposed to be utilized. The Plaintiff also had to cover his own household expenses. Finally in August 2004, Denise secured a part-time job at The Law Office of Christine K. Demsey, working only 15 hours a week at $12.00 hour. At the same time, Denise Lewis was still drawing unemployment, with no intention at the time of securing full-time employment or at least obtaining another part-time job to supplement her income.

60. Denise Lewis was expecting the Plaintiff to cover all of her home expenses or at least, a good portion of it. At this time, she had a mortgage payment, a car note, and utilities. All of these thing she acquired around the time that she was unemployed, and she was expecting the Plaintiff to assume these expenses even though he was not living at the residence.

61. Because of this expectation, she approached the Delaware Division of Child Support Enforcement. With all of her unemployment exhausted, and no other source of income other than her part-time job at the law office, she desired to take the Plaintiff "to the cleaners," further skirting her duty to provide for their son Daniel.

62. The Plaintiff was already paying $550.00 per month of for daycare expenses that was not utilized nor chosen. Denise Lewis used the provider sparingly. In addition, the insurance cost for all the members of the Plaintiff's family added an additional $300.00 to the support. This was in addition to the cost of groceries for Daniel and an occasional supplement for Denise as needed.

63. On October 16, 2003, Denise Lewis sought the services of the Division of Child Support Enforcement.

64. On November 6, 2003, the Deputy Attorney General for The State of Delaware requested the Family Court of Delaware to issue a summons to the Plaintiff.

65. On December 2, 2003, the Clerk of The Family Court issued the summons to be served through the Process Server.

66. On December 22, 2003, the Plaintiff received the summons. The summons read:

Attention: Timothy Joyees

You have been named as the respondent in the attached pleading
Which has been filed in Family Court. You will receive written notice
Advising you of the date and of your court mediation / hearing.

If you fail to appear at the scheduled mediation conference or judicial
Hearing, a default judgment may be rendered for the relief demanded
In the complaint. Other sanctions may be imposed as deemed

17

Appropriate by the court. Failure to report a change of address to the Court immediately upon such a change may result in a copies for your Arrest, the entry of a default judgment or other appropriate sanctions Imposed against you.

67. Nowhere on this summons did it indicate that the Plaintiff had the right to contest this action. The State of Delaware has a rule established in the Family Court Rules of Civil Procedure that prohibits respondents from contesting child support summonses.

68. Title IV-D of the Social Security Act requires safeguards for the protection of Due Process.

69. **42 USC 666 (6)** "Procedures which require that a non-custodial parent give security, post a bond, or give some other guarantee to secure payment of overdue support, after notice has been sent to such non-custodial parent of the proposed action and the procedures to be followed to contest it (and after full compliance with all procedural due process requirements of the State)."

70. **42 USC 666 (7)(A)** "Safeguards - Procedures ensuring that, in carrying out subparagraph (A), information with respect to a non-custodial parent is reported-only after such parent has been afforded all due process required under State Law, including notice and a reasonable opportunity to contest the accuracy of such information; and (2.) only to an entity (that has furnished evidence satisfactory to the State that the entity is a consumer reporting agency)."

71. **42 USC 666 (19).** "Such procedures shall be subject to due process safeguards, including (as appropriate) requirements for notice, opportunity to contest the action, and opportunity for an appeal on the record to an independent administrative or judicial tribunal."

72. **Family Court of The State of Delaware Rule 8(b)**" Answers, when required. - An answer shall be required in all civil actions except that, rule 12 not withstanding, an answer shall not be to those petitions in which child support is the sole issue."

73. **Family Court Rules of Civil Procedure Rule 7(a)** Pleadings - There shall be a petition and an answer; a reply to a claim and a counterclaim denominated as such; an answer to a claim and counterclaim ........."

74. Since the Plaintiff was not given an opportunity to contest or answer the child support petition, but was forced to attend the hearing or face arrest, his 14th amendment rights were violated.

75. **The Fourteenth Amendment, Section 1** "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the

18

United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

76. Now that the Plaintiff's rights have been violated, the first mediation conference was scheduled for January 15, 2004.

77. The Plaintiff, in a rush to arrive to Family Court on time, left his documentation needed for the court at home. This proved to be a major mistake since this gave the Defendant Denise Lewis and The Family Court ammunition to violate the Plaintiff's civil rights.

78. Upon arrival to the mediation room, the mediator, Stephanie Fitzgerald, requested that the litigants produce their paperwork. The Plaintiff explained that he had mistakenly left his paperwork at home. When he said this, Stephanie immediately began to become rude and disrespectful toward the Plaintiff and immediately explained that she had a copy of his income statement for 2003. It showed that the Plaintiff had an income of $61,000 for the year. He did not disagree with that figure, but he explained to her that this income included $20,000 in overtime that is not guaranteed. She knew this, but chose to ignore what the Plaintiff was saying. She attributed Denise Lewis with a 40-hour work week with no overtime, thus establishing gender discrimination, and a denial of equal protection under the law.

79. Also present was a representative from the Division of Child Support Enforcement. Stephanie Fitzgerald began to draw up an interim child support order based on non-guaranteed overtime, without producing evidence that the Plaintiff failed to support a child equally conceived, another act of denial of equal protection of the law.

80. This was in direct violation of the Plaintiff's 14th Amendment rights. Once this was done, she requested that he sign the order. The Plaintiff refused. He requested that he have his case heard in Family Court in front of a commissioner. Then she told the Plaintiff to leave the room. If he had refused, then she would have the Capital Police escort him out in handcuffs. Not only did she sign to have his pay attached, she initiated the first step toward making the Plaintiff a peon to the State of Delaware. Defendant Denise Lewis, his son and The Division of Child Support, all without proof of non-support. Defendant Denise Lewis laughed as the Plaintiff left, and she felt pleased as well as Defendant Stephanie Fitzgerald of violating Plaintiff's civil rights.

81. Stephanie Fitzgerald had access to the State of Delaware Department of Labor Wage Statistics. According to page 4 of the report, this statement was made: Wages including base rate, cost-of-living allowances, hazardous duty pay, incentive pay (including commissions, piece rates, and production bonuses), longevity pay, on call pay, and portal to portal pay. Not included are back pay, overtime pay, severance pay, shift differential pay........

82. Stephanie Fitzgerald also had full access to the Family Court of The State of Delaware Child Support Formula Evaluation and Update, dated September 23, 2002. On page 3 of this report, Section IV paragraph 1 states:

The minimum attribution of income shall be increased to $1300.00 per month, or the statutory minimum wage (40 hours per week) whichever is greater.

83. On page 5 of the same report, it makes this statement:

All unemployed or underemployed, able-bodied persons shall be attributed wages no less than $7.50 per hour for a 40-hour work week, or $1300.00 per month, or the statutory minimum wage (40 hours per week), whichever is greater. Although this amount is more than the prevailing minimum wage, it is the median wage paid to retail sale persons, the most common low-wage occupation. Parents have a duty to support their children to the best of their ability. This is to support the presumption that a person is employed on a full time basis at a position that commensurate with his/ her skills, education and training.

84. Page 4 Section 2 of the same report makes this statement:

Underlying the Delaware Child Support Formula is the concept that both parents are responsible for the support of their children. An individual cannot, by voluntary unemployment or underemployment, shift the burden of support to the other parent. As to the method of attribution, an individual's "value as a homemaker" has been eliminated as a basis of attribution........the court has the benefit of statistical wage information for non-appearing parties; but where no better information exists, the non-appearing party will be assessed with at least the same amount of income as the appearing party.

85. Stephanie Fitzgerald was fully aware of this information, but chose to ignore Plaintiff's civil rights, which makes but one of the direct causes of injury and causes for relief.

86. The Legal definition of peonage:- "A condition of compulsory service or labor performed by one person, against his will, for the benefit of another person due to force, threats, intimidation or other similar means of coercion and compulsion directed against him."

87. The Plaintiff earns $19.31 per hour. The Plaintiff's earnings for a 40-hour work week is $772.40. If we take that figure and multiply that by 52 weeks, then that would get us an annual salary of $40,164.80, based on 2080 hours, (52x40). Anything over that annual salary is overtime. Overtime is not guaranteed, but forcing the Plaintiff to continue working above his capacity is a violation of the 13th amendment.

88. The Thirteenth Amendment:- "Neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly

19

convicted, shall exist within the United States, or any place subject to their jurisdiction."

89. The Fourth Amendment:- "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

90. The Plaintiff did get his request to have his case heard in Family Court by a commissioner. This case was scheduled for April 12, 2004. Commissioner Martha Sackovich was presiding over this proceeding.

91. The Plaintiff was hoping that this hearing would vindicate him, but it did not prove to be the case.

92. The Defendant, Christopher Spizzirri was prosecuting the case for Denise Lewis and the Delaware Division of Child Support Enforcement. Though he had no knowledge of the facts of the case at hand, as required by the Federal Rules of Civil Procedure 602& 603, he represented Denise Lewis at the hearing.

93. Mr. Spizzirri made the request that the court reward Denise Lewis child support based on the Melson Formula. The Plaintiff protested, stating that he always supported his son, even though he was not living with him, and the Plaintiff has the documentation to prove it. Mr. Spizzirri questioned the Plaintiff concerning what support he was providing.

94. The Plaintiff immediately provided proof by submitting to the court, cancelled cashiers checks for day-care and cashiers checks for Denise Lewis' primary home expenses, including food. The Plaintiff also presented proof that he has maintained insurance on Denise Lewis since July 1, 2000 and on Daniel Joynes since his birth. The Plaintiff also provided his tax return showing the recipient of daycare expenses paid. When the court asked for the Plaintiff to cross-examine Denise Lewis, he asked if he had continually provided care for the child. Under oath, Denise admitted yes.

95. To suppress Plaintiff's questions, Christopher Spizzirri objected, saying that the questioning was irrelevant to the case. The Plaintiff answered that it was relevant because the Division of Child Support Enforcement made an accusation that I failed to support, and he wanted to prove that he never negated his responsibility. The Honorable Martha Sackovich overruled the Attorney General.

96. However, despite proving that the Plaintiff never negated his responsibility to support, the commissioner found that because the Plaintiff is the father of Daniel and because he is married to Denise, that made him liable for support. The commissioner never indicated what finding of law made him liable to Denise.

97. Because the Plaintiff was not making payments through the child support

20

system, then he is obligated to be part of it. The Plaintiff never broke any state laws, nor did the court prove that the Plaintiff broke state law.

without just cause, and submitting the Plaintiff to a life of peonage.

98. This Hearing now solidifies the unlawful taking of Plaintiff's property

99. When the Plaintiff received his permanent support order, The Honorable Martha Sackovich raised the Plaintiff's annual salary to $72,000 a year, almost double the base salary. With this salary, the Plaintiff would have to work 80 hours a week, just to keep a roof over his head. All of this was done while "cloaked under the color of law." At the same time, the court guaranteed that the Plaintiff will never see his son regularly.

100. The reasoning behind this move was to assure that Denise would not suffer a "loss of support," but at the same time denying the Plaintiff life, liberty and freedom to make decisions concerning this child. The Family Court deliberately denied the Plaintiff the right to raise his child as he sees fit.

101. The Family Court of The State of Delaware regularly convicts non-custodial parents for non-support because they classify custodial and non-custodial parents differently, with no legitimate state purpose. Martha Sackovich and Christopher Spizzirri are another source of injury to the Plaintiff and causes for relief.

102. **13 Del.C 701** – "The father and mother are the joint natural guardians of their minor child and are equally charged with the child's support, care, nurture, welfare and education. Each has equal powers and duties with respect to such child, and neither has any right, or presumption of right or fitness, superior to the right of the other concerning such child's custody or any other matter affecting the child. If either parent should die, or abandon his family, or is incapable, for any reason, to act as guardian of such child, then, the custody of such child devolves upon the other parent. Where the parents live apart, the court may award the custody of their minor child to either of them and neither shall benefit from any presumption of being better suited for such award."

103. Even though this law is in the Delaware Law Books, the State of Delaware applies the law differently toward custodial and non custodial parents.

104. Now that the Family Court of Delaware determined that the Plaintiff was absent from his child's life without stating a legitimate purpose, the Plaintiff decided to take further action.

105. On July 9, 2004, The Plaintiff made a phone call to the Director of Child Support Enforcement Office. The Plaintiff specifically requested to speak to Charles Hayward. His secretary refused to allow the Plaintiff to speak directly to Charles Hayward, but directed me to another representative of the agency.

106. The Plaintiff began to speak to the unidentified representative. He began to question her on why the Child Support Agency refused to give non-custodial parents

21

their due process rights. She explained that she does not practice law, and therefore could not answer the plaintiff's question. The Plaintiff explained that part of her job description was to protect the rights of both parents. It became evident that the Division of Child Support Enforcement did not understand how to perform their jobs.

107. The Plaintiff explained to the representative that the Social Security Act under Title IV-D requires that non-custodial parents are to be afforded the same equal protection as custodial parents, and that denial of those rights would mean that the agency would be violating a person's civil rights. The representative became irate and hung up the phone.

108. Unable to speak to Defendant Charles Hayward directly, the Plaintiff began to initialize written correspondence to address the denial of civil rights.

109. On July 10th and July 12th 2004, the Plaintiff mailed certified letters of Charles Hayward's office.

110. The first letter addressed the fact that The Division of Child Support Enforcement misunderstood the arranges stated on the audit that was conducted on the Plaintiff's report and that the agency was circumventing their responsibility of investigating the claims on a child support petition before forwarding it to the Delaware Department of Justice.

111. The second letter further addressed The Division of Child Support Enforcement's failure to discover relevant information to discredit the Defendant Denise Lewis' claim that the Plaintiff failed to support his children as required by Title IV-D of the Social Security Act.

112. The Division acknowledged the fact that they overestimated the arrearages, but only after the Plaintiff requested The Federal Office of Child Support Enforcement Region 3 Office in Philadelphia, Pa, to intervene in his behalf. As far as the agency investigating the claims by their clients, Charles Hayward made this comment through this correspondence, dated July 27, 2004.

113. **" In your July 12, 2004 letter, you mention your concerns that the application submitted by the custodial parent was not fully investigated by DCSE. The information DCSE verifies on an agency application for services is done in numerous ways in accordance with the federal guidelines. As an example, when DCSE received the application from the custodial parent on your case, the first step was address verification. This verification was done through a postmaster letter as well as an information letter sent to your employer. This employer information letter requested address verification, as well as information regarding your work hours, salary and benefits..........Once address verification was completed a support petition was prepared."**

114. A similar letter was mailed to Defendant Vincent P Meconi. This letter

22

was also sent via certified mail. It was dated July 25, 2004. The Plaintiff asked Vincent Meconi how they were able to accuse him of his failure to support without just cause and to forward such a claim to the Delaware Department of Justice to support without substantive proof. Here is his response:

115. "**In an attempt to better clarify the process, let me explain that DCSE's procedure for initiating a case for child support enforcement is no different than that of an individual who walks into the court and files a petition on his or her own. The individual filing the petition names the respondent and his or her current address. DCSE does the same when generating a petition for child support. The court then schedules a hearing and notices the parties. The hearing is the fact-finding venue where the court gathers the evidence presented by the parties. The court then, based on the evidence presented, enters an order. An individual's right to due process......comes during the hearing......paragraph 3 of the petition states "respondent has refused to comply with said duty without just cause." This is merely an allegation......it is not meant to be a negative or discriminatory remark toward the respondent.**"

116. A similar letter was sent to Governor Ruth Ann Minner dated July 27, 2004, but the Plaintiff did not receive a response. She left it up to Charles Hayward and Vincent P Meconi to settle the Plaintiff's questions.

117. The handbook on child support enforcement outlines the procedure for initiating child support petitions.

118. "The worker will verify the home and work addresses, then ask the non-custodial parent to come to the CSE office for an interview, or notify him/her that legal action may be taken." The Delaware Division of Child Support Enforcement does not follow these steps. They merely forward the application to the Delaware Department of Justice, who then files a civil summons through the Family Court for processing without ever giving the respondents the opportunity to contest.

119. The actions of the Defendants Hayward, Meconi, and the Honorable Ruth Ann Minner were a direct source of injury and causes for relief.

120. In August 2004, the Plaintiff submitted to the Family Court of the State of Delaware two petitions, a modification of child support and a Rule to Show Cause. The Rule to Show Cause Petition was filed so that the Family Court and The Division of Child Support can explain how they can process a child support procedure without any proof of lack of support.

121. The Rule to Show Cause pleading was ruled by Commissioner Mary Ann Herlihy. The Plaintiff originally had a court hearing scheduled for January 4, 2005. However, on October 26, 2004, the Commissioner ruled on the hearing without giving the Plaintiff the opportunity to appear.

23

122. Mary Ann Herlihy dismissed the claim stating that the Plaintiff did not state a cause of action. I immediately appealed this action by Commissioner Herlihy. In the appeal, the Plaintiff stated that Family Court rule 18 requires that the court hear every case brought to it.

123. On November 17, 2004, the appeal came before the Honorable Judge Jay H Conner. Again, the Plaintiff was denied his right to appear in court to present his case. Despite the fact that the Plaintiff was entitled to have his case heard by the family court, Judge Conner dismissed the case stating again that the Plaintiff did not state a cause of action, claiming that the Plaintiff's action for cause of relief is defective in many ways. After this latest dismissal, justice through the Family Court.

124. By the actions of Judge Jay H Conner and Commissioner Mary Ann Herlihy, they denied the Plaintiff substantive and procedural due process of law. They also denied the Plaintiff equal protection of the law and are a source of injury and causes for relief. Perhaps if Judge Conner and Commissioner Herlihy read Foman vs. Davis, they would have heard the Plaintiff's Rule to Show Cause hearing.

125. **FOMAN vs. DAVIS**, 371 US 178 (1962) "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. The rules themselves provide that they are to be construed 'to secure the just, speedy and inexpensive determination of every action.' Rule 1......Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.....If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.......but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

125. On January 11th 2005, the Plaintiff and Defendant Denise Lewis appeared in the Family Court of the State of Delaware for mediation. The purpose of this mediation was for the modification of the child support payment. Unknowing at the time, Denise retained the services of Christine K Demsey, a family law attorney, and her former employer. The Family Court mediator proceeded to ask for the pay-stubs of the litigants. Upon receiving this information, she began to compile the support order. The plaintiff questioned the mediator about the Family Court Formulary. The mediator responded by saying that there was no such formulary. The Plaintiff opened his laptop computer and turned the screen toward the mediator. The Plaintiff asked if this was the Formulary that they were to use. She said yes. The Plaintiff requested that the Order be processed using the 40 hour work week.

126. The mediator compiled 4 orders, two based on a 40-hour week, two based on year to date income. The mediator asked the Plaintiff which formula would he

24

25

wish. The Plaintiff replied "40 hours as per guidelines".

127. Defendant Christine K. Demsey replied, "No, we are not going to accept that. My client needs more money. Since you have been working overtime, your child needs more of your money."

128. The Plaintiff replied that the only reason why he was working overtime is because he has to in order that he doesn't lose his home. The Plaintiff is being forced to work beyond a normal week to satisfy the greed of her client.

129. The Plaintiff also warned Christine K Demsey that what she was attempting to accomplish was a direct violation of his rights and that she would be subject to further legal action outside of The Family Court of The State of Delaware.

130. She asked the Plaintiff was that a threat. The Plaintiff replied that it was not a threat, but it was a promise that he was going to deliver on and the Plaintiff also notified the Child Support representative and the mediator that he was not intimidated by their actions and that he was prepared to deal with this abuse of legal power head-on.

131. The Plaintiff asked to be excused from the meeting. The mediator granted his request.

132. Upon leaving the courthouse, the Defendants Denise Lewis and Defendant Christine K. Demsey followed the Plaintiff

133. Christine K Demsey introduced herself to the Plaintiff. She explained that the Plaintiff should not be upset with the proceeding. She explained that he needs to work as much as possible to support his son. "Your son needs your money," she said.

134. The Plaintiff replied, "The state and your client needs my money. I am not going to allow this court and you to continue to violate my rights as a parent. At first, I felt guilty about this situation. But now I have a clear conscience. The same way that you have taken action, I can also take action to acquire jurisdiction of you and this court. I have said what I had to say in court. Now it is time for me to take legal action to protect my rights. Why are you following me? Let me go in peace and let me do what I need to do. Have a nice day."

135. Defendant Christine K. Demsey and Denise Lewis relished the fact that they can continue to use The Family Court of The State of Delaware, The Delaware Judiciary, and The Delaware Department of Justice to deny the Plaintiff his Constitutional Rights.

136. By the Defendants actions, the Plaintiff suffered a serious financial setback through no fault of his own.

137. The Plaintiff fell behind in his rent on two occasions, the second

26

incident resulted in the Plaintiff being locked out of his home by the New Castle County Delaware Constable for 24 hours.

138. The Plaintiff had his utilities turned off on two separate occasions, the second shut off occurred during the week that the Plaintiff was not paid. The electric remained disconnected for over one week.

139. The Plaintiff fell behind with his car payments and almost had his car repossessed.

140. Because of the high child support payment, the Plaintiff is forced to work overtime, thus denying the Plaintiff the right to enjoy his son.

141. The Plaintiff's son is failing in school, but because of the State's interference, the Plaintiff is unable to spend time with his son to help him.

142. The Plaintiff was denied the right to raise his child as he sees fit. In fact, the State denied the Plaintiff the right to make decisions concerning the care and nurture of his own child without stating a legitimate purpose. The United States Courts have held the right of parents to raise their children as they see fit.

143. Doe v. Irwin, 441 F Supp 1247 US DC of Michigan (1985) "The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by this amendment(first) and amendments 5,9 and 14."

144. Wallace vs Jaffree, 472 US 38(1985) "The several states has no greater power to restrain individual rights than does the Congress."

145. Reynolds v. Baby Fold, INC, 435 US 963 (1977) "Parent's right to custody of child is a right encompassed within protection of this amendment which may not be interfered with under guise of protecting public interest by legislative action which is arbitrary or without reasonable relation to some purpose within competency of state to effect."

146. Quillion v s Walcott 434 US 246, 255-56 (1978) "The US Supreme Court implied that a married father who is separated or divorced from a mother and is no longer living with his child could not constitutionally be treated differently from a currently married father living with his child"

147. Stanley vs. Illinois, 405 US 645 (1972) " Procedure by presumption is always cheaper and easier than individualized determination. But, when as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risk running roughshod over the important interest of both parent and child. It therefore cannot stand."

148. The United States Supreme Court has made numerous rulings concerning the rights of Citizens to be free from unreasonable government interference.

149. **Weinberger vs. Weisenfeld,** 95 S.Ct. 1225 (1975) " A father, no less than a mother, has a constitutionally protected right to the companionship, care, custody and management of the children he has sired and raised, which undeniably warrants deference and, absent a powerful countervailing interest, protection."

150. **Boyd vs. U.S.** -96 S.Ct. 984 (1976) It is the duty of the courts to be watchful for Constitutional Rights of the citizen, against any encroachments thereon."

151. **Smith vs Organization of Foster Families -** 431 US 816 (1977) " We have little doubt that the Due Process Clause would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without showing of some unfitness and for the sole reason that to do so was thought to be in the children's best interest."

152. In summary, the Defendants, all of them, have denied the Plaintiff the Constitutional Right to be free from unnecessary government intrusion

153. Through the use of the Division of Child Support Enforcement, The Delaware Department of Justice, and the Family Court of the State of Delaware, the Defendants, all of them, caused the unlawful and unconstitutional taking of the Plaintiff's property without due process, thereby violating the Plaintiff's 14th amendment rights. This was done by establishing a temporary child support order, through wage attachment, without any finding of facts of law, or a due process hearing.

154 **Hurto vs. Davis** -454 US 370,373 (1982) " Decisions of the Supreme Court regarding federal law and the Constitution are binding on the lower courts. There is no room in our system for departure from this principle, for it were otherwise, the law would lose its coherence. The trial court is a court of equity and the parties, both men and women, must be treated equally and given their due process rights. The courts must, in equity, have compelling reasons to award more parental rights and control to one and not to the other "

155. Through the actions of Denise Lewis, Christine K Dempsey, The Division of Child Support Enforcement and the Delaware Department of Justice, the Plaintiff endured unconstitutional discrimination in the Family Court, therefore denying him equal protection of the law, and subjecting him to a life of a peon. Their actions also caused the Family Court to classify the Plaintiff as a "deadbeat parent," and subjecting him to bias and gender discrimination, without serving a legitimate government purpose. The US Supreme Court has ruled against such activity.

156. **Craig vs. Boren** - 429 US 190 (1976) "Classifications by gender must serve important governmental objectives and must be substantially related to

27

achievement of these objectives."

157. **Frontiero vs. Richardson** -411 US 677 (1973) "Classifications based upon sex, like classifications based upon race, alienage or national origin are inherently suspect and must be subjected to strict scrutiny.......Any statutory scheme which draws a sharp line between the sexes, solely for the purpose of achieving administrative convenience, necessarily commands 'dissimilar treatment for men and women; who are similarly situated and 'therefore involves the 'very kind of arbitrary legislative choice forbidden by the Constitution."

158. **Boddie vs. Connecticut** 401 US 371 (1971) "Within limits of practicability, a state must afford to all individuals a meaningful opportunity to be heard......Whenever one is assailed in his person or his property, that he may defend...... The right to a meaningful opportunity to be heard within limits of practicality must be protected against denial by particular laws that operate to jeopardize it for particular individuals."

159 **Dunn vs. Blumstein** - 405 US 330 (1972) " In pursuing substantial state interest, state cannot choose means which unnecessarily burden or restrict constitutionally protected activity."

160. **Roe vs. Wade** - 410 US 113 (1973) "Where certain fundamental rights are involved, regulation limiting these rights may be justified only by a compelling state interest and the legislative enactment must be narrowly drawn to express only legitimate state interest is at stake."

161. **Cohen vs. Chesterfield County School Board** - 414 US 632 (1974) "There is a right to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or begat a child....."

162. **Communist Party of US vs. Subversive Activities Control Board** - 367 US 1,6 (1961) "The singling out of an individual for legislatively prescribed punishment constitutes a "bill of attainder" whether individual is called by name or described in terms of conduct, which, because of its past conduct, operates only as a designation of particular persons."

163. **Bailey vs. Alabama** -219 US 219 (1911) " Peonage is sometimes classified as voluntary or involuntary......The act of congress, nullifying all state laws by which it should be attempted to enforce the service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise........The 13th Amendment prohibits involuntary servitude except as punishment for a crime.......The State may impose involuntary servitude as a punishment for a crime, but it may not compel one man to labor for another in payment of a debt, by punishing him as a criminal if he does not perform the service or pay the debt. What the State may not do directly it may not do indirectly. If it cannot punish the servant as a criminal for the mere failure or refusal to serve without paying his debt, it is not permitted to accomplish the same result by

28

creating a statutory presumption which, upon proof of no other fact, exposes him to conviction and punishment.....it is apparent that it furnishes a convenient instrument for the coercion which the Constitution and the act of Congress forbid, an instrument of compulsion peculiarly effective as against the poor and the ignorant. ...... The act of Congress deprives of effect all legislative measures of any state through which, directly or indirectly, the prohibited thing, to wit, compulsory service to secure the payment of a debt, may be established or maintained........"

164. **Ex- Parte State of Virginia** - 100 US 339 (1879) "The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are asserted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the state. This must be so, or the constitutional prohibition has no meaning. Then the State has clothed one of its agents with power to annul or to invade it."

165. The State of Delaware has a "proud history" of denying their citizens their Civil Rights as guaranteed by the United States Constitution.

166. The State of Delaware originally rejected the ratification of the Thirteenth Amendment, which made involuntary servitude unconstitutional. The United States Congress completed the ratification of this amendment on December 6, 1865, but the State of Delaware did not ratify it until February 12, 1901; 36 years later, making it next to the last state to accept the amendment (only Kentucky took longer, March 18, 1976).

167. The State of Delaware also originally rejected ratification of the Fourteenth Amendment, barring states from denying citizens their due process rights. The Congress completed ratification on July 9, 1868. The State of Delaware originally rejected it on February 8, 1867, but 34 years later, on February 12, 1901 the State of Delaware finally ratified this amendment. This proved to be disturbing to the Plaintiff The Plaintiff became thoroughly convinced that The State of Delaware is still rejecting the Thirteenth and Fourteenth Amendments.

168. Today, the State of Delaware is rejecting the Thirteenth and Fourteenth Amendments under the auspices of the Child Support Enforcement Program under Title IV-D of The Social Security Act. They have systematically subjected their citizens to a life of peonage through abuse of the child support program.

169. The Division of Child Support Enforcement, through the Delaware Department of Justice, files a petition for child support based on allegations by the "custodial" parent stating that the "non-custodial parent" is "absent," therefore not providing support for the child(ren).

170. Instead of the Child Support Enforcement Agency verifying the accuracy of the allegations, they just simply forward the information to the Delaware Department of Justice for processing.

171. The Department of Justice forwards the petition to the Family Court for processing, without validating the information for accuracy.

172. The Family Court of Delaware issues a summons to the "non-custodial "parental alleging that the parent was not supporting his child, denying the respondent the option to contest the petition; and seizing this "property," his pay, without a(t) due process hearing. The person that does the unlawful taking is not a judge; but a mediator, who is clothed under the authority of the Plaintiff his fifth and fourteenth amendment rights. The mediators act through their own personal agendas, not by operation of law, because the law authorizes them to do so.

173. A civil right is an enforceable right or privilege which is interfered with by another gives rise to an action for injury. Discrimination occurs when the civil rights of an individual are denied or interfered with because of their gender.

174. The purpose of the State of Delaware denial of the Plaintiff's constitutional rights is to assure the continuation of Federal Financial Assistance of their Child Support Enforcement Program.

175. Federal financing is based upon the performance of the Delaware Division of Child Support Enforcement Program, which is based upon expenditures to amount of collections.

176. Collection amounts used are the amounts of "court orders", as reported to the Federal Government, which is used to determine the performance of a state plan for federal financial participation and incentive payments(bonuses), and to retain full Federal funding of Delaware's welfare program, and not necessarily the amount received from the payers and distributed to the families, in otherwords, the State of Delaware sets high child support orders and they do not necessarily have to receive all monies from those orders to benefit from Federal money.

177. The State of Delaware is using the children of its citizens as pawns to deprive the non-custodial parents their due process rights and to guarantee continuation of full Federal funding. They also accomplish this by setting temporary orders, thus immediately refusing more money that will become eligible for further Federal assistance. The Plaintiff or other litigants have no defense to protect their property.

178. A Pro-se litigant, like the Plaintiff, can contest the unconstitutional taking of his wages, but the court would use their rules to punnigate the Plaintiff by suppressing his testimony, thereby violating his rights to "effective counsel" and an "impartial judge," and assuring the continuation of Federal financial assistance.

179. The Defendants are able to accomplish their mission consistently thanks to the Delaware Ad Hoc Committee.

180. The Delaware Ad Hoc Committee was appointed by Chief Judge Vincent Poppiti to evaluate the child support guidelines as required by Title IV-D of the Social Security Act. This evaluation must be conducted every four years.

181. Some of the members of this Ad Hoc Committee include judges who not only write the rules; they sit on the Bench and rule on the rules they themselves wrote. They also hold power over pro-se litigants and attorneys that may have to argue against these rules to ensure "Due Process" for their clients, through the acceptance motion to practice law in that Judge's particular Court, which must be signed by that judge.

182. Some of the Judges of this Ad Hoc Committee are also Administrative Judges in their specific courts, thereby in charge of their courts, including hearing officers and other personnel, and procedures and "local rules of the court."

183. Attorneys and Pro-se litigants who may argue against the rationality or constitutionality of a "rule" that particular Judge wrote, have no chance ever in that court, for questioning the competency of a "rule", or lack thereof, while trying to ensure "due process", thereby violating that clause of the Fourteenth Amendment and the Sixth Amendment rights to "effective counsel" and an "impartial judge."

184. By taking these actions, the Ad Hoc Committee ensured that their rules will be "set in stone," thereby eliminating the "rebuttable presumption" as mandated by 45 CFR 302.56 and thereby assuring higher Federal Financial Participation.

185. Because of Ad Hoc Committee's actions, they have been able to achieve the highest "possible court orders," and they have been able to meet and exceed their financial windfall through the concise trail of conspiracy and deception.

186. The Ad Hoc Committee circumvents public scrutiny by having closed door meetings and deliberations; because of this, the public is not able to testify and observe the meetings. The dates of these meetings are never made public. These actions have been kept the public from expressing their views, a right guaranteed by the First Amendment, and violating the the Administrative Procedure Act as codified, 5 USC 552b mandating open meetings with public notice in Federal Programs.

187. The Common working class, tax paying citizen has no voice in the laws that affect the most important aspects of their lives; their family, children, finances and future of their children through no fault of their own, thus denying them of their Fourth, Fifth, Ninenth and Fourteenth Amendment rights, in fact, they do not make the Child Support Formulary readily available to the public, thereby furthering the "protection" of Federal financial assistance.

31

188. The Family Court, in cooperation with the Delaware Department of Justice and under the direction of the Delaware Judiciary, obstructs and suppresses litigants by denying them due process by making the court the least accessible as possible, making court procedures as difficult as possible, and they disseminate false and misleading information pertaining to the court and the operation thereof.

189. The Court classifies pro-se litigants differently than those represented, in violation of the equal protection clause of the Fourteenth Amendment.

190. The Family Court and the Delaware Division of Child Support Enforcement encourages the filing of child support petitions, thus ensuring the continuation of Federal Funds and assuring the protection of "custodial" parents and discriminating against "non-custodial" parents, thereby encouraging adversarial relationships between parents.

191. The Family Court utilizes two types of financial reports. One of the reports, Rule 16c Financial Report, allows both litigants to list their income and their monthly expenses. The second report, Rule 16a, only list the incomes of the litigants. It does not allow expenditures to be listed. This would give the impression that both litigants do not have expenditures. This would put the non-custodial parent at a disadvantage because it would leave all of their income to be available for garnishment. It also allows the custodial parent to list excessive child care cost that the non-custodial parent cannot dispute, thus denying them equal protection. The Rule 16a Financial Report is only used for child support cases, thus establishing two classes of families through similarly situated if not the same. This is another example of how the State of Delaware discriminates between custodial and non-custodial parents. The Federal Government prohibits discrimination in federally assisted programs.

192. The Family Court personnel consist mostly of women. The Plaintiff observed that on January 11, 2005, the employees' names that were on each of the mediator rooms were women. In fact, the Plaintiff cannot recall observing any names of men employees listed on any of the conference rooms, leaving speculation that this was done intentionally by the court as another scheme to assure the highest possible source of income by establishing bias toward men. Surely, the women employees would be using their negative feelings toward men and promoting their own "feminism" thoughts and taking their feeling out on the men, instead of applying the law fairly and consistently, another example of denial of equal protection, and contrary to the Supreme Court decisions concerning preferential treatment for women.

193. Orr v. Orr 440 US 268 (1979) "Legislative classifications which distributes benefits and burden on the basis of gender carry the inherent risk of reinforcing stereotypes about the proper place of women and their need of special attention; thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination against women must be carefully tailored. The State cannot be permitted to classify on the basis of sex."

32

194. **Craig vs Boren** 429 US 190 (1976) " Classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."

195. **Johnson vs. Robinson** 415 US 361 (1974) " A classification must be reasonable, not arbitrary, and must rest upon some ground of differences having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

196. **Roe vs Wade** 410 US 113 (1973) " Where certain fundamental rights are involved, regulation limiting these rights may be justified only by a compelling state interest and the legislative enactment must be narrowly drawn to express only legitimate state interest at stake."

197. **Bigelow vs. Virginia** 421 US 809 (1975) " A State cannot foreclose the exercise of constitutional rights by mere labels."

198. **United States vs Brown** 381 US 303 (1946) " Legislative acts, no matter what form, that apply either no named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution."

199. Defendant Denise Lewis employed the services of Defendant Christine K Demsey to further suppress the Plaintiff's rights to raise his child as he sees fit. This is a desperate attempt to completely eliminate any participation by the Plaintiff in the decision making process of his child.

200. Christine K Demsey is a Special Master to the Family Court. She has held this position since 1994. This Defendant has the potential to harm the Plaintiff since her recommendations to the Family Court can be chosen as the best alternative over the objections of the Plaintiff. This is a tactic that Defendant Denise Lewis uses to try to seize total control of the Plaintiff's son therefore interfering with the Plaintiff's family, something the Supreme Court does not advocate.

201. **May vs. Anderson** 345 US 528 " The United States Supreme Court noted that a parent's right to the companionship, care, custody and management of his or her children is far more precious than any property right."

202. **In RE. U.P. 648 P 2d 1364, Utah** (1982) " The right of a parent not to be deprived of parental rights without a showing of fitness, abandonment or substantial neglect is so fundamental and basic as to rank among the rights contained in this amendment(ninth) and Utah's Constitution."

203. The Defendants, all of them, have worked together to devise a plan of attack to deny the Plaintiff equal protection of the law by making false allegations

to The Division of Child Support Enforcement. The Delaware Child Support Enforcement, in cooperation with the Delaware Department of Justice and the Family Court coordinated a plan to deprive the Plaintiff his property before granting him a evidentiary hearing is required by the Seventh Amendment.

204. **Seventh Amendment** " in suits at common law, where the value in controversy shall exceed twenty dollar, the right of trial by jury shall be preserved, and no fact tried by a jury shall otherwise re-examined in any court in the United States.............."

205. Once the property was seized from the Plaintiff, the Defendants successfully suppressed Plaintiff's rights in order to further their plan. They have successfully denied the Plaintiff the right to equal treatment, subjected the Plaintiff to Judicial discrimination because of his gender, denied the Plaintiff of life, liberty and the pursuit of happiness, enabled the government to unlawfully interfere with the nurture and care of his child, and subjected him to further legal harassment by the Family Court of The State of Delaware and The Delaware Department of Justice. In fact, the Defendants are planning to continue their attack on the Plaintiff by attending the child support modification hearing scheduled for June 6, 2005.

206. The Plaintiff hereby request that the United States Attorney General subpoena the records and social files of all the litigants that were processed by the Family Court of the State of Delaware for violations of Civil Rights and violations of Federal Laws.

207. The Plaintiff also requests this Honorable Court to invoke the Constitution to prevent the furthering of the deprivation of Plaintiff's Civil Rights as guaranteed by the Fifth, Thirteenth and Fourteenth Amendments and to punish those Defendants that deprived the Plaintiff of his liberties and his reputation.

208. This Court has jurisdiction and the Plaintiff brings this Federal action to enforce his Constitutionally secured liberties, arising under 42 USC sections 1983,1985,1986, 1988 and 2000bb and as his civic duty as a United States and Delaware citizen.

209. The United States District Court has jurisdiction under the Civil Rights Act of 1866 and 1871 which was never repealed and clearly places the redress by citizens for deprivation of rights in Federal jurisdiction.

210. **28 USC 1343(a)** "The District Courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person (1,) to recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of The United States by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 (2) To recover damages from any person who fails to prevent or aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent (3) To

Redress the deprivation, under the color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States(4)To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

211. 18 USC 641. " Whoever embezzles or knowingly converts to his use of another any money or any property being made under contract for the United States or any Department or Agency thereof, or whoever receives or retains the same with the intent to convert to his use or gain, knowing it to have been embezzled or converted."

212. **Santiago vs. City of Philadelphia** 435 F Supp 136- " I agree with the substantive standard announced by the Court today; imposing liability when a public-official defendant "knew or should have known" of the constitutionally violative effect of his actions. This standard would not allow the official who actually knows that he was violating the law to escape liability for his actions, even if he could not "reasonably have been expected" to know what he actually did know. Thus the clever and unusually well-informed violator of constitutional rights will not invade just punishment for his crimes.I, also agree that this standard applies "across the board," to all "government officials performing discretionary functions." Harlow at 2739, Justice Brennan, Justice Marshall, and Justice Blackmun concurring."

213. " In Pierson vs. Ray 386 US 547, Mr. Justice Douglas, dissenting:
" I do not think that all judges, under all circumstances, no matter how outrageous their conduct are immune from suit under 17 Stat 13, 42 USC Section 1983. The Court's ruling is not justified by the admitted need for a vigorous and independent judiciary, it is not commanded by the common-law doctrine of judicial immunity, and does not follow inexorably from our prior decisions." at 558-559

214. " The Position that Congress did not intend to change the common-law rule of judicial immunity ignores the fact that every member of Congress who spoke to the issue assumed that the words of the statute meant what they said and that judges would be liable. Yet despite the repeated fears of its opponents, and the explicit recognition that the section would subject judges to suit, the section remained as it was proposed, it applied to "any person". There was no exception for members of the judiciary. In light of the sharply contested nature of the issue of judicial immunity it would be unreasonable to assume that the judiciary would have been expressly exempted from the wide sweep of the section, if Congress had intended such a result." at 563

215. "We should, of course, not protect a member of the judiciary "who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good." at 564 "......the judge who knowingly turns a trial into a "Kangaroo" court or one who intentionally flouts the Constitution in order to obtain a conviction? Congress, I think, concluded that the evils of

35

allowing intentional, knowing deprivations of civil rights to go un-redressed far outweighed the speculative inhibiting effects which might attend an inquiry into a judicial deprivation of civil rights as(67).Judges are not immune for their non-judicial activities, i.e., activities which are ministerial or administrative in nature."

216. **Pierson vs. Ray** - 386 US 547 (1967) " When a judge acts intentionally and knowingly to deprive a person of his constitutional rights, he exercises no discretion or individual judgment, he acts no longer as a judge, but as a "minister" of his own prejudice.

217. **Gregoire vs. Biddle** (177 F.2d 579,581-"We, should, of course, not protect a member if the judiciary "who is in fact guilty of using his power to vent his spleen on others, or for any other personal motive not connected with the public good."

218. **Fireman's Ins/ Co of Newark, NJ vs. Washburn County** 2 Wis 2d 214, 85 N.W. 2d 840 (1957) "Government immunity violates the common law maxim that everyone shall have a remedy for an injury done to his person or property."

219. **Reed vs. Reed** 404 US 71,76 (1971) " Clearly the objective of reducing the workload on probate courts by eliminating one class of contest is not without some 'legitimacy'......but to give a mandatory preference to members of either sex over members of another, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of The Fourteenth Amendment'.........States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State."

220) **Monell v. Department of Social Services of The City of New York** 436 US 658 (1978)"In addition, municipalities cannot have arranged their affairs on the assumption that they can violate constitutional rights for an indefinite period, accordingly, municipalities have no reliance interest that would support an absolute immunity. Finally, it appears beyond doubt from the legislative history of the Civil Rights Act of 1871 that Monroe misapprehended the meaning of the Act. Were 1983 unconstitutional as to local governments, it would have been equally unconstitutional as to state or local officers, yet the 1871 Congress clearly intended 1983 to apply to such officers and all agreed that such officers could constitutionally be subjected to liability under 1983. The Act also unquestionably was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights Therefore, without a clear statement in the legislative history, which is not present, there is no justification for excluding municipalities from the 'persons' covered by 1983.

221. " Municipal corporations in 1871 were included within the phrase 'bodies politic and corporate' and accordingly the "plain meaning" of one that is that local government bodies were to be included within the ambit of the persons who could be sued under one of the Civil Rights Act, reading a Circuit Judge, writing in1873 in what is apparently the first reported case under one, read the Dictionary Act in precisely this way in a case involving a corporate plaintiff and a municipal defendant........Local

36

governing bodies, therefore can be sued directly under 1983 for monetary, declaratory, or injunctive relief ...... may ... be sued for constitutional violations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. ...... Congress included customs and usages because of the persistent and widespread discriminatory practices of state officials... although not authorized by written law, such practices of State officials could well be so permanent and well settled as to constitute a custom of usage with the force of law."

222. It is my civic duty, as a citizen of the United States, and as a resident of the State of Delaware during all times relevant to this complaint, to request this Honorable Court to request the United States Attorney General to investigate and subpoena the "Social Files" of all litigants that have been involved with the Family Court of The State of Delaware, The State of Delaware Department of Justice, and The Delaware Judiciary, for Civil Rights and Constitutional Violations, and to invoke the sovereignty of the United States Constitution to prosecute to the fullest extent, those Defendants that have violated the Civil Rights of all that they have encroached. There existed too much collusion between all the Defendants throughout the history of this case which abridged the Plaintiff's rights as a US citizen and put the Plaintiff's child at risk.

## FEDERAL CAUSES OF ACTION

## COUNT ONE: VIOLATION OF 42 USC 1985

223. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 222 above with the same force and effect as if herein set forth.

42 USC 1985.

224. At all relevant times the conduct of the Defendants were subject to

42 USC 1985.

(2) **Obstructing justice; intimidating party, witness, or juror** - If two or persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror, or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws,

(3) **Depriving persons of rights or privileges** - If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws, or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a Member of Congress of the United States, or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

225. By reason of the conduct of the Defendants that obstructed justice as described in 42 USC 1985; intimidated a witness as described within 42 USC 1985, intimidated a witness as described within 42 USC 1985, and deprived the Plaintiff of Federal rights as described within 42 USC 1985, Plaintiff suffered harm, actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

226. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 225 above with the same force and effect as if herein set forth.

## COUNT TWO: VIOLATION OF 42 USC 1983

42 USC 1983 - Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

227. At all relevant times the conduct of the Defendants were subject to reference the allegations of paragraphs 1 through 225 above with the same force and effect as if herein set forth.

228. The Defendants under color of state statute, regulation, custom, custom and usage, deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest, severally and

37

38

jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

**COUNT THREE: VIOLATION OF 42 USC 1981**

229. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 228 above with the same force and effect as if herein set forth.

230. At all relevant times the conduct of the Defendants were subject to

42 USC 1981:

(a) **Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exaction of every kind, and to no other.

(c) **Protection against impairment**

The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

231. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. As a direct result of the Defendants actions the Plaintiff was attacked intimidated, put into continuing anxiety and then processed devoid of protection or guaranteed civil liberties. The Plaintiff has suffered damages including, but not limited to, the aforesaid damages. Wherefore, the Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

**COUNT FOUR: CIVIL RICO**

232. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 231 above with the same force and effect as if herein set forth.

233. The elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) an agreement on the object or course of action; (4) one or more unlawful overt acts, and (5) damages that are a direct result of those acts

234. In furtherance of their objective, Defendants did two or more predicated acts against the Plaintiff. Those overt acts include, but are not limited to the following: (a) meeting and writing a plan of action to tamper with the witnesses and evidence for the upcoming civil trial by using tactics of intimidation and fear, (b)

39

coordinating assaults made on the Plaintiff, and (c) enlisting and receiving agreements on a common goal by the respondent officers of the court.

235. The pattern was to make income and to benefit by circumventing Federal and State civil guarantees the Plaintiff had a right to. Wherefore, Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed to be appropriate, just and fair.

**COUNT FIVE: VIOLATION OF 18 USC 241**

236. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 235 above with the same force and effect as if herein set forth.

237. At all relevant times the conduct of the Defendants were subject to

18 USC 241:

If two or more persons conspire to injure, oppress, threaten or intimidate any person in any State, Territory, Commonwealth, Possession or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway or in the premise of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured - they shall be fined under this title or imprisoned not more than ten years or both, and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

238. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

**COUNT SIX: VIOLATION OF 18 USC 1503**

239. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 238 above with the same force and effect as if herein set forth.

18 USC 1503:

240. At all relevant times the conduct of the Defendants were subject to

40

41

Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge or other committing magistrate in his person or property on account of the performance of his duties, or corruptly or by threats of force or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term of imprisonment that could have been imposed for any offense charged in such case.

241. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate.

COUNT SEVEN: VIOLATION OF 18 USC 1512

242. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 241 above with the same force and effect as if herein set forth.

18 USC 1512.

243. At all relevant times the conduct of the Defendants were subject to

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to–

(1) Influence, delay, or prevent the testimony of any person in an official proceeding;

(2) Cause or induce any person to–

(a) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(b) Alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(c) Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object in an official proceeding, or

(d) Be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay or prevent the communication to a law enforcement officer or judge of

42

the United States of information relating to the commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings, shall be fined under this title or imprisoned not more than ten years, or both

(c) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from–

(1) attending or testifying in an official proceeding;

(2) reporting to a law enforcement officer or a judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

(3) arresting or seeking the arrest of another person in connection of a Federal offense or;

(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding; or attempts to do so, shall be fined under this title or imprisoned not more than one year or both.

(d) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by the preponderance of the evidence, that the conduct consisted solely of lawful conduct and the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

(e) For the purpose of this section–

(1) an official proceeding need not to be instituted at the time of the offense; and (2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim or privilege.

(f) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance–

(1) that the official proceeding before a judge, court, magistrate, grand jury, or government proceeding, is before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or

(2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

(g) There is extraterritorial Federal jurisdiction over an offense under this section.

(h) A prosecution under the section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

244. The Defendants deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. Wherefore, Plaintiff demands judgment, including interest,

severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at a time of trial to be just fair and appropriate.

245. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 244 above with the same force and effect as herein set forth.

246. Defendants intentionally and deliberately inflicted emotional distress on Plaintiff by making it impossible for Plaintiff to maintain his livelihood which has always supported his family and child.

### COUNT EIGHT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

247. Defendants intentionally and deliberately inflicted emotional distress by defaming the Plaintiff in motions filled with false allegations that put the Plaintiff in constant fear of losing all that he worked for including the hands on parenting relationship that he had with his surviving son.

248. As a direct result of the Defendant's extreme and outrageous conduct, the Plaintiff was and will continue to be emotionally distressed due to the egregious actions of the Defendants.

249. As a result of the Defendants extreme and outrageous behavior, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest, severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at the time of trial to be just, fair and appropriate

### COUNT NINE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

250. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 249 with the same force and effect as herein set forth.

251. Defendants breached their duties to the Plaintiff

252. Defendants negligently inflicted emotional distress on the Plaintiff

253. Defendants had a professional responsibility to the Plaintiff to execute their duties associated with their position and title as officers and administrators of the court system.

254. Plaintiff suffered constant and intense emotional distress as a

43

direct result of the Defendants actions.

255. As a result of the Defendants' negligent conduct, Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

### COUNT TEN: VIOLATION OF 18 USC 1581

256. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 255 with the same force and effect as herein set forth.

18 USC 1581.

257. At all relevant times the conduct of the Defendants was subject to 18 USC 1581.

(a)Whoever holds or returns any person to a condition of peonage, or arrest any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 10 years or both.

(b) Whoever obstructs, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be liable to the penalties prescribed in subsection (a).

258. The Defendants used the State of Delaware "legal" process to deny the Plaintiff his equal protection rights and subjected the Plaintiff to distress through the threats of force or the threat of legal coercion to compel him to labor against his will. He was confronted by the existence of a superior and overpowering authority, constantly threatening to the extent that his will was completely subjugated.

259. As a result of the Defendant's negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

### COUNT ELEVEN: VIOLATION OF 18 USC 1584

260. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 259 with the same force and effect as herein set forth.

18 USC 1584.

261. At all relevant times the conduct of the Defendants was subject to

44

Respectfully submitted,
Timothy Nathaniel Joynes
Plaintiff

Whoever knowingly and willingly holds to involuntary servitude or sells into any condition of involuntary servitude, any person for any term, or brings into the United States any person so held, shall be fined under this title or imprisoned not more than 10 years, or both.

262. The Defendants used the State of Delaware "legal" process to deny the Plaintiff his equal protection rights and proceeded to hold the Plaintiff to a life of a Peon. They accomplished this through the threats of force and by the use of legal coercion to compel him to work against his will. He was confronted by the existence of a superior and overpowering authority, constantly threatening to the extent that his will was completely subjugated.

263. As a result of the Defendants' negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

COUNT TWELVE: VIOLATION OF 18 USC 1589

264. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 263 with the same force and effect as herein set forth.

265. At all relevant times the conduct of the Defendants were subjected to 18 USC 1589

Whoever knowingly provides or obtains the labor or services of a person–

(1) by threats of serious harm to, or physical restraint against, that person or another person, (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another would suffer serious harm or physical restraint; or (3) by means of the abuse of law or the legal process, shall be fined under this title or imprisoned not more than twenty years, or both.

266. The Defendants used the State of Delaware "legal" process to force the Plaintiff to a life of a Peon and compelled the Plaintiff to work against his will by threats and coercion. This is a direct violation of the Thirteenth Amendment.

267. As a result of the Defendant's negligent conduct, the Plaintiff has suffered and will continue to suffer pain. Wherefore, the Plaintiff demands judgment, including interest severally and jointly against the Defendants for actual, special, compensatory and punitive damages in an amount deemed at trial to be just, fair and appropriate.

45

MOTION TO ENLARGE ORIGINAL COMPLAINT
TO INCLUDE A CONSTITUTIONAL CHALLENGE

1. A civil right is an enforceable right or privilege, which if interfered with gives rise to an action of injury. The Thirteenth Amendment abolishes slavery and all badges of it throughout the United States, and the Fourteenth Amendment assures that no state shall write laws that abridge the rights or privileges of the citizens of the United States or deprive anyone of life, liberty or property without due process of law or the equal protection of the law.

2. The Social Security Act Title IV-D requires that due process safeguards must be in place to insure that all citizens are equally protected. This would also include the Delaware Division of Child Support and the Delaware Courts, since the Delaware Division of Child Support Enforcement is governed by the regulations of Title IV-D of the Social Security Act.

3. However, the Family Court, through the Delaware Judiciary, have enacted laws that have distinctively denied non-custodial parents their "due process rights." They have repeatedly denied the non-custodial parents the right to contest child support civil complaints, and have established "temporary orders" before they have a trial, a direct violation of 42 USC 666(6)(7)(b)(19) and of the Fourteenth Amendment.

4. The United States Supreme Court has recognized the importance of an evidentiary hearing.

5. Stanley vs. Illinois, 405 US 645 (1972) "The State cannot, consistently with due process requirements, merely presume that unmarried fathers in general and petitioner in particular are unsuitable and neglectful parents. Parental unfitness must be established on the basis of individual proof."

6. When serious liberty or property rights are at stake, a contested evidentiary hearing must be conducted prior to any deprivation. Goldberg vs. Kelly, 397 US 254 (1970). Rogoski vs. Hammond, 9 Wn. App. 500, 513 P2d 285 (1973).

7. The State of Delaware treats custodial and non-custodial parents differently, without stating a legitimate purpose. The Family Court of the State of Delaware and the Division of Child Support Enforcement always classified non-custodial parents as deadbeats and irresponsible without any finding of fact. Basically, all that a "custodial" parent has to do is to merely go to the local child support office and fill out an application for support and the agency merely forwards it to the Attorney General's office

46

without verifying that the statements are true. The Attorney General petitions the Family Court to issue a summons to the "irresponsible" parent requiring him to come to court or face arrest without a opportunity to contest the action.

8. In the case of the Plaintiff, the State never established the fact that his child was in danger of becoming a ward of the State through the payment of welfare. The Plaintiff has demonstrated to the court that he has provided for his son and that he was fully covered by his employer's health, life, and dental insurance policy from birth, and that his basic needs were provided for. Despite demonstrating that he did not fail in his obligation to provide for his son, the State felt he needed to be on their payment plan. The Plaintiff did not understand at the time why this injustice was done, despite the fact that he had demonstrated that the custodial parent has not consistently provided for their son. There was another motivational reason why the State wanted all "non-custodial" parents on the system. It is something that the Delaware Legislature and the Child Support Agency have been keeping secret from the general population.

9. In Troxel vs. Granville (000 US 99-138 2000), the United States Supreme Court made these statements concerning the parents right to make decisions concerning their children. "Accordingly, so long as a parent adequately cares for his or her children, their will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."

10. "Parental choice in such matters is not merely a default rule in the absence of either governmental choice or the government's designation of an official with the power to choose for whatever reason and in whatever circumstances."

11. Parham vs. J.R., 442 US 584, 602 (1979)." Our constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations...the law's concept of the family rest upon the presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions."

12. The United States Supreme Court has long recognized that a parent's interest in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Fourteenth Amendment.

13. Upon further investigation, the Plaintiff discovered the real reason why the Division of Child Support Enforcement and the Delaware Judiciary denies the Plaintiff his due process rights, as well as thousands of "non-custodial" and "irresponsible" parents.

14. The State of Delaware benefits by receiving Federal Financial Assistance for the operation of their child support program.

47

according to the performance of their child support program.

15. The Federal Office of Child Support Enforcement pays each state financial assistance. The procedures are clearly outlined as codified 42 USC 651-666.

16. The higher the child support orders, the higher the Federal financial assistance. The procedures are clearly outlined as codified 42 USC 651-666.

17. The State of Delaware can receive up to 66 percent of expenditures for established orders, 90 percent for paternity test and incentive payments if they can establish more orders. They do not have to collect the actual money from non-custodial parents to qualify for assistance.

18. In fact, to guarantee the highest possible orders, the Delaware Ad Hoc Committee has established rules that discriminate against non-custodial parents in the most adverse way, while at the same time assuring the continuation of the highest child support orders.

19. In child support cases, the custodial parent is assigned a work week of 40 hours. The non-custodial parent is assigned an income that includes overtime. If the overtime drops, then the "obligated" parent is forced to petition the court for a reduction in support. Generally, the family court denies the decrease, in fact they will raise the support to further increase the burden of the non-custodial parent. This is what was written in their formulary, dated September 23, 2002. " Is it really just helping ends meet or pay a legitimate extraordinary expense, or to substantially raise the standard of living of the obligor, and perhaps the obligor's new family, while the children who are the subject of the order remain at a lower standard of living"

20. The court is obviously making a family decision concerning how well a child should be living. It is not normal for a state to intervene in family matters. The domain of the family is sacrosanct, based on the parental autonomy, which means that parents may decide, free from governmental interference, at what level and by what means that they will support their children.

21. The State of Delaware sets the standard of living for children, through the use of the Melson Formula, which is in clear violation of The United States Department of Health and Human Services criteria for appropriate child support awards. It specifically states that the guidelines must reflect child cost patterns shown in economic data in order to be appropriate.

22. The Division of Child Support and the Family Court of Delaware are only concerned with the highest amount of Federal Financial Assistance, rather than assuming due process, and to promote an unconstitutional taking of all non-custodial parent's income and shifting it to custodial households.

23. Most of the custodial households are women. The Plaintiff recognizes that women in general have not been given the respect that they truly deserve. There has been much discrimination against women in this country in the past, the United

48

States government has taking steps to improve the ability for equal treatment of women. But, at the same time, the United States government requires that laws cannot discriminate against gender to achieve a government purpose. It cannot discriminate on the basis of sex. The States cannot use child support to ameliorate the wrongs that were done to women.

24. **Stanton vs. Stanton**, 421 US 7 (1975) "Notwithstanding the "old notions" cited by the state court that it is the man's primary responsibility to provide a home, that it is salutary for him to have education and training before he assumes that responsibility, and that females tend to mature and marry earlier than males, there is nothing rational in the statutory distinction between males and females.......thus imposing "criteria wholly unrelated to the objective of that statute."

25. **Califano v. Webster**, 430 US 313 (1977) "Reduction of the disparity in economic condition between men and women, caused by the long history of discrimination against women has been long recognized as such an important governmental objective. But the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme. Accordingly, we have rejected attempts to justify gender classifications as compensation for past discrimination against women when the classifications in fact penalized women wage earners ... or when the statutory structure and its legislative history revealed that the classification was not enacted as compensation for past discrimination.......Moreover, elimination of the more favorable benefit computation for women wage earners, even in the remedial context, is wholly consistent with those reforms, which require equal treatment of men and women in preference to the attitudes of "romantic paternalism" that have contributed to the long and unfortunate history of sex discrimination."

26. **Weinberger vs. Wiesenfeld**, 420 US 636 (1975)" Further, to the extent that women who work when they have sole responsibility for children encounter special problems, it would seem that men with sole responsibility for children will encounter the same child-care related problems....Finally, to the extent that Congress legislated on the presumption that women as a group would chose to to forego work to care for children while men would not, the statutory structure, independent of the gender-based classification, would deny or reduce benefits to those men who conform to the presumed norm and are not hampered by their child-care responsibilities.......because they earn too much. Thus, the gender based distinction is gratuitous, without it, the statutory scheme would only provide benefits to those men who are in fact similarly situated to the women the statute aids.....like the statutes there, by providing dissimilar for men who are similarly situated, the challenged section violates the due process clause."

27. **Shapiro vs. Thompson**, 394 US 618 (1969) " We recognized that a State has a valid interest in preserving the fiscal integrity of their programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens."

49

28. Despite these US Supreme Court rulings, the State of Delaware continues to discriminate against men and subjecting them to life of a slave and imposing "punishment" for men who earn a honest wage, and would like to spend time with their children and enjoy the right to travel with their children.

29. By establishing high child support orders, and allowing the orders to increase every 2 years, the act violates the equal protection clause of the Fourteenth Amendment.

30. The State of Delaware has accomplished two things: they discriminate against non-custodial parents, mostly men, and they subjected them to a life of a slave by attaching their wages and forcing them to work beyond a 40 hour work week, all for the benefit of Federal financial assistance.

31. **Orr vs. Orr**, 440 US 268 (1979) " Where as here, the State's compensatory and ameliorative purposes are as well served by a gender- neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. And this is doubly so where the choice made by the State appears to redound- if only indirectly- to the benefit of those without need for special solicitude... There is no reason, therefore, to use sex as a proxy for need ".

32. The Family Court of Delaware utilizes their laws, as codified ,13 Del C 511 through 518, to acquire jurisdiction over "non- custodial" parents and deny them of their due process rights.

33. 13 Del C 511 explains that jurisdiction may be acquired by the service of a summons to the respondent without the respondent given an opportunity to contest the action.

34. 13 Del C 512 allows the court to issue an temporary child support order before a trial based merely on a complaint by the custodial parent, without a due process hearing, and without presenting any facts to substantiate the wage garnishment. The law even goes as far as allowing the Master to the Delaware Family Court to issue recommendations to the custodial parent that can be enforced by the commissioner or judge, all without substantive and procedural due process.

35. 13 Del C 513 and 13 Del C 514 allows the court to order the obligations of the "custodial" parent. These particular laws are discriminatory, and they operate to deny the "non-custodial" parent any opportunity to defend himself against such tyrannical acts.

36. 13 Del C 515 and 13 Del C 516 allows the Court to further torture the "defendants" by imposing "arrearages", "without providing proof that the arrearages

50

are justified, and not holding the "custodial" parent liable for support. The Court assumes that the "custodial" parents are providing the support. All of these procedures are done without showing what evidence that they relied on.

37. **Stanley vs. Illinois.** 92 S. Ct. 1208 ( 1972 ) " The State insists on "presuming rather than proving Father's unfitness solely because it is more convenient to presume rather than to prove." Under the "Due Process Clause" that advantage is insufficient to justify refusing a father a hearing when the issue at stake is the dismemberment of his family." "Claim in the State courts and here is the failure to afford father a hearing on his parental qualifications while extending it to other parents denies father of "Equal Protection" of the laws. Parents are constitutionally entitled to a hearing on their fitness. Denying such a hearing to Stanley and those who like him, while granting it to other parents is inescapably contrary to the "Equal Protection Clause."

38. **Reed v. Reed.** 404 US 71 (1971) " Clearly, the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. ...(But to) give mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the "Equal Protection Clause of the Fourteenth Amendment."

39. **Duncan vs. Louisiana.** 88 S Ct. 1444 (1968) " Chapter 39 of the Magna Charta (1215) was a guarantee that the government would take neither life, liberty, nor property without trial in accord with the law of the land that already existed at the time the alleged offense was committed. This means that due process clause gives all Americans, whoever they are and wherever they happen to be, the right to be tried by "Independent and Unprejudiced Courts" using established procedures and applying valid pre-existing laws. There is not one word of legal history that justifies making the term "Due Process of Law" mean a guarantee of a trial free from laws and conduct which the courts deem at the time to be arbitrary, unreasonable, unfair, or contrary to civilized standards. The Due Process of Law Standard for a trial is one is in accordance with the "Bill of Rights" and laws passed pursuant to constitutional power, guaranteeing to all alike a trial under general law of the land."

40. The State of Delaware does not recognize the fact that both parents have the same responsibilities for providing for their children. In fact, the responsibilities of both parents to support their children are exactly the same. The Family Court of Delaware and The Delaware Division of Child Support Enforcement makes the presumption that "custodial" parents, mostly mothers, are fit and responsible to care for children and the "non-custodial" parents, mostly fathers, are not.

41. To make matters worse, the Division of Child Support Enforcement does not investigate the claims made by these parents. They just merely accept the application and forward it to the Delaware Attorney General's Office, who then petitions the court to issue a summons to the "non-custodial" parent, stating that they have refused to support their child, without providing any evidence to support their claim.

42. With all of these acts that are done to non-custodial parents. The State of Delaware and their representatives feel that they can continue to do harm to them without being held accountable. While it may be true that the Delaware Department of Justice, The Family Court of The State of Delaware, and the State of Delaware have qualified immunity when it comes to the prosecutorial aspects of a civil summons, it does not apply to the administrative functions of their positions. The same is true of the Delaware Division of Child Support Enforcement, the employees are the child support enforcement agency. The Ad Hoc Committee, and the Delaware Judiciary. Even Defendant Christine K. Demsey can be held liable. A clear distinction of their duties that makes all of these defendants liable is set forth in Carter vs. Philadelphia.

43. **Carter vs. City of Philadelphia.** 181 F.3d 339, 43 Fed.Serv.3d 915 (1999) "Even if the DA's Office were entitled to sovereign immunity as a state actor during the performance of its prosecutorial functions, such immunity would not extend to the local office administrative, investigative and management functions which underlie this action. We will, therefore, reverse the District Court's holding that the DA's Office is entitled to sovereign immunity for purposes of the claims at hand. We reject the alternative assertion of absolute prosecutorial immunity as lacking merit where the cause of action lies on administrative and investigative, rather than prosecutorial, conduct.

44. "Moreover, even if it were true that District attorneys act as an arm of the State, entitled to its sovereign immunity, whenever they perform prosecutorial functions in the name of the Commonwealth, it is also true that the Eleventh Amendment immunizes the conduct at issue here.........They have acknowledged the obvious basis for distinction, making and applying county-wide policy differs from carrying out state-wide policy and they have, therefore, repeatedly differentiated between administrative and prosecutorial functions, generally finding the former to be local and the latter to be state.

45. "The recurring theme that emerges from these cases is that county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices. Indeed, we ourselves concluded in Coleman vs. Kaye, 87 F.3d 1491, 1499(3d Cir 1996), that county prosecutors can have a dual or hybrid status. When "enforcing their sworn duties to enforce the law ..... they act as agents of the State (but) when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions....the county prosecutor in effect acts on behalf of the county that is the situs of his or her office."

46. As far as the employees of the Delaware Division of Child Support Enforcement, the Delaware Ad Hoc Committee, and the Family Court of the State of Delaware's liability concerning their lack of sensitivity and training when it comes to violating their Constitutional and "Due Process" rights of litigants, Carter vs. City of Philadelphia had this to say.

47. "As the District Court observed, the standard for personal liability under section 1983 is the same as that for municipal liability. See Sample vs. Diecks 885 F.2d 1099, 1118 (3d Cir. 1989). That standard was enunciated in Monell vs. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)." When made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury...... the government as an entity is responsible under 1983." Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact. City of Canton vs. Harris 489 US 378,388 (1989).

48. "The Court in Canton observed that failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights."

49. The Carter vs. Philadelphia case makes it clear that these Defendants named in this suit can be held liable for acts that deprive persons of their constitutional rights and privileges secured by the United States Constitution.

50. These Defendants, all of them, knew that their actions would cause the Plaintiff to be deprived of his rights as guaranteed by the Constitution, but choose to follow the concise path of conspiracy and deception to accomplish their mission. They have subjected the Plaintiff to severe financial and emotional suffering.

51. They have applied the Melson Formula to the Plaintiff that is unconstitutional because it establishes a standard of living that the Plaintiff is not accustomed to living. The Defendants, all of them, never provided evidence to justify the taking of Plaintiff's property without a evidentiary hearing.

52. They helped Defendant Denise Lewis obtain a tax benefit, while creating a tax burden on the Plaintiff, even though he is saddled with 80 percent of the cost of raising his son, a violation of equal protection of the law.

53. The Plaintiff hereby requests this Honorable Court that the Melson Formula be declared unconstitutional because it does not equally distribute income and responsibilities. It intrudes into the Plaintiff's rights to make decisions concerning his child.

54. The purpose of the State of Delaware, through the Division of Child Support Enforcement, the Family Court of the State of Delaware and the Delaware Department of Justice denial of the Plaintiff's civil rights is well explained in this US Supreme Court case.

55. US vs. Reynolds, 235 US 133 (1914) "Under this statute, the surety may cause the arrest of the convict for violation of his labor contract. He may be sentenced

53

and punished for this new offense, and undertake to liquidate the penalty by a new contract of a similar nature, and if again broken, may again be prosecuted, and the convict is thus kept enchained to an ever turning wheel of servitude to discharge the obligation which he has incurred to his surety, who has entered into an undertaking with the state, or paid money in his behalf." The re-arrest of which we have spoken is not because of his failure to pay his fine and cost originally assessed against him by the State. He is arrested at the instance of his surety, and because the law punishes the violation of the contract which the convict has made with him."

56. The State of Delaware holds secret meetings concerning how they make decisions as regards to the child support formulary. This is strictly prohibited by 5 USC 552(b).This Federal law requires that federally financed programs grant public notice and participation into the meetings. Delaware never allowed or ever announced those meetings. In fact, the meetings are "deeds" ensuring that the unconstitutional taking of "non-custodial parents" wages. The Ad Hoc Committee meetings do not involve national security, or personnel decisions. Therefore, it should be made open to the public.

57. All these acts committed by the Defendants violate the Fifth, Thirteenth and Fourteenth Amendments. Throughout the history of the United States, Congress has enacted legislation to enforce these amendments through many Supreme Court rulings, too many to mention in this suit. The most notable one is Ex-Parte Virginia.

58. Ex-Parte Virginia, 100 US 339 (1879) we have said the prohibitions of the Fourteenth Amendment are addressed to the States. They are, 'No State shall make or enforce a law which shall abridge the privileges or immunities of citizens of the United States.... or deny to any person within its jurisdiction the equal protection of the laws'. They have reference to actions of the political body denominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State..... then the State has clothed one of its agents with power to annul or to evade it."

59. The Defendants may feel that the Plaintiff did not have the right to approach the District Courts to redress his grievances with the State of Delaware. They may feel that this matter should be delegated to the State courts. Senator Trumbull felt differently concerning this situation, on January 29, 1866.

60. "Senator Trumbull then went on to indicate that if it be necessary in order to protect the freedman in his rights that she should have authority to go into the Federal Courts in all cases where a custom [of discrimination] prevails in a State.... I think we

54

have the authority to confer that jurisdiction under the second clause of the constitutional amendment.

61. "So in reference to this third section, the jurisdiction is given to the Federal courts of a case affecting the person that is discriminated against. Now, he is not necessarily discriminated against, because there may be a custom in the community discriminating against him, not because a Legislature may have passed a statute discriminating against him, the statute is no validity if it comes in conflict with a statute of the United States, and it is not to be presumed that any judge of a State court would hold that a seizure of a State discriminating against a person on account of color was valid when there was a statute of the United States with which it was in direct conflict, and the case would not therefore rise in which a party was discriminated against until it was tested, and then if the discrimination was held valid he would have a right to remove it to a Federal court."

62. The damages incurred by the Plaintiff exceed Fifty thousand dollars. The Plaintiff was forced to redress his grievances by going Pro-Se because the State of Delaware deprived the right to effective counsel and a impartial judge.

63. The State of Delaware never provided any facts to sustain their claims.

64. Wherefore, the Plaintiff respectfully pray and demand judgment in his favor and against the Defendants for compensatory, exemplary, and punitive damages as the Court may by law direct, and for other relief this court deems just.

65. The Federal Courts have a right and responsibility to punish the Defendants for violating the Plaintiff's Constitutional and Civil rights, countless Federal statutes and regulations, depriving the Plaintiff, a citizen of the United States, of life, liberty, and property, in a Federal financial assisted program resulting in a substantial profit for the Defendants.

66. The Federal Courts must send a message that the Court will not tolerate, but will harshly punish, those Defendants who cause damages in a federally financed program that would benefit the Defendants and cause unconstitutional harm to the Plaintiff.

67. The Plaintiff requests that this Honorable Court allow the Plaintiff 30 days to respond to all motions filed by the Defendants, a thirty day time limit from verified receipt of motions and to protect the Plaintiff from the inundation of Defendants motions, with full knowledge of the Plaintiff's limited legal knowledge.

68. Declare the Delaware Aid Hoc Committee as unconstitutional under the "separation of powers doctrine," and order the State of Delaware to hold public meetings with sufficient notice as required by 5 USC 552(b).

69. The Plaintiff request that this complaint be forwarded to the United States

55

Attorney General, the Civil Rights Division, and to the Federal Bureau of Investigations, with a court order attached directing an investigation into the conduct of State officials, into the implementation of the State of Delaware Child Support Program and all conspirators as alleged in this complaint.

Respectfully submitted,

Timothy N Joynes, Pro Se
55 West Chestnut Hill Road # 5
Newark, Delaware 19713-2264

In accordance to the Federal Rules of Civil Procedure, Rule 5, this document has been sent to all named parties.

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Timothy N Joynes

56

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY N. JOYNES,                          )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )       C. A. No. 05-CV332 GMS
                                            )
VINCENT P. MACCONI;                         )
CHARLES E. HAYWARD;                         )
MARTHA SACKOVICH;                           )
MARY ANN HERLIHY;                           )
JAY H. CONNER;                              )
CHRISTOPHER SPIZZIRRI;                      )
STEPHANIE FITZGERALD;                       )
FAMILY COURT OF THE STATE OF DE;)
DELAWARE DEPARTMENT OF                      )
  HEALTH AND SOCIAL SERVICES;               )
STATE OF DELAWARE DIVISION OF               )
  CHILD SUPPORT ENFORCEMENT;                )
STATE OF DELAWARE DEPARTMENT )
  OF JUSTICE;                               )
STATE OF DELAWARE JUDICIARY;                )
STATE OF DELAWARE;                          )
VINCENT J. POPPITI;                         )
PATRICIA BLEVINS;                           )
ROBERT J. VALIHURA;                         )
PETER S. FELICEANGELI:                      )
ANDREW HAMAN;                               )
JOELLE HITCH;                               )
ANDREW T. HORSEY;                           )
JANINE HOWARD;                              )
ALISA MAWSON;                               )
ELLEN MEYER;                                )
ANDREW K. SOUTHMAYD;                        )
MONA STEELE;                                )
BARBARA E. CORROZI;                         )
RUTH ANN MINNER;                            )
DENISE LEWIS; and                           )
CHRISTINE K. DEMSEY                         )

## ORDER

        AND NOW, this _____ day of _____, 2005, upon consideration of the

Motion of Defendant, Christine K. Demsey, for dismissal of the Complaint, said motion is

GRANTED and the Complaint against Defendant, Christine K. Demsey, is hereby dismissed with prejudice.

By the Court:

_____
J.

## AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                     )SS:
NEW CASTLE COUNTY    )

        BE IT REMEMBERED that on this day personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, Teresa Borgia, did affirm that on this day she did personally place in the U.S. Mail, postage prepaid, a copy of the foregoing Motion to Dismiss Plaintiff's Complaint to:

Timothy Joynes
55 W. Chestnut Hill Road, Apt. 5
Newark, DE 19713

State of Delaware
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

Denise Lewis
84 Freedom Trail
New Castle, DE 19720

_Teresa Borgia_
Teresa Borgia

        SWORN TO AND SUBSCRIBED before me, this _12th_ day of _December_, 2005.

Notary Public
atty at law