**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TIMOTHY N. JOYNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 05-332-GMS |
| | ) | |
| VINCENT P. MECONI, Secretary, | ) | |
| Department of Health and Social Services, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**STATE OF DELAWARE'S OPENING BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

W. Michael Tupman, Esquire
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE  19904
(302) 739-7641

Attorney for State of Delaware

Dated: December 29, 2005

## TABLE OF CONTENTS

**Page No.**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    The Eleventh Amendment Bars Any
        Claim For Monetary Damages
        Against The State Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    State Agency Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    State Official Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.    Advisory Committee Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    The State Official And The
        Advisory Committee Defendants
        Were Not Personally Involved In
        The Alleged Civil Rights Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    Joynes Fails To State A Claim
        For A Section 1985 Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.    The Claims Against The Judicial
        Defendants Are Barred By
        Absolute Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    E.    The Claims Against The Prosecutor Defendant
        Are Barred By Absolute Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    F.    Joynes Lacks Standing To Sue
        For Alleged Federal Crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Page No.**

G.    The *Rooker-Feldman* Doctrine Bars All
      Claims Against The State Defendants  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

UNREPORTED CASES *

Barr v. Camelot Forest Conservation Association,
      2005 WL 2891771 (3rd Cir., Nov. 3, 2005)

Span v. Flaherty,
      135 Fed.Appx.525 (3rd Cir., June 10, 2005)

Law Offices of Lucas ex rel. Lucas v. Disciplinary Board of the Supreme Court of
      Pennsylvania, 128 Fed. Appx. 235 (3rd Cir., Apr. 4, 2005)

Secress v. Ullman,
      2005 WL 1869399 (9th Cir., Aug. 5, 2005)

Johnson v. Lockyer,
      115 Fed.Appx. 895 (7th Cir., Oct. 26, 2004)

Jackson v. Peters,
      81 Fed.Appx. 282 (10th Cir., Nov, 12, 2003)

Gorzelancyk v. Baldassone,
      29 Fed.Appx. 402 (7th Cir., Mar. 7, 2002)

Okoro v. Garner,
      21 Fed.Appx. 486 (7th Cir., Oct. 16, 2001)

Soliman v. Taylor,
      C.A. No. 04-1378, 2005 WL 2429886  (D. Del., Sept. 30, 2005) (Sleet, J.)

McCurdy v. Esmonde,
      2003 WL 223412 (E.D. Pa., Jan. 30, 2003)

*      Copies of these unreported cases are attached to the hard-copy of this Opening Brief filed
       with the Clerk of the Court.

## TABLE OF CITATIONS

**CASES**                                                                    **Page No.**

Agg v. Flanagan,
    855 F.2d 336 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Angelino v. New York Times Co.,
    200 F.3d 73 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Barr v. Camelot Forest Conservation Association,
    2005 WL 2891771 (3rd Cir., Nov. 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Blanciak v. Allegheny Ludlum Corp.,
    77 F.3d 690 (3rd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bright v. Westmoreland County,
    380 F.3d 729 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Callahan v. City of Philadelphia,
    207 F.3d 668 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cok v. Cosentino,
    876 F.2d 1 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Dalton v. Clanton,
    558 A.2d 1197 (Del. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13,15

Davit v. Davit,
    366 F. Supp.2d 641 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

District of Columbia Court of Appeals v. Feldman,
    460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ernst v. Child & Youth Services of Chester County,
    108 F.3d 486 (3rd Cir.), cert. denied, 522 U.S. 850 (1997) . . . . . . . . . . . . . . . . . . . 16, 17

Evans v. State,
    872 A.2d 538 (Del. 2005) (en banc) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FOCUS v. Allegheny County Court of Common Pleas,
    75 F.3d 834 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

**Page No.**

Georgia Department of Human Resources v. Sweat,
    580 S.E.2d 206 (Ga. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gorzelancyk v. Baldassone,
    29 Fed.Appx. 402 (7th Cir, Mar. 7, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Grand Central Partnership, Inc. v. Cuomo,
    166 F.3d 473 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Grove City College v. Bell,
    687 F.2d 684 (3rd Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hunter v. Supreme Court of New Jersey,
    951 F. Supp. 1161 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Imbler v. Pachtman,
    424 U.S. 409 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jackson v. Peters,
    81 Fed.Appx. 282 (10th Cir., Nov. 1, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Johnson v. Lockyer,
    115 Fed.Appx. 895 (7th Cir., Oct. 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Law Offices of Lucas ex rel. Lucas v. Disciplinary Board of the Supreme Court of
    Pennsylvania, 128 Fed. Appx. 235 (3rd Cir., Apr. 4, 2005) . . . . . . . . . . . . . . . . . . . . 9

Marran v. Marran,
    376 F.3d 143 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

McCurdy v. Esmonde,
    2003 WL 223412 (E.D. Pa., Jan. 30, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

Okoro v. Garner,
    21 Fed.Appx. 486 (7th Cir., Oct. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Parkview Associates v. City of Lebanon,
    225 F.3d 321 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pennhurst State School & Hospital v. Halderman,
    465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

**Page No.**

Quern v. Jordan,
    440 U.S. 332 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ritter v. Ross,
    992 F.2d 750 (7th Cir. 1993), cert. denied, 510 U.S. 1046 (1994) . . . . . . . . . . . . . . . . 20

Robinson v. McCorkle,
    462 F.2d 111 (3rd Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,15

Rode v. Dellarciprete,
    845 F.2d 1195 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Rodriguez v. Stevenson,
    243 F. Supp.2d 58 (D. Del. 2002) (Sleet, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Secress v. Ullman,
    2005 WL 1869399 (9th Cir., Aug. 5, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Soliman v. Taylor,
    C.A. No. 04-1378, 2005 WL 2429886 (D. Del., Sept. 30, 2005) (Sleet, J.) . . . . . . . . . 7-8

Space Age Products, Inc. v. Gilliam,
    488 F. Supp. 775 (D. Del. 1980) (Stapleton, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Span v. Flaherty,
    135 Fed.Appx. 525 (3rd Cir., June 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Stern v. Nix,
    840 F.2d 208 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Stump v. Sparkman,
    435 U.S. 349 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wagshal v. Foster,
    28 F.3d 1249 (D.C. Cir. 1994), cert. denied, 514 U.S. 1004 (1995) . . . . . . . . . . . . . . . 16

Will v. Michigan Department of State Police,
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Page No.**

Williams v. Aztar Indiana Gaming Corp.,
    351 F.3d 294 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


**FEDERAL STATUTES**


Freedom of Information Act
    5 U.S.C. § 552b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C. § 1512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C. § 1581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C. § 1584 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C § 1589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Racketeer Influenced and Corrupt Organizations Act
    18 U.S.C. §§ 1961-68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20

Child Support Enforcement Act
    42 U.S.C. §§ 651-669 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8, 10, 12

Title VI, Civil Rights Act of 1964
    42 U.S.C. § 2000d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

**Page No.**

**FEDERAL REGULATIONS**

45 C.F.R. § 302.56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


**STATE STATUTES**

10 <u>Del</u>. <u>C</u>. § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10 <u>Del</u>. <u>C</u>. § 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10 <u>Del</u>. <u>C</u>. § 514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On May 26, 2005, plaintiff Timothy N. Joynes ("Joynes") sued thirty defendants alleging they violated his civil rights under: the Thirteenth and Fourteenth Amendments of the U.S. Constitution (involuntary servitude, due process, and equal protection); Title VI of the Civil Rights Act of 1964; the Child Support Enforcement Act; and the Racketeer Influenced and Corrupt Organizations Act. Joynes brings suit under 42 U.S.C. §1983 for violation of his federally protected civil rights and under Sections 1981 and 1985 for alleged discrimination and conspiracy to violate his civil rights. Joynes alleges pendent state law claims for intentional and negligent infliction of emotional distress and violation of the separation of powers under the Delaware Constitution. [1] Joynes also alleges the defendants committed various federal crimes.

On September 26, 2005, this Court denied Joynes' motion to proceed *in forma pauperis*. Joynes then started sending waiver of service forms to some of the defendants. [2]

For clarity, the Department of Justice divides the defendants it represents (collectively "the

---

[1]     Joynes makes two separation of powers arguments. First, he alleges that the Family Court impermissibly delegated authority to a committee comprised largely of non-judicial members to evaluate the formula to calculate child support payments. Second, he alleges that Governor Minner encroached on the province of the judiciary by "sign[ing] legislation that overrides the Delaware Supreme Court and cripples their [*sic*] decision-making powers." Complaint ¶42.

[2]     The Department of Justice confirms that the following State Defendants received waiver of summons form from Joynes: Governor Minner, former Chief Judge Poppiti, Commissioners Southmayd and Herlihy, Senator Blevins, and Representative Valihura. Pursuant to Federal Rule 12(b)(4), the Department of Justice objects to the Court's jurisdiction over any State Defendant who has not been properly served. To expedite the case, however, the Department of Justice moves to dismiss the complaint under Federal Rules 12(b)(1) and (6) within the sixty days provided for a responsive pleading under Federal Rule 4(d)(3).

State Defendants") into five categories: (1) State Agency Defendants (Family Court, Department of Health and Social Services ("DHSS"), Division of Child Support Enforcement ("DCSE"), Department of Justice, Delaware Judiciary, and State of Delaware); (2) State Official Defendants (Governor Ruth Ann Minner, Vincent P. Meconi, Secretary of DHSS, and Charles E. Hayward, Director of DCSE); (3) Judicial Defendants (Judge Jay H. Conner, Commissioner Mary Ann Herlihy, Commissioner Martha Sackovich, and Family Court mediator Stephanie Fitzgerald); (4) Prosecutor Defendant (Christopher J. Spizzirri, Deputy Attorney General); and (5) Advisory Committee Defendants. [3]   The only defendants the Department of Justice does not represent are the mother, Denise Lewis, and her attorney, Christine K. Demsey, Esquire. [4]

On December 29, 2005, the Department of Justice moved to dismiss the complaint against all of the State Defendants under Federal Rules of Civil Procedure 12(b)(1) and (6).  This is the State of Delaware's Opening Brief in support of its motion to dismiss.

---

[3]      The Advisory Committee Defendants are: Chief Judge Vincent J. Poppiti; Commissioners Joelle Hitch, Andrew T. Horsey, and Andrew K. Southmayd; Senator Patricia Blevins; Representative Robert J. Valihura, Jr., Esquire; Deputy Attorney General Peter S. Feliceangeli, Esquire; Andrew Haman; Janine Howard, Esquire; Alisa Mawson; Ellen Moyer, Esquire; Mona Steele; and Barbara Corrozi.

[4]      On December 15, 2005, Denise Lewis and her attorney moved to dismiss the complaint against them under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted as a matter of law.

## SUMMARY OF ARGUMENT

1.      The Eleventh Amendment bars any claims for monetary damages against the State Agency Defendants or any of the other State Defendants in his or her official capacity.  Plaintiff does not seek prospective injunctive relief against any of the State Defendants in his or her official capacity.  The Eleventh Amendment also bars any pendent state law claims against the State Defendants.

2.      Joynes cannot sue any of the State Defendants in his or her official capacity under Sections 1983 or 1985 because they are not "persons" under those federal civil rights statutes.  The complaint fails to state a claim against any of the State Official Defendants or the Advisory Committee Defendants in their individual capacity under Section 1983 because they were not personally involved in  the alleged civil rights violations.

3.      The complaint fails to state a claim for a civil conspiracy under Section 1985.  The Delaware child support laws do not violate equal protection because they impose an obligation on both mothers and fathers to support their children, and those laws rationally distinguish between custodial and non-custodial parents.

4.      The claims against the Judge Conner and Commissioners Herlihy and Sackovich in their individual capacity are barred by absolute judicial immunity.  The claims against the Family Court mediator in her individual capacity are barred by quasi-judicial immunity.

5.      The claims against the Prosecutor Defendant in his individual capacity are barred by absolute prosecutorial immunity.

6.      Joynes lacks standing to enforce the federal criminal laws.

3

7.     All of the claims against the State Defendants are barred by the *Rooker-Feldman*

doctrine.

## STATEMENT OF FACTS

For purposes of the State's motion to dismiss, the Department of Justice accepts as true the

following numbered paragraphs in the complaint:

63.     On October 16, 2003, Denise Lewis sought the services of the Division of Child Support Enforcement.

64.     On November 6, 2003, the Deputy Attorney General for the State of Delaware requested the Family Court of Delaware to issue a summons to the Plaintiff.

65.     On December 2, 2003, the Clerk of The Family Court issued the summons to be served through the Process Server.

76.     . . . [T]he first mediation conference was scheduled for February 14, 2004.

78.     . . . [The Mediator] explained that she had a copy of [plaintiff's] income statement for 2003.  It showed that the Plaintiff had an income of $61,000 for the tax year.  He did not dispute that figure, but he explained to her that his income included $20,000 in overtime that is not guaranteed. . . .

79.     Also present was a representative of the Division of Child Support Enforcement. [The Mediator] began to draw up an interim child support order based on non-guaranteed overtime, . . . .

90.     The Plaintiff did get his request to have his case heard in Family Court by a Commissioner.  This case was scheduled for April 12, 2004.  Commissioner Martha Sackovich was presiding over this proceeding.

92.     The Defendant, Christopher Spizzirri was prosecuting the case for Denise Lewis and the Delaware Division of Child Support Enforcement. . . .

99.     When the Plaintiff received his permanent support order, The Honorable Martha Sackovich raised the Plaintiff's annual salary to $72,000 a year, almost double the base salary.

5

120.    In August 2004, the Plaintiff submitted to the Family Court of the State of Delaware two petitions: a modification of child support and a Rule to Show Cause. . . .

121.    The Rule to Show Cause pleading was ruled by Commissioner Mary Ann Herlihy. . . .

122.    Mary Ann Herlihy dismissed the claim because the Plaintiff did not state a cause of action.  I immediately appealed this action by Commissioner Herlihy. . . .

123.    On November 17, 2004, the appeal came before the Honorable Judge Jay H. Conner. . . . Judge Conner dismissed the case stating again that the Plaintiff did not state a cause of action. . . . [5]

---

[5]    Joynes did not appeal from the Family Court to the Delaware Supreme Court.  He suggests that an appeal was pointless because Governor Minner "has signed legislation that overrides the Delaware Supreme Court and cripples their [*sic*] decision-making powers."  Complaint ¶42.  If Joynes is referring to H.B. 31 (which declared a decision of the Supreme Court "null and void"), the Supreme Court held that the bill "is unconstitutional in its entirety."  Evans v. State, 872 A.2d 539, 542 (Del. 2005) (en banc) (per curiam).  Joynes fails to allege sufficient facts that he could only turn to the federal courts because he did not have a meaningful right of appeal of his child support order to the Delaware Supreme Court.

**ARGUMENT**

A.    The Eleventh Amendment Bars Any
      Claim For Monetary Damages
      Against The State Defendants.

"[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 694 (3rd Cir. 1996) (citing <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 98-100 (1984)). The Eleventh Amendment bars Joynes' federal constitutional and statutory claims for monetary damages and his pendent state law claims. The Eleventh Amendment's "constitutional bar applies to pendent claims as well." <u>Pennhurst</u>, 465 U.S. at 120.

1.    <u>State Agency Defendants</u>

The Eleventh Amendment bars any of Joynes' federal claims for monetary damages against the State Agency Defendants. [6] "First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated 'by the most express language or by such overwhelming implications from the text as to leave no room for any other reasonable construction.'" <u>Soliman v. Taylor</u>, C.A. No. 04-1378, 2005 WL 2429886, at p. 9 (D. Del., Sept. 30, 2005) (Sleet, J.) (quoting <u>Space Age Products, Inc. v. Gilliam</u>, 488 F. Supp. 775, 780 (D. Del. 1980) (Stapleton, J.)). "Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh

---

[6]    The Eleventh Amendment does not bar claims against State officials in their official capacity where the plaintiff seeks prospective injunctive relief (as opposed to monetary damages). <u>See</u> <u>Pennhurst</u>, 465 U.S. at 102-03. Joynes does not seek prospective injunctive relief against any State Defendant named in his or her official capacity. In paragraph 4 of his complaint, Joynes asks this Court "to compel the United States Attorney General to do their [*sic*] duty to investigate the allegations contained in this Civil Action for violations of Federal Laws." The Attorney General is not a party to this lawsuit, and would enjoy sovereign immunity from suit even if he were.

Amendment immunity." <u>Soliman</u>, 2005 WL 2429886, at p. 9.  "Finally, Congress has not abrogated the state's immunity for claims under Section 1983 and 1985." <u>Id.</u> (citing <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979)).

       2.     <u>State Official Defendants</u>

Joynes cannot sue the State Official Defendants in their official capacity under Section 1983 or Section 1985 for monetary damages.  "[N]either a State nor its officials acting in their official capacities are 'persons' under Section 1983." <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 70 (1989).  "Section 1985, which provides remedies for conspiring to interfere with civil rights, also applies to a 'person.'  42 U.S.C. §1985." <u>Soliman</u>, 2005 WL 2429886, at p. 9. n.4.  Joynes' Section 1985 claim against the State Defendants "must fail for the same reasons that his §1983 claims fail." <u>Id.</u> [7]

       3.     <u>Advisory Committee Defendants</u>

The State's Eleventh Amendment immunity extends to the Advisory Committee Defendants. According to the complaint (para. 180), the "Delaware Support Ad Hoc Committee was appointed by Chief Judge Poppiti to evaluate the child support guidelines as required by Title IV-D of the Social Security Act.  This evaluation must be conducted every four years." [8]

---

[7]     Joynes alleges discrimination based on his sex (male) so he cannot sue under Section 1981.  "Because the statute, on its face, is limited to issues of racial discrimination in the making and enforcing of contracts, courts have concluded that sex-based claims are not cognizable under 42 U.S.C. § 1981." <u>Angelino v. New York Times Co.</u>, 200 F.3d 73, 98 (3rd Cir. 1999).  The complaint also fails to state a claim under Title VI of the Civil Rights Act for sex discrimination. <u>See</u> <u>Grove City College v. Bell</u>, 687 F.2d 684, 691 (3rd Cir. 1982) ("the legislative history reveals that Title XI was designed to fill the gap left by Title VI of the Civil Rights Act of 1964, which did not prohibit discrimination based on sex").

[8]     In 1975, Congress enacted the Child Support Enforcement Act (known as the IV-D Program), <u>as</u> <u>amended</u>, 42 U.S.C. §§ 651-669.  Federal law requires states to establish

The Advisory Committee is an "arm of the state" for purposes of Eleventh Amendment immunity. See Law Offices of Lucas ex rel. Lucas v. Disciplinary Board of the Supreme Court of Pennsylvania, 128 Fed.Appx. 235, 237 (3rd Cir., Apr. 4, 2005) ("The Board, an agency of the Supreme Court of Pennsylvania and part of the 'unified judicial system' is an arm of the state") (quoting Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3rd Cir. 2000)).

In Hunter v. Supreme Court of New Jersey, 951 F. Supp. 1161 (D.N.J. 1996), a state trial judge sued in federal district court to challenge a private reprimand by the state supreme court. He also named as a defendant the Advisory Committee on Judicial Conduct ("AJIC") which investigated the complaint against the judge. The district court held that the AJIC enjoyed Eleventh Amendment immunity. "The AJIC is a court committee established by court rule. . . Its function is to . . . assist in fulfilling the administrative responsibilities of the Court. Because the AJIC is a committee of the Supreme Court, the State of New Jersey would be responsible for any damage award against the AJIC. Therefore, the claims against the AJIC are barred by the Eleventh Amendment." 951 F. Supp. at 1177.

---

guidelines for child support. Id. § 667(a). Each state must review and revise its guidelines periodically "to ensure that their application results in the determination of appropriate child support award amounts." 45 C.F.R. § 302.56. The Delaware Family Court has adopted the "Melson Formula" to determine child support payments. See Dalton v. Clanton, 559 A.2d 1197 (Del. 1989). Chief Judge Poppiti appointed the Advisory Committee Defendants in 2002 to review the Melson Formula. The Committee consisted of representatives from the Family Court, the Division of Child Support Enforcement, the General Assembly, the Attorney General's Office, and the private bar.

Chief Judge Poppiti appointed the Advisory Committee Defendants to fulfill the requirements of federal law to periodically review the Delaware child support guidelines and make recommendations to the Family Court.  Because the Committee is a committee of the Family Court, the State of Delaware would be responsible for any award of damages against the Advisory Committee or its members.  As an "arm of the State," the claims against the Advisory Committee Defendants in their official capacity are barred by the Eleventh Amendment. [9]

B.      The State Official And The
         Advisory Committee Defendants
         Were Not Personally Involved In
         The Alleged Civil Rights Violations.

Joynes fails to state a claim against the State Official Defendants or the Advisory Committee Defendants in their individual capacity because they were not personally involved in the child support proceedings in Family Court.  "An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing: liability cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988).

In Bright v. Westmoreland County, 380 F.3d 729 (3rd Cir. 2004), the estate of a murdered child sued the perpetrator and two probation officers, their supervisor, a police officer, the district court administrator, and the district attorney in their individual capacities under Section 1983.  "To state a viable § 1983 claim against an individually named defendant, the plaintiff must set forth facts

---

[9]      Joynes cannot sue the members of the Advisory Committee in their official capacity for monetary damages under Sections 1983 and 1985 because they are not "persons" for purposes of the civil rights laws.  Joynes does not seek any prospective injunctive relief under Section 1983 against the members of the Advisory Committee in their official capacity.

in his Complaint showing how each such individually named defendant was personally involved in the alleged deprivation of his constitutional rights."   380 F.3d at 740 n.3 (citing <u>Rode v. Dellarciprete</u>, <u>supra</u>).  Other than identifying the individual government defendants in the caption, Plaintiff's complaint fails to otherwise allege how . . . those Defendants participated in the alleged constitutional violation." <u>Bright</u>, 380 F.3d at 740 n.3.  Those defendants could not "be held liable under § 1983 in their individual capacities without having personally participated in the alleged constitutional violation." <u>Id.</u>

Joynes fails to allege how the State Official Defendants (Governor Minner, Secretary Meconi, Director Hayward) personally participated in the child support proceedings in Family Court which resulted in the support order that is at the heart of the complaint.  Joynes makes vague and conclusory allegations that these defendants "had knowledge of the wrongs" and "the power to prevent or aid in preventing the same," but "neglected or refused to do that which by reasonable diligence could have been prevented."  Complaint ¶¶10;11; 24. [10]  At most, Joynes is alleging respondeat superior liability up the executive branch chain of command for the actions taken by the Division of Child Support Enforcement in establishing and enforcing his child support order. Section 1983 liability "cannot be predicated solely on the operation of respondeat superior." <u>Rode</u>, 845 F.2d at 1207.

Other than naming the Advisory Committee Defendants in the caption of the complaint, Joynes does not allege how those individuals participated in the alleged constitutional violations.

---

[10]     According to his complaint (¶¶ 105-119), Joynes complained about his child support order, first to Director Hayward, then to Secretary Meconi, and then to Governor Minner and he alleges that their inaction was "a direct source of injury and causes for relief."

They cannot be held liable under Section 1983 because they were not personally involved in the determination of Joynes' child support obligation. [11]


        C.      Joynes Fails To State A Claim
                   For A Section 1985 Conspiracy.

Joynes fails to state a claim for a conspiracy to deprive him of his civil rights under 42 U.S.C. § 1985. "Not only are the conspiracy allegations unsupported by any specific facts, but the complaint fails to make a sufficient showing under [Section 1985] that [Joynes] was denied equal protection of the law. With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes of individuals." Robinson v. McCorkle, 462 F.2d 111, 113 (3rd Cir. 1972).

An essential element of a Section 1985 civil conspiracy claim is that the defendants conspired to deny to any person or class of persons "equal protection of the laws." 42 U.S.C. § 1985(2), (3). Joynes contends that the Delaware child support statutes discriminate against him as a father and non-custodial parent by placing an unfair burden of support on him as compared with the custodial mother.

Under Delaware law, both parents have a legal obligation to support their children. See 13

---

[11]      Joynes also alleges (Complaint ¶186) that the Advisory Committee Defendants violated the open meeting requirements of the federal Freedom of Information Act, 5 U.S.C. § 552b. "[I]t is beyond question that FOIA applies only to federal and not to state agencies." Grand Central Partnership, Inc. v. Cuomo, 166 F.3d 473, 484 (2nd Cir. 1999) (citing cases from the First, Fifth, Sixth, Ninth, and D.C. circuits).

Del. C. § 501.  In determining the amount of support, the Family Court must consider a number of statutory criteria, including the "health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, . . ." 29 Del. C. § 514(1).  "[I]n an effort to discharge its statutory obligations on a uniform basis, the Family Court has adopted a procedure in support cases, known as the 'Melson Formula.'" Dalton v. Clanton, 559 A.2d 1197, 1199 (Del. 1989). "[A]s a rebuttable presumption, the Melson Formula is consistent with all of the factors set forth in 13 *Del. C.* § 514." Dalton, 559 A.2d at 1199.

Joynes claims that the Melson Formula discriminates against non-custodial fathers in violation of his right to equal protection by "establishing two classes of families though similarly situated if not the same."  Complaint ¶191.  He claims that the  Melson Formula overstates the income of working fathers and "allows the custodial parent to list excessive child care costs that the non-custodial parent cannot dispute."  Id.

Joynes fails to state a claim for violation of equal protection because he has not shown that non-custodial fathers have "historically been a victim of discrimination." Agg v. Flanagan, 855 F.2d 336, 341 (6th Cir. 1988).  "A facially neutral law does not violate the equal protection clause merely because it has a disproportionate impact; the disproportionate impact must be traced to a purpose to discriminate."  Id.  "It is fairly obvious that the disparate impact on men, insofar as we may characterized the [child support] law's effect in that way, is a result of the fact that men generally have higher incomes than women and that society wants some of that income used to support their children." Id. at 342.

In Georgia Department of Human Resources v. Sweat, 580 S.E.2d 206 (Ga. 2003), the Georgia Supreme Court held that the state child support guidelines did not violate equal protection.

"By their terms, the Guidelines distinguish only between custodial and non-custodial parents, without regard for their gender.  Furthermore, even if there was a colorable claim that the Guidelines affect men disproportionately, mere statistical evidence of differing effects on men and women, with no evidence of invidious discrimination, does not give rise to heightened scrutiny for constitutional analysis."  580 S.E.2d at 628 n.6.  "While the Guidelines do classify between custodial and non-custodial parents, that distinction is required in order to ensure that the non-custodial parent contributes to his or her fair share to ensure that the welfare of the children is protected."  Id. at 629.

> It is fundamental that no equal protection violation exists unless legislation treats similarly-situated individuals differently. . . [C]ustodial and non-custodial parents are not, by definition, similarly situated.  The custodial parent often contributes to the costs of caring for children, and also takes primary responsibility for the day-to-day care of a child, maintains a separate household suitable for the children, and depends upon the Guidelines to ensure he or she receives adequate financial resources from the non-custodial parent to assist in raising the child.

Id. at 630.

Like the child support laws in other states, the Delaware child support laws make a rational distinction between custodial and non-custodial parents.  That distinction does not violate equal protection because custodial and non-custodial parents are not similarly situated.  Even if Joynes made a colorable claim that the Melson Formula affects men disproportionately, it is a facially neutral Family Court rule that only acts as a "rebuttable presumption" in child support cases.  Dalton, 559 A.2d at 1193.  Joynes does not allege any facts to show that the Melson Formula works an "invidious, purposeful and intentional discrimination" between similarly situated individuals.

Robinson, 462 F.2d at 113.


        D.      The Claims Against The Judicial
                 Defendants Are Barred By
                 Absolute Immunity.

"It is a well-established principle that judges are absolutely immune from suit for damages under §1983 when they act in a judicial capacity. 'A judge will not be deprived of immunity because the action was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Span v. Flaherty, 135 Fed.Appx. 525 (3rd Cir., June 10, 2005) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

"The Family Court is vested with exclusive original jurisdiction to hear and determine all petitions for support." Dalton, 559 A.2d at 1202-03 (citing 13 Del. C. § 507). After mediation, Joynes sought review by Commissioner Sackovich of his interim child support order. Joynes then petitioned the Family Court for a modification of his child support order. Commissioner Herlihy denied the petition. Joynes then sought a review *de novo* but Judge Conner dismissed the petition. Judge Conner and the two commissioners were acting within their statutory jurisdiction and in their judicial capacity to establish and review Joynes' child support order. Joynes' complaint against Judge Conner and Commissioners Herlihy and Sackovich "consists entirely of allegations regarding the actions taken by the defendants in their judicial capacity. [Joynes] makes no allegations that would support a determination that the [Judicial Defendants] acted in the complete absence of all jurisdiction." Span, 135 Fed.Appx. at 526. The Judicial Defendants are entitled to absolute immunity from suit.

15

The remaining Judicial Defendant, Stephanie Fitzgerald, a Family Court mediator, enjoys quasi-judicial immunity from suit. A mediator appointed in a child custody case "is entitled to quasi-judicial immunity while performing those duties." Secress v. Ullman, 2005 WL 1869399, at p. 1 (9th Cir., Aug. 5, 2005). Accord Wagshal v. Foster, 28 F.3d 1249, 1254 (D.C. Cir. 1994), cert. denied, 514 U.S. 10004 (1995) ("absolute quasi-judicial immunity extends to mediators and case evaluators in the Superior Court's ADR process").

E.    The Claims Against The Prosecutor Defendant
      Are Barred By Absolute Immunity.

Prosecutors enjoy "the same absolute immunity under §1983 that the prosecutor enjoys at common law." Imbler v. Pachtman, 424 U.S. 409, 427 (1976). "[A] prosecutor or other official performing a quasi-prosecutorial function for the state is entitled to absolute immunity for official actions taken on behalf of the State that are integrally related to the judicial process." Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 502 (3rd Cir.), cert. denied, 522 U.S. 850 (1997).

In Rodriguez v. Stevenson, a Deputy Attorney General (Joelle Hitch) represented the Division of Family Services in an administrative appeal over a finding of child abuse. This Court held that DAG Hitch was entitled to absolute prosecutorial immunity. Her "functions in the DFS administrative appeal process are analogous to the functions of . . . prosecutors in criminal proceedings and certainly analogous to the functions of child welfare workers in 'preparing for, initiating, and prosecuting' custody and dependency proceedings." 243 F. Supp.2d at 64-65 (quoting Ernst, 108 F.3d at 495).

Deputy Attorney General Spizzirri acted in his prosecutorial capacity in Joynes' child support

16

proceedings.  According to the complaint (¶ 92), DAG Spirizzi "was prosecuting the case for Denise Lewis and the Delaware Division of Child Support Enforcement. Mr. Spirrizzi made the request that the court reward Denise Lewis child support based on the Melson Formula."  DAG Spirrizzi is entitled to absolute prosecutorial immunity.

> F.      Joynes Lacks Standing To Sue
>         For Alleged Federal Crimes.

In Cok v. Cosentino, 876 F.2d 1 (1st Cir. 1989), plaintiff sued a family court justice for appointing a guardian ad litem and a conservator of assets during a divorce proceeding alleging that the justice, the guardian, and the conservator committed perjury, extortion, criminal conspiracy, and racketeering.  The First Circuit affirmed dismissal of the complaint because "a private citizen has no authority to initiate a federal criminal prosecution."  876 F.2d at 2.  "Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. §1983)."  Id.  Accord Barr v. Camelot Forest Conservation Association, 2005 WL 2891771, at p.1 (3rd Cir., Nov. 3, 2005) (18 U.S.C. §§ 241, 242, and 245 "are criminal offenses for which there is no civil remedy, and therefore, [plaintiff] lacks standing to bring them").

Joynes alleges violations of 18 U.S.C. §§ 241, 1503, 1512, 1581, 1584, and 1589.  Joynes lacks standing to bring any claims under those sections of the federal criminal code because they are criminal offenses for which there is no civil remedy. [12]

---

[12]      To the extent Joynes cites those sections as the criminal predicates for a civil RICO claim, the complaint fails to state a claim as a matter of law.  Section 1503 "only applies to acts that relate to proceedings in the federal court system." Davit v. Davit, 366 F. Supp.2d 641, 655 (N.D. Ill. 2004).  Section 1512 relates "to federal investigations, agents, and proceedings that are not implicated here." Id. at 656.  Sections 1581, 1584, and 1589 prohibit "involuntary servitude" and "peonage," which is hardly Joynes' status as a DART employee earning more than $72,000 a year.

G.     The *Rooker-Feldman* Doctrine Bars All
       Claims Against The State Defendants.

Stripped to its core, Joynes' complaint is over the calculation of his child support order by the Judicial Defendants to include overtime pay. Joynes cannot seek judicial review by this Court of the amount of that child support order or any matter inextricably intertwined with the child support proceedings.

"The *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143, 149 (3rd Cir. 2004) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). "A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication." Marran, 376 F.3d at 149.

"A claim is inextricably intertwined with the state court adjudication when 'federal relief can only be predicated upon a conviction that the state court was wrong.'" Marran, 376 F.3d at 149 (quoting Parkview Associates v. City of Lebanon, 225 F.3d 321, 325 (3rd Cir. 2000)). *Rooker-Feldman* applies "when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered, or must take action that would render the state judgment ineffectual.'" Marran, 376 F.3d at 149 (quoting FOCUS v. Allegheny

_____

In any event, Joynes' civil RICO claim is barred by the *Rooker-Feldman* doctrine (see Part G. *infra*). "Although plaintiff purports to bring this action under the RICO statute, his claim is actually a collateral attack on the validity of the divorce decree and related child support orders. . . Because plaintiff's RICO claim is 'inextricably intertwined' with his state divorce proceeding, federal jurisdiction is not proper." Davit, 366 F. Supp.2d at 651.

County Court of Common Pleas, 75 F.3d 834, 840 (3rd Cir. 1996)).

For this Court to entertain the relief requested by Joynes would require this Court to determine that his child support order is invalid. His federal constitutional and statutory claims are inextricably intertwined with his child support order. As the functional equivalent of an appeal from a state court judgment, Joynes' complaint is barred by *Rooker-Feldman*.

In Okoro v. Garner, 21 Fed.Appx. 486 (7th Cir., Oct. 22, 2001), a father sued in federal court alleging that state officials violated his civil rights under the Fair Debt Collection Practices Act by mailing him demands for back child support payments while he was incarcerated. The Seventh Circuit held that the "district court correctly discerned that it lacked subject matter jurisdiction over Okoro's demand for modification of the amount of child support he owes. . . [L]ower federal courts are precluded by the *Rooker-Feldman* doctrine from reviewing state-court judgments, such as the award of child support in this case." 21 Fed.Appx. at 488. Accord Jackson v. Peters, 81 Fed.Appx. 282, 286 (10th Cir., Nov. 1, 2003) (father's "claims regarding defective and unconstitutional proceedings are inextricably intertwined with the state courts' judgments regarding [his] divorce and child support obligations").

In Johnson v. Lockyer, 115 Fed.Appx. 895 (7th Cir., Oct. 26, 2004), a father sued state and county agencies and officials alleging that actions taken to collect on child support obligations violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. "The district court rightly observed that Johnson's core grievance is really about the validity of a state judgment – the California judgment that registered the Oregon child support order – and federal suits that implicate the validity of state judgments are barred under the *Rooker-Feldman* doctrine."

115 Fed.Appx. at 896.  "'[A] plaintiff may not seek reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.'"  Id. (quoting Ritter v. Ross, 992 F.2d 750, 754 (7th Cir. 1993), cert. denied, 510 U.S. 1046 (1994)).  "Tossing about 'RICO' and 'due process' does not make a claim arise under federal law when the effort is a 'transparent . . . attempt to move a state-law dispute to federal court.'"  Johnson, 115 Fed.Appx. at 897 (quoting Williams v. Aztar Indiana Gaming Corp., 351 F.3d 294, 299-300 (7th Cir. 2003)).

Joynes tries to avoid *Rooker-Feldman* by casting his complaint as a challenge to the Melson Formula, while never asking the Court directly to modify his child support order.  Application of the *Rooker-Feldman* doctrine "turns upon whether [the] constitutional challenge to the actions of the [state court] should be viewed as a 'general challenge' or a challenge to a state court decision in a 'particular case.'"  Stern v. Nix, 840 F.2d 208, 212 (3rd Cir. 1988).  Artful pleading, however, cannot disguise that Joynes' complaint is all about his particular child support case.

For example, Joynes seeks at least $50,000 in "compensatory, exemplary, and punitive damages.  Complaint ¶¶62, 64.  "[I]t is clear that the primary purpose of the civil rights action is to recover compensatory and punitive damages from defendants. . . . Because such relief focuses on defendants' past actions and requires plaintiff to prove specific injury to himself, it is fundamentally inconsistent with plaintiff's argument that [the complaint] poses a general constitutional challenge to the practice and procedure of the District Attorney in preparing and obtaining nondistribution orders in child support cases."  McCurdy v. Esmonde, 2003 WL 223412, at p.11 (E.D. Pa., Jan. 30, 2003).

The true purpose of Joynes' complaint is also reflected in the "extensive exposition of the specific facts in [Joynes'] case, which would hardly have been necessary if the district court were

being asked only to 'assess the validity' of the [Melson Formula] rule in its general application."
Stern, 840 F.2d at 212-13. Joynes' complaint is nothing more than "a skillful attempt to mask the
true purpose of the action, which is to reverse the judicial decision of the [Family Court], in
contravention of *Rooker-Feldman*." Id. at 212.

Joynes' constitutional claims are inextricably intertwined with his child support order. Even
though he may "label his lawsuit as a § 1983 action alleging due process violations, his real injury
is the child support order, not any alleged violation of due process. . . Had [plaintiff] prevailed
regarding the child support, despite the alleged due process errors, he would have had no injury and
no constitutional claim to bring before the district court. . . Moreover, had the district court
determined that the state court ordered [plaintiff] to pay child support without due process of law,
the result would have been to declare the child support order (and any resulting contempt order)
invalid as unconstitutionally obtained. That is precisely what *Rooker-Feldman* forbids."
Gorzelancyk v. Baldassone, 29 Fed.Appx. 402, 403-04 (7th Cir., Mar. 7, 2002).

The relief Joynes seeks can be predicated only on a determination by this Court that the
Family Court was wrong in calculating the amount of his child support order. His federal statutory
and constitutional claims are inextricably intertwined with his child support order because they call
upon this Court to "determine that the state court judgment was erroneously entered," or to "take
action that would render the state judgement ineffectual." FOCUS, 75 F.3d at 840. *Rooker-Feldman*
bars all of Joynes' claims against the State Defendants.

## CONCLUSION

For the foregoing reasons, this Court should grant the State of Delaware's motion to dismiss

and dismiss Joynes' complaint against the State Defendants with prejudice.

Respectfully submitted,

/s/ W. Michael Tupman
W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd  Floor
Dover, DE 19904
(302) 739-7641

Attorney for State of Delaware

Dated: December 29, 2005

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 29, 2005, I filed electronically the State of Delaware's  Opening

Brief in Support of Its Motion To Dismiss the Complaint; sent a hard-copy of that Opening Brief to

the Clerk of the Court by first-class mail, postage prepaid; and caused to be served by first-class

mail, postage prepaid, two hard copies of that Opening Brief to:


Timothy N. Joynes
55 West Chestnut Hill Road
Apt. #5
Newark, DE 19713
Plaintiff *pro se*


Christine K. Demsey, Esquire
1328 King Street
Wilmington, DE 19801
Defendant


<u>/s/ W. Michael Tupman</u>
W. Michael Tupman


I:\TUPMAN\FILES\joynes.opening.brief3.wpd