## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY N JOYNES

  Plaintiff,

Vs.        Civil Action No. 05-332-GMS

VINCENT P MECONI et al.

  Defendants.



## PLAINTIFF'S MOTION IN OPPOSITION TO THE STATE OF DELAWARE'S
## MOTION TO DISMISS THE COMPLAINT

      Timothy N Joynes
      55 West Chestnut Hill Road # 5
      Newark, DE 19713-2264

January 17, 2006

**TABLE OF CONTENTS**    Page

Table of citations                                                          I

Federal Laws and Acts                                                       II

Summary of Argument                                                         III

Plaintiff's Statement of the Nature and                                     2
Stage of the Proceedings

Eleventh Amendment and the                                                  3
Rooker-Feldman Doctrine

The Plaintiff's Authority to Enforce Federal criminal                       11
Laws

Delaware Child Support Laws and Equal Protection                            12
and why the Plaintiff chose not to go through State Courts
to assert his Federal Rights

The Delaware Legislature and the Due Process Requirements                   21
of the Uniform Interstate Family Support Act (UIFSA)

The true purpose of the Plaintiff's FEDERAL CAUSES OF ACTION                23

Plaintiff's motions                                                         25

Certificate of Service                                                      26

## TABLE OF CITATIONS

| **CASES** | **PAGE NO.** |
|---|---|
| Ex-Parte Young  209 US 123 (1908) | 3 |
| Scheuer v. Rhodes  416 US 232 (1974) | 3 |
| Hafer v. Melo  502 US 21 (1991) | 4 |
| Smith v. Wade 461 US 30 (1983) | 4 |
| Monroe v. Pape  365 US  167 (1961) | 4, 17 |
| Pulliam v. Allen 466 US 522 (1984) | 5 |
| Ex-Parte Virginia  100 US 339 (1880) | 6 |
| Mitchum v. Foster 407 US 225 (1972) | 6 |
| Sterling v. Constantin 287 US 378 (1932) | 6 |
| Carter v. Philadelphia 181 F3d 339 (1999) | 7 |
| Rooker v. Fidelity Trust 263 US 413 (1923) | 8 |
| District of Columbia v. Feldman 460 US 462 (1983) | 8, 10 |
| Exxon Mobil v. SBIC   000 US 03-1696 (2005) | 8 |
| Exxon Mobil v. Allapattah 000 US 04-70 (2005) | 10 |
| Yick Wo v. Hopkins 18 US 356 (1886) | 12 |
| Grayned v. City of Rockford 408 US 104 (1972) | 13 |
| Weinberger v Weisenfeld 420 US 636 (1975) | 14 |
| Califano v. Webster  430 US  313 (1977) | 14 |
| Shapiro v. Thompson  394 US 619 (1969) | 15 |
| Orr v Orr 440 US 268 (1979) | 15 |
| McNeese v. Board of Education 373 US 668 (1963) | 16 |

I

Patsy v. Florida Board of Regents 457 US 496 (1982)                    17

Clyatt vs US     197 US 207 (1905)                                     19

Hodges v. US     203 US 1 (1906)                                       22

Foman v. Davis     371 US 178 (1962)                                   24

## FEDERAL LAWS AND ACTS

42 USC 1983 & 1985

28 USC 1257

28 USC 1738

42 USC 666 (Bradley Amendment)

UNIFORM INTERSTATE FAMILY SUPPORT ACT

## SUMMARY OF ARGUMENT

1. The state Defendants can be sued in their individual capacities. State Officials sued in their individual capacities are persons within the meaning of 1983, and they come to the Court as individuals and fit comfortably within the statutory term "person."

2. Punitive Damages are available in a proper 1983 action. One of the purposes of the action was to afford a federal right in federal courts because by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth amendment might be denied by State agencies.

3. Prospective relief is available in the form of attorney's fees against judges and mediators. Judicial immunity and immunity doctrines do not apply under the Civil Rights Attorney's Fees Awards Act.

4. Immunity of the Executive Branch of a State government is not absolute, but qualified and of varying degree, depending upon the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken.

5. The Rooker – Feldman Doctrine does not prevent the district courts from issuing preclusive orders against state-court judgments. Nor does 28 USC 1257 stop a district court from exercising subject matter jurisdiction simply because a person attempts to litigate in federal court a matter previously litigated in state court. If the Plaintiff presents a independent claim, then the federal court will have jurisdiction of the case.

6. The Plaintiff clarifies the statement made by Defendants that only the district court and the attorney general can enforce criminal laws.

7. Even if the laws are rational, when the law is not applied equally, then an equal protection violation has occurred.

8. The Plaintiff does not have to exhaust his State remedies before he brings a federal causes of action in federal court.

9. The Delaware Legislature implemented the Uniform Interstate Family Support Act on June 28, 2005, seven years after the Federal mandate of January 1st 1998 deadline had passed, and trying to pass it as "new legislation."

10. The Plaintiff request the Court to give him special consideration because of his limited legal knowledge

## THE PLAINTIFF' STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The Plaintiff would like to clarify statements made by the Defendants that were made in their Motion to Dismiss plea.

On May 26th 2005 the Plaintiff Timothy N Joynes did indeed sue 30 defendants alleging that they violated his constitutional rights under the Thirteenth and Fourteenth Amendments of the Constitution of the United States.

On September 26, 2005, this Honorable Court did indeed deny the Plaintiff's motion to proceed in forma pauperis. Within thirty days of this decision, the Plaintiff paid the $250.00 filing fee as ordered.

Upon paying the fee, the Plaintiff mailed the waiver of service forms to all defendants as required by Rules of Civil Procedure #5. At this time, the Plaintiff had received only four of the waiver forms. They were received from the following Defendants: Denise Lewis, Christine Demsey, Andrew Southmayd and Mary Ann Herlihy. The remaining Waiver of Summons forms were not returned from the post office to the Plaintiff's address of record. According to Federal Rules of Civil Procedure 5(b)(B): "mailing a copy to the last known address of the person served. Service by mail is complete on mailing." The remaining defendants chose not to return the summons. But for purposes of this pleading, the Plaintiff will recognize that the Defendants will allow the State of Delaware Attorney General to represent them, with the exception of Denise Lewis and Christine Demsey, and he will not seek to motion for summary judgment at this time for their failure to return their waiver of summons at the allotted time.*

On December 29, 2005, the Department of Justice moved to dismiss the complaint against them under Federal Rules of Civil Procedure 12(b)(1) and (6). This is the Plaintiff's answer and Motion in Opposition to dismiss Plaintiff's complaint.

--------------

* The Plaintiff acknowledges the receipt of Christine Demsey's and Denise Lewis' motion to dismiss. An opposition on their motion to dismiss was timely filed in this court under a separate motion filed on December 30, 2005.

## THE ELEVENTH AMENDMENT AND THE
## ROOKER-FELDMAN DOCTRINE

1.    The State has used the Eleventh Amendment extensively in their Motion to Dismiss argument that was presented to this Honorable Court. They also employed the Rooker- Feldman Doctrine to justify dismissal of the Plaintiff's federal causes of action. The Plaintiff will try to give a full analysis of why these affirmative defenses should fail.

2.    The Plaintiff will concede that the State itself enjoys absolute immunity from suit unless it gives its consent. It has a well established history in our government. The Plaintiff will not dispute that fact. Only the act of Congress can abrogate the Eleventh Amendment Immunity. However, there are several issues that need to be clarified. The Plaintiff would wish to address why his 1983 and 1985 claims should not fail.

3. The Defendants can be sued in their individual capacities. In Ex-parte Young, 209 US 123(1908), it explains that when a State official is confronted with a claim that he has deprived another of a Federal right under the color of state law, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

3.    In Scheuer vs. Rhodes, 416 US 232 (1974), the  Supreme Court has held that "The Eleventh Amendment does not in some circumstances bar an action for damages against a state official charged with depriving a person of a federal right under color of

state law and the District Court acted prematurely and hence erroneously in dismissing the complaints as it did without affording petitioners any opportunity by subsequent proof to establish their claims."

4. In Hafer vs. Melo, 502 US 21 (1991) the United States Supreme Court explains that "State officers may be held liable for damages under 1983 based upon actions taken in their official capacities. It further explains that "State officials sued in their individual capacities are persons within the meaning of 1983........officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person.".......1983 was enacted to enforce provisions of the Fourteenth Amendment against those who carry a badge of a State and represent it in some capacity whether they act in accordance with their authority or misuse it......The Eleventh Amendment does not bar 1983 personal capacity suits against state officials in federal court......although imposing personal liability on state officers may hamper their performance of public duties, such concerns are properly addressed within the framework of this Court's personal immunity jurisprudence."

5. In Smith vs. Wade, 461 US 30 (1983), The Supreme Court has held that "punitive damages are available in a proper 1983 action. While there is little in the legislative history of the Civil Rights Act of 1871, (from which 1983 is derived) concerning the damages recoverable for the tort liability created by the statute, the availability of punitive damages was accepted as settled law by nearly all state and federal courts at the time of enactment."

6. In Monroe vs. Pape, 365 US 167 (1961), The Supreme Court has held that the

"Allegation of facts constituting a deprivation under color of state authority of the guaranty against unreasonable searches and seizures, contained in the Fourth Amendment and made applicable to the states by the due process clause of the Fourteenth Amendment, satisfies to that extent the requirement of 1979.......One of the purposes of this legislation was to afford a federal right in federal courts because by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies.

7.     Now the Plaintiff would like to explain how judges, commissioners and mediators can be held liable under 42 USC 1983 and 1985. In Pulliam vs. Allen, 466 US 522 (1984), the United States Supreme Court held that "Judicial immunity is not a bar to prospective injunctive relief against a judicial officer......acting in her judicial capacity. .....there never has been a rule of absolute judicial immunity from prospective relief, and there is no evidence that the absence of that immunity has had a chilling effect on judicial independence.......there is no support for a conclusion that Congress intended to limit the injunctive relief available under 1983 in a way that would prevent federal injunctive relief against a state judge. Rather, Congress intended 1983 to be an independent protection for federal rights and there is nothing to suggest that Congress intended to expand the common –law doctrine of judicial immunity to insulate state judges completely from Federal collateral review. Judicial immunity is no bar to the award of attorney's fees under the Civil Rights Attorney's Fees Awards Act. Congress has made clear in the Act its intent that an attorney's fee award be made available even when damages would be barred or limited by immunity doctrines."

7.   In Ex- Parte Virginia, 100 US 339 (1880), the Civil Rights Act of 1865 was

imposed against a Virginia Judge for his failure to include certain jurors because of

their race. He was subsequently indicted and arrested for this act. The Supreme

Court reasoned that the Fourteenth Amendment prevents a state from denying any

person within its jurisdiction the equal protection of the law. The Civil Rights Act

intent was  to reach unconstitutional actions by all state actors, judges included.

8.   In Mitchum vs. Foster, 407 US 225 (1972), the US Supreme Court explained

that the very purpose of 1983 was to "interpose the federal courts between the

States and the people, as guardians of the people's federal rights- to protect the

people from unconstitutional action under the color of state law, whether that action

be executive, legislative, or judicial." Because of these US Supreme court decisions,

the State's defense under Will vs. Michigan State Police, 491 US 58 (1989) would

also be defeated because the actions rose from a suit in a state court, not a federal

cause of action.

9.   Now, the Plaintiff would like to address how the governor can be held liable

under 42 USC 1983.

10. In Sterling vs. Constantin, 287 US 378 (1932), The US Supreme Court, under

Chief Justice Hughes made this statement: "If this extreme position could be

deemed to be well taken, it is manifest that the fiat of a Governor, and not the

Constitution of the United States, would be the supreme law of the land; that the

restrictions of the Federal Constitution upon the exercise of state power would be

but of impotent phrases, the futility of which the State may at any time disclose by

the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of Government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution. When there is a substantial showing that the exertion of state power has overridden private rights secured by that constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with that transgression."

11. Scheuer vs. Rhodes states that "the immunity of officers of the executive branch of a state government is not absolute but qualified and of varying degree depending upon the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken." This also would include the attorney general. No state official can enjoy absolute immunity, but qualified immunity. A more detailed analysis is explained in the original complaint filed by the Plaintiff on how the Attorney General enjoys qualified immunity in Carter vs. Philadelphia(No.98-1581  181 F.3d 339,43[1999]) -Third Circuit Court of Appeals.

12. The Defendants failed to state in their motion that the Plaintiff is suing them "in their individual and official capacity and as such, their Eleventh Amendment immunity defense must be defeated.

13. Now the Plaintiff would like to address the "Rooker- Feldman" Doctrine.

14. The "Rooker-Feldman" Doctrine takes it name from Rooker v. Fidelity Trust Company 263 US 413(1923) and District of Columbia Court of Appeals v. Feldman 460 us 462 (1983). In these cases, the court has held that 28 USC 1257, which grants appellate jurisdiction of the Supreme Court to review final state judgments, is a limitation on the jurisdiction of the lower federal courts.

15. The United States Supreme Court has held in Exxon Mobil Corp vs. Saudi Basic Industries Corp 03-1696 (2005) that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." This Doctrine does not prevent a federal court from exercising concurrent jurisdiction when parallel proceedings are filed in state and federal court, and once federal jurisdiction is acquired, doesn't vanish if the state action reaches a judgment before the federal action does. It becomes a matter of preclusion of law, not a jurisdictional question.

16. The US Supreme Court went further than that. It noted that "under 28 USC 1738, federal courts must give the same preclusive effect to the same state court judgment as another court of that state would give. In parallel litigation, a federal court may be bound to recognize the claim and issue preclusive effects of a state – court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. Nor does 1257 stop a district court from exercising subject matter jurisdiction simply because a party

attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which a plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles....Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."

17. This Supreme Court decision is by no means exhaustive. It notes that "neither Rooker or Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court." The Court also came to the conclusion that "there is nothing necessarily inappropriate, however, about filing a protective action." This decision came as a certiorari to the United States Court of Appeals for the Third Circuit. The United States Supreme Court realized that may state courts and even the federal courts have construed the Rooker- Feldman Doctrine to extend far beyond the contours of Congress intent, and superceding the ordinary application of the preclusion law pursuant to 28 USC 1738.

18. The Plaintiff never indicated in his pleading that he wanted the federal courts to review and overturn the state courts judgments. In fact, this is the Plaintiff's exact quote: " 207. The Plaintiff also request that this Honorable Court to invoke the Constitution to prevent the furthering of the deprivation of Plaintiff's civil rights as

guaranteed by the Fifth, Thirteenth, and Fourteenth Amendments and to punish those Defendants that deprived the plaintiff of his liberties and his reputation." The Exxon vs. SBIC 03-1696 (2005) vindicates this statement.

19.  Now the Plaintiff turns his attention to the Feldman case 460 US 46 (1983). The United States Supreme Court stated that "the United States District do have subject-matter jurisdiction over general challenges to……. rules promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case…….The district court has jurisdiction over the elements of respondents complaints involving a general attack on the constitutionality of …….rule."

20. The Plaintiff made the following challenges to the state statutes:

Par. 66-75- Here in the original complaint, the Plaintiff asserts how state procedures violated federal law when it comes to due process safeguards when administering a family court summons.

Par. 186- "The Ad Hoc Committee circumvents public scrutiny by having closed door meetings and deliberations; because of this, the public is not able to testify and observe these meetings. The dates of the meetings are never made public. These actions have kept the public from expressing their views, a right guaranteed by the first amendment, and violating the Administrative Procedures Act as codified, 5 USC 552b mandating open meetings with public notice in Federal Programs." *

---------------

* Incidently, the Defendants claim that this only applied to the federal government. However, on January 11, 2006 the Delaware Legislature had a public meeting on child support payments and the Melson Formula. State official have been quoted as saying that "it's important for people to bring up problems or inconsistencies with the child support formula now because it's being revised this year." –News Journal

Par. 32- The Family Court of Delaware utilizes their laws, as codified 13 Del c 511-518, to acquire jurisdiction over "non-custodial" parents and deny them of their due process rights.

21. These are some of the Federal questions raised by the Plaintiff. However, the United States Supreme Court made this ruling in Exxon Mobile Corp. vs. Allapattah 000 US 04-70 (2005) - "A court with original jurisdiction over a single claim in the complaint has original jurisdiction over a civil action under 1367(a) even if that action comprises of fewer claims that were included in the complaint. Once a court has original jurisdiction over the action, it can then decide whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over other claims in the action." Therefore, the "Rooker- Feldman Doctrine" affirmative defense must fail.

## THE PLAINTIFF'S AUTHORITY TO ENFORCE FEDERAL CRIMINAL LAWS

22. The Plaintiff never asserted that he had the authority to enforce federal criminal laws. In fact, here are the following statements made in the Plaintiff's original complaint:

Par. 4- "The District Court, through the United States Attorney General, to the Federal Bureau of Investigations has the authority to order an investigation to be conducted of the violations of Federal Criminal Laws."

Par. 7-"Plaintiff hereby states that that this civil action is not, at this time,......a criminal action until the United States Attorney General enters into the action as a

Plaintiff for the United States. THIS IS JUST ANOTHER POOR REASON TO ATTEMPT TO DISMISS THIS CASE.

## **DELAWARE'S CHILD SUPPORT LAWS AND EQUAL PROTECTION AND WHY THE PLAINTIFF CHOSE NOT TO LITIGATE THROUGH STATE COURTS TO ASSERT HIS FEDERAL RIGHTS**

23. The Defendants claim that the Delaware Child Support Laws make a rational distinction between custodial and non-custodial parents. They also make the generalization claim that men make more money than women and that society wants some of that money used to support their children. It seems strange that the Defendants make such a statement since they have not allowed the Delaware society, its own citizens, to participate in any public meetings concerning how the Melson Formula should be applied to non-custodial parents. Their idea of representing society is by creating a Ad-Hoc committee to make society's decisions, without any of society's imput. It is only after the Plaintiff filed this suit that the State Legislature decided to hold a public meeting in Dover, Delaware on January 11, 2006. This location is far from where the majority of the affected persons reside. As a result, the true injured did not have a say in the adoption of the Melson Formula.

24. Suppose that the Melson Formula was sound and rational. When the application of the law is not applied equally towards similarly situated individuals, then an equal protection violation has occurred. In Yick Wo vs. Hopkins 118 US 356

(1886), the United States Supreme Court has held that a facially neutral law that is

fair on its face but administered with an evil eye and a heavy hand cannot be enforced and is in violation with the equal protection clause when it operates to discriminate against a group of individuals.

25. The Family Court has an established rule in the Formula Evaluation and Update. It states that all able-bodied persons shall be attributed with an income of $1300.00 a month or the statutory wage of 40 hours a week whichever is greater. The general public does not have access to review the established guidelines. The Ad-Hoc committee has went to great lengths to remove it from the Family Court website. This will effectively keep its citizens misinformed and leaves them vunerable to judiciary abuse of discretion.

26. The United States Supreme Court ruled in Grayned vs. City of Rockford 408 US 104 (1972) that "vague laws offend several important values; first, vague laws may trap the innocent by not providing fair warning; second, vague law impermissibly delegates basic policy matters to policeman, judges, and juries for resolution by an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application; and third, where a vague statute abuts on sensitive areas of First Amendment freedoms, it operates to inhibit the exercise of those freedoms."

27. The Defendants claim that custodial and non-custodial parents are not by definition, similarly situated. They also claim that the custodial parent often contributes to the cost of caring for the children, and also takes primary

responsibility for the day to day care of a child, maintains a separate household for the children, and depends upon the Guidelines to ensure that they receive adequate financial resources from the non-custodial parent to assist in raising the child. The United States Supreme Court does not agree with that.

28.  In Weinberger vs. Weisenfeld 420 US 636 (1975), the Court has this to say: "Further, to the extent that women who work when they have sole responsibility for children encounter special problems, it would seem that men with sole responsibility for children will encounter the same child-care related problems.....finally to the extent that Congress legislated on the presumption that women as a group would chose to forego work to care for children while men would not, the statutory structure, independent of the gender based classification would deny or reduce to those men who conform to the presumed norm and are not hampered by their child care responsibilities.....because they earn too much. Thus the gender based distinction is gratuitous, without it the statutory scheme would only provide benefits to those men who are in fact similarly situated to the women the statute aids.......like the statutes there by providing dissimilar for men who are similarly situated, the challenged section violates the due process clause."

29. In Califano vs. Webster 430 US 313 (1977), the US Supreme Court held that the "reduction of the disparity in economic condition between men and women caused by the long history of discrimination against women has been long recognized as such an important governmental objective. But the mere recitation of a benign, compensatory purpose is not a shield which protects against any inquiry into the

actual purposes underlying a statutory scheme. Accordingly, we have rejected attempts to justify gender classifications as compensation for past discrimination against women when classifications in fact penalized women wage earners.......elimination of the more favorable computation for women wage earners, even in the remedial context, is wholly consistent with these reforms, which require equal treatment of men and women in preference to the attitudes of "romantic paternalism" that have contributed to the long and unfortunate history of sex discrimination."

30. In Shapiro vs. Thompson 394 US 618 (1969), The Court recognized that "a state has a valid interest in preserving the fiscal integrity of their programs..... but a state may not accomplish such a purpose by invidious distinctions between its classes of citizens."

31. In Orr vs. Orr 440 US 268 (1979), the Court explains that " the state cannot be permitted to classify on the basis of sex" and that "there is no reason, therefore to use sex as a proxy for need." The Supreme Court couldn't be ever clear.

32. The Plaintiff next turns to the unpublished orders submitted by the State Defendants.

33. The Defendant have submitted cases that were decided before the United States Supreme Court ruled on narrowing the use of the "Rooker-Feldman Doctrine."

34. Also, the Defendants are trying to cite cases that were not to be used as precedents or authority in the particular courts.

35. For example, in the Seventh Circuit Court of Appeals, they have an established local rule that bars citations of certain types of court rulings. Rule 53 of the Seventh Circuit Court of Appeals explains that "Except to support a claim of res judicata, collateral estoppel, or law of the case, shall not be cited or used as precedent (a) in any federal court within the circuit in any written document or in oral argument (b) by any such court for any purpose.....when the decision does not satisfy the criteria for publication, it will be filed as a unpublished order. The order will ordinarily contain reasons for the judgment, but may not do so if the court has announced its decisions and reasons from the bench. A statement of facts may be omitted from the order or may not be complete or detailed.

36. The fact that the Defendants used such cases as factual law is truly disturbing. The Plaintiff sees this as another poor example to attempt to dismiss the petition.

37. The Defendants claim that the Plaintiff should have appealed his case through the state court system. The Plaintiff is prepared to address this claim.

38. In Mcneese vs. Board of Education 373 US 668 (1963), the Supreme Court ruled that "relief under the Civil Rights Act may not be defeated though relief was not first sought under a state law which provided a remedy. The purpose of 42 USC 1983 were to override certain kinds of state laws, to provide a federal remedy where

the state remedy, though adequate in theory, is not available in practice, and to

provide a remedy in the federal courts supplementary to any remedy any State

might provide: and those purposes would be defeated if it were held that assertion

of a federal claim must await an attempt to vindicate the same claim in a state

court."

39. In Patsy vs. Florida Board of Regents 457 US 496 (1982) the Court ruled that

"exhaustion of state administered remedies is not a prerequisite to an action under

1983..... A judicially imposed exhaustion requirement in cases other than adult

prisoners cases would be inconsistent with congress....

40. In Monroe vs. Pape, the Supreme Court ruled that "the federal remedy is

supplementary to the state remedy, and the state remedy need not be sought

and refused before the federal remedy is invoked." The Plaintiff does not have to

assert his Federal Rights through the State court system.

41. To understand the Plaintiff's reasoning as a matter of law, we will have to

understand why Congress drafted the Fourteenth Amendment. Even as early as

1871, Congress saw a need to enact laws to protect its citizens against deprivation

of rights by the States. Note what Mr. Burchard said at the 39th Congress:

"If the State Legislature passes a law discriminating against any portion of its
citizens, or if it fails to enact provisions equally applicable to every class for the
protection of their person and property, it will be admitted that the State does not
afford the equal protection. But if the statutes show no discrimination, yet in its

judicial tribunals one class is unable to secure that enforcement of their rights and punished for their infraction which is afforded another, or if secret combinations of men are allowed by the Executive to band together to deprive one class of citizens of their legal rights without a proper effort to discover, detect, and punish the violations of law and order, the state has not afforded to all its citizens the equal protection of the laws."

42. Senator Lyman Trumbull made this statement at the same Congress:

"The question is not whether a majority of the people in a majority of the States are likely to be attached to and enable to secure their own liberties. The question is not whether the majority of the people in every State are not likely to desire to secure their own rights. It is, whether a majority of the people in every State are sure to be attached to the principles of civil freedom and civil justice as to be as much desirous of preserving the liberties of others as their own, as to insure that under no temptation of party spirit, under no political excitement, under no jealousy of race or caste, will the majority either in numbers or strength in any State seek to deprive the remainder of the population of their civil rights."

" There shall be no discrimination in civil rights or immunities among the inhabitants of any State or Territory of the United States on account of race, color or previous condition of slavery; but the inhabitants of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as punishment for a crime whereof the party shall be duly convicted, shall have the same right to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to the full and equal benefit of all laws and proceedings for the security of person and property, and shall be subject to like punishment, pains and penalties, and to none other, any law, statute, ordinance, regulation, or custom to the contrary notwithstanding."

43. As far as the Plaintiff's right to approach the federal courts to address his

grievances, Senator Trumbull had this to add:

"That the district courts of the United States, within their respective districts, shall have, exclusive of the several States, cognizance of all crimes and offenses committed against the provisions of this act, and also, concurrently with the circuit courts of the United States, of all causes, civil and criminal, affecting persons who are denied or cannot enforce in the courts or judicial tribunals of the State or locality where they may be of the rights secured to them by the first section of this act, and if any suit or prosecution, civil or criminal, has been or shall be commenced in any state court, against any such person, for any cause

whatsoever,....such defendant shall have the right to remove such cause for trial to
the proper district or circuit court in the manner prescribed by the act relating to
habeas corpus and regulating judicial proceedings in certain cases, approved March
3rd 1863, and all acts amendatory thereof."

44. The Defendants claim that the Plaintiff is not in state of involuntary servitude
because he earns a salary of $72,000 a year. What the Defendants do not wish to
reveal is the fact that the Plaintiff has to work a substantial amount of overtime in
order to achieve that amount. The average employee that works at the same facility
make considerably less. The Plaintiff is a list operator at his job. He is guaranteed
only forty hours a week, which would put him at a guaranteed salary of $43,000 a
year. By being forced to work a substantial amount of overtime, he is being
deprived of the most important aspect of his life, the right to be in the life of his
child. They are able to accomplish this because state law allows these defendants to
abuse their discretion.

45. The United States Supreme Court has found that the threat and enactment of
legal process to compel employment, i.e. imputing income, is involuntary servitude
which is prohibited by the Thirteenth Amendment.

46. The Court in Clyatt vs. US 197 US 207 (1905) found that "peonage is
sometimes classified as voluntary or involuntary........the one exist where the
debtor voluntarily contracts to enter the service of his creditor. The other is forced
upon the debtor by some provision of law. But peonage, however created, is
compulsory service- involuntary servitude. The peon can release himself therefrom,

it is true, by the payment of the debt, but otherwise the service is enforced....... He may also arrest an individual for the purpose of placing him in a condition of peonage, and this whether he be the one whom the involuntary service is to be rendered or simply employed for the purpose of making the arrest. Or he may, after one has fled from a state of peonage, return him to it, and this whether he himself claims the service or is acting simply as an agent of another to enforce the return."

47. In Hodges vs. US 203 US 1 (1906), the US Supreme Court announced that the Thirteenth Amendment was a "denunciation of a condition, and not a declaration in favor of a particular people. It reaches every race and every individual, and if in any respect it commits one race to the nation, it commits every race and every respect it commits one race to the nation, it commits every race and every individual thereof.......... It is true that slavery cannot exist without law.....therefore, the 13th Amendment may be regarded as nullifying all state laws which establish or uphold slavery."

48. Unfortunately, today we have a record that has sadly shown that the courts and state legislatures time and again are willing to carve out exceptions whenever the politicians want something bad enough that any person with common sense can see that the laws that were enacted are a form of involuntary servitude. Abraham Lincoln has described slavery as having a "thick coating," meaning that that any institution of slavery is surrounded by large sums of money. That is exactly what the child support laws of Delaware and the Defendants are trying to protect. They would be overjoyed to see the Plaintiff's suit disappear "into thin air" so that the

financial windfall and the abuse of discretion would continue. How does the
Plaintiff know this? Let's take a look at the Delaware's legislative history this past
year and find out.

## THE DELAWARE LEGISLATURE AND THE DUE PROCESS
## REQUIREMENTS OF THE UNIFORM INTERSTATE FAMILY SUPPORT ACT

49. On May 26th 2005, the Plaintiff filed this lawsuit in the United States District Court.

50. On June 1st 2005 just <u>six</u> days after the filing, the 143rd Assembly introduced House
Bill # 195 titled: AN ACT TO AMEND CHAPTER SIX, TITLE 13 OF THE
DELAWARE CODE, THE UNIFORM INTERSTATE FAMILY SUPPORT ACT. One
of the sponsors is Defendant Patricia Blevins.

51. It was assigned to the Health and Human Development Committee. By June 23rd
2005, it passed through the House and Senate and was signed by the Governor on June
28th 2005. When this Legislation was passed, it was to be inserted and replaced by an
"new Chapter 6." Actually, the "new legislation" is not new by any means. Back in
1996, Congress passed the UIFSA act, and it gave the States until January 1st 1998 to
implement the Act into their laws. Delaware implemented it on June 28, 2005, seven
years after the January 1st 1998 deadline, a violation of section 454 (20(a).

52. In the UIFSA document, under Section 321. ADOPTION OF UNIFORM STATE

LAWS, the exact wording is as follows:

Section 466(42 USC 666) is amended by adding at the end the following new subsection:

(f) Uniform Interstate Family Support Act- In order to satisfy section 454 (20(a), on and after January 1st 1998 each State must have in effect the Uniformed Interstate Family Support Act, as approved by the American Bar Association on February 9th 1993, together with any amendments officially adopted before January 1st 1998 by the National Conference of Commissioners on Uniform State Laws. - P.L. 104-193

53. The UIFSA statutes provides additional due process safeguards to non-custodial parents, including the right to contest determination of child support orders and procedures. Now, for the mandatory language to be stricken to expedite the UIFSA process, the State is asking the Federal Office of Child Support Enforcement to grant it a waiver from the mandatory language of the Social Security Act. It took seven years! In addition, the Delaware General Assembly on June 30th 2005 amended Title 13 of the Delaware Code relating to Child Support Enforcement. This Amendment allows the non-custodial parent to retain their licenses if they are willing to work or seek work, and those who will not work, they will lose their license and be further sanctioned. Finally, equal protection!

54. However, the fact remains that there are thousands of non-custodial parents that are "injured" by the current law while the State awaits for the Federal Office of Child Support to grant the waiver it needs. And even when the waiver is granted, there must be a redress to prevent the abuse of discretion by the same Persons that are charged to ensure due process to all that come to court.

55. As far as the State Actors' consequence for failing to protect the Litigants due process

rights, the US Supreme Court in Screws vs US 325 US 91(1945) had this to say:

"Under that test a local law violates 20 and commits a federal offense for which he can be sent to the penitentiary if he does some act which some court later holds deprives a person of due process of law. And he is a criminal though his motive is pure and though his purpose is unrelated to the disregard of any constitutional guarantee. The treacherous ground on which state officials-police, prosecutors, legislators, and judges- would walk is indicated by the character and closeness of decisions of this court interpreting the due process clause of the Fourteenth Amendment."

## THE TRUE PURPOSE OF THE PLAINTIFF'S FEDERAL CAUSES OF ACTION

56. Finally, the Defendants assert that the Plaintiff's real injury is the child support order. The Plaintiff's real injure is the laws that have discriminated against him and treated him unfairly, and it is the State representatives that have abused their authority and their discretion that has caused the injury not only to him, but to others like him.

57. The Plaintiff has the courage to confront the offenders that have violated his rights and unlawfully and unconstitutionally deprived him of his rights by interfering with his right to raise his child as he sees fit. The Plaintiff does not want this Honorable Court to overturn the state court judgment. Only the Supreme Court can do that. But the Court has the power to issue preclusive orders to prevent further deprivation.

58. The Plaintiff has very limited legal knowledge. As a Pro Se litigant, I am entitled to a fair trial. The Supreme Court has ruled in Jenkins vs. Mckeithen 395 US 41 that pro se

pleadings are not to be held to the same high standards of perfection as lawyers and the Third Circuit Court of Appeals ruled the same in Picking vs. Penna Railroad 151 F2d 240.

59. In Foman vs Davis 371 US 178 (1962), it explains that "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. The rules themselves provide that they are to be construed to secure the just, speedy, and inexpensive determination of every action.....if the underlying facts or circumstances relied on by Plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits...but outright refusal to grant the leave without any justifying reasons appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

60. Scheurer vs. Rhodes made this comment concerning giving Plaintiffs an opportunity to substantiate their claims: "Analyzing the complaints in light of these precedents, we see that petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the named defendants for what they claim-but have not established by proof-was a deprivation of federal rights by these defendants under color of state law. Whether the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given them favorable reading required by Federal Rules of Civil Procedure, are not barred by the Eleventh

Amendment. Consequently, the district court erred in dismissing the complaints for lack of jurisdiction."

61. The Plaintiff has filed this Lawsuit under 950- constitutionality of state laws. The Plaintiff asserts that claim throughout his suit. Now, then, if the Plaintiff failed to state a claim as all of these Defendants assert, then intimidation with the conspiracy to deny rights, actions outside lawful jurisdictions, criminal conspiracy to deny rights, fraud, and perjury can exist without fear of having to answer. Then the court splits hairs and insinuates that the Constitution of the United States, which is the supreme law of the land, does not mean what it says and that we are governed by what the judiciary dictates.

62. President Nixon and President William Clinton were impeached. Tom Delay is being prosecuted. These persons were high federal officials that were prosecuted. Sovereign Immunity did not protect them. Why should it protect these Defendants?

Wherefore, the Plaintiff respectfully request that Defendants Christine K Demsey and Denise Lewis motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) be denied.

### AND

The Plaintiff respectfully request that the State Defendants motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and Federal Rules of civil Procedure 12(b)(6) be denied.

Respectfully Submitted,

*Timothy N Joynes*

Timothy N Joynes

In accordance to the Federal Rules of Civil Procedure, Rule 5 the following documents has been sent to the following parties.

W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street 3rd Floor
Dover, DE 19904
(302) 739-7641

Christine K. Demsey, Esquire
1328 King Street
Wilmington, DE 19801
(302) 428-3190

Attorney for State of Delaware

Denise Lewis
84 Freedom Trail
New Castle, DE 19720

## CERTIFICATE OF SERVICE

Under penalties of perjury, I certify that on January 17th 2006, I sent by first-class mail, a true and correct copy to the above name Defendants.

Timothy N Joynes

Notary Public
17 January 2006

HOLLY A. MORRIS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission expires June 30, 2006