IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY N. JOYNES,                    )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )          Civil Action No. 05-332 GMS
                                      )
VINCENT P. MECONI, et al.,            )
                                      )
                    Defendants.       )
                                      )

**MEMORANDUM**

## I.   INTRODUCTION

On May 26, 2005, the plaintiff, Timothy N. Joynes ("Joynes"), filed this *pro se* civil rights

action against twenty-three individual defendants, as well as the Family Court for the State of

Delaware (the "Family Court"), the Delaware Department of Health and Social Services (the

"DHSS"), the Delaware Division of Child Support Enforcement (the "DCSE"), the State of

Delaware Department of Justice (the "Delaware DOJ"), the State of Delaware Judiciary (the

"Delaware Judiciary"), the State of Delaware (the "State") (collectively, the "State Agency

Defendants"), and the Delaware Support Formula Ad Hoc Committee (the "Ad Hoc Committee").[1]

---

[1] The twenty-three individual defendants named in Joynes' complaint are: Vincent P.
Meconi, Secretary of the DHSS; Charles E. Hayward, Director of the DCSE; the Honorable
Martha Sackovich, Family Court Commissioner; the Honorable Mary Ann Herlihy, Family
Court Commissioner; the Honorable Jay H. Conner, Family Court Judge; Christopher Spizzirri ,
Deputy Attorney General for the Delaware DOJ; Stephanie Fitzgerald, Family Court Mediator;
Ruth Ann Minner, Governor of Delaware; Denise Lewis, Joynes' wife; Christine K. Demsey, the
attorney representing Lewis in the child support proceedings; and thirteen individual Ad Hoc
Committee members, including the Honorable Vincent J. Poppiti, then Chief Judge of the Family
Court; the Honorable Patricia Blevins and the Honorable Robert J. Valihura, Jr., then Family
Court Judges; Peter S. Feliceangeli, Esq.; Andrew Haman; then Commissioner Joelle Hitch;
Commissioner Andrew T. Horsey; Janine Howard, Esq.; Alisa Mawson; Ellen Meyer, Esq.;
Commissioner Andrew K. Southmayd; Mona Steele; and Barbara E. Corrozi (collectively, the
"individual Ad Hoc Committee members").

Joynes' complaint alleges violations of his constitutional rights under the following statutes: 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 241, 18 U.S.C. § 1503, 18 U.S.C. § 1512(b), (c), (d), 18 U.S.C. 1581, 18 U.S.C. § 1584, and 18 U.S.C. § 1589. Joynes complaint contains state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Presently before the court are two motions: (1) Demsey and Lewis' Motion to Dismiss for Failure to State a Claim (D.I. 7), and (2) the state defendants' motion to dismiss (D.I. 8). For the reasons that follow, the court will grant both motions.

## II.    BACKGROUND

The following facts are taken from the plaintiff's complaint. The incidents complained of in Joynes' complaint arise from child support proceedings taking place in the Family Court between October 2003 and January 2005. Joynes alleges that, on October 16, 2003, his wife, Denise Lewis ("Lewis") sought the services of the DCSE and filed a child support petition, in order to pay for her expenses and the expenses of their child, who was living with Lewis at the time.[2] (D.I. 2 ¶¶ 59-63.) On December 22, 2003, Joynes received a summons, advising him of the date and time of his court mediation/hearing on the petition, January 15, 2004, and informing him of sanctions that would be imposed against him if he did not appear at the mediation/hearing. (Id. ¶ 66.) Joynes claims that the summons did not indicate that he had a right to contest the child support action, as required by Title IV-D of the Social Security Act. (Id. ¶¶ 67-68.) It also appears from the face of the complaint

---

[2] According to the complaint, Joynes and Lewis were married on February 6, 1998. (D.I. 2 ¶ 50.) Subsequent to their marriage, Lewis gave birth to two boys. (Id. ¶ 51.) On August 21, 2001, Joynes and Lewis experienced marital problems and decided to separate. (Id. ¶ 52.) As of the filing date of this action, Joynes and Lewis allegedly were still married and no longer separated. (Id. ¶ 25.)

that Joynes alleges the summons violated his Fourteenth Amendment right to due process.  (Id. ¶ 75.)

On January 15, 2004, Joynes appeared at the mediation/hearing in the Family Court.  (Id. ¶ 76.)  "[I]n a rush to arrive to Family Court on time, [Joynes] left his documentation [such as receipts and cancelled checks] needed for the court at home."  (Id. ¶ 77.)  After arriving at the mediation, Stephanie Fitzgerald ("Fitzgerald"), the mediator, requested the parties to produce their paperwork.  (Id. ¶ 78.)  Joynes explained that he had left his paperwork at home and Fitzgerald responded by stating that she had a copy of his 2003 income statement.  (Id.)  The income statement indicated that Joynes had an income of $61,000 for the tax year, a true number, but one which included $20,000 in overtime that is normally not guaranteed to Joynes.  (Id.)  Joynes explained this fact to Fitzgerald, but she drafted an interim child support order based on the non-guaranteed overtime, based on Lewis working a forty-hour week with no overtime, and "without producing evidence that [Joynes] failed to support a child conceived."  (Id.)  After drafting the order, Fitzgerald "sign[ed] to have [Joynes'] pay attached" without proof of non-support.  (Id. ¶ 79.)  Joynes alleges that Fitzgerald's actions violated his civil rights by denying him equal protection of the law and "initiat[ing] the first step toward making [him] a peon to the State of Delaware."  (Id. ¶¶ 79, 80, 85.)

Joynes requested to have his case heard in Family Court in front of a commissioner.  (Id. ¶ 80.)  His request was granted and, on April 12, 2004, Joynes had his case heard by Commissioner Martha Sackovich ("Commissioner Sackovich").  (Id. ¶ 90.)  Christopher Spizzirri ("Spizzirri"), a Deputy Attorney General for the State, prosecuted the case for Lewis and the DCSE, and requested Commissioner Sackovich to award Lewis child support.  (D.I. 2 ¶ 92-93.)  Commissioner Sackovich acceded to Spizzirri's request and entered a child support order.  (See id. ¶ 96.)  Joynes claims that

Spizzirri prosecuted the case even though he had no knowledge of the facts at hand, thereby violating his rights. (Id. ¶ 92.) Joynes further alleges that Commissioner Sackovich violated his rights by finding him liable for child support, without indicating what finding of law made him liable to Lewis and contrary to the evidence of support that he presented. (Id. ¶¶ 94, 96.) Joynes alleges that when he received his permanent support order, Commissioner Sackovich had raised his annual salary to almost double his base salary, in violation of his rights. (Id. ¶ 99.) According to Joynes, the Family Court "regularly convicts non-custodial parents for non-support because they classify custodial and non-custodial parents differently, with no legitimate state purpose." (Id. ¶ 101.) Joynes alleges that this "convict[ion]" is a source of injury to him, giving rise to claims against Spizzirri and Commissioner Sackovich. (Id.)

On July 9, 2004, Joynes made a phone call to Charles Hayward, Director of the DCSE, but was directed to a representative of the agency. (Id. ¶ 105.) Dissatisfied with the responses to his questions and wanting to speak with Hayward directly, Joynes sent two letters to Hayward, on July 10, 2004 and July 12, 2004, respectively. (Id. ¶ 108, 110.) The July 10, 2004 letter addressed miscalculations in Joynes' support arrearage and also stated that the DCSE "was circumventing their responsibility of investigating the facts on a child support petition before forwarding it to the Delaware [DOJ]." (Id. ¶ 110.) The July 12, 2004 letter again addressed the DCSE's responsibility for investigating child support petitions, specifically its "failure to discover relevant information to discredit Lewis' claim that [Joynes] failed to support his children. . . ." (Id. ¶ 111.) Joynes sent letters similar to the July 12, 2004 letter to Vincent P. Meconi ("Meconi"), Director of the DHSS and Governor Ruth Ann Minner ("Governor Minner"). (Id. ¶¶ 114, 116.) Hayward and Meconi responded to the letters but, according to Joynes, Governor Minner "left it up to Hayward and

Meconi to settle [Joynes'] questions.  (Id. ¶ 116.)

Hayward's letter, dated July 27, 2004, discusses the procedures used by the DCSE to verify an agency application in order to prepare a support petition. (Id. ¶ 113.) Meconi's letter "attempt[s] to better clarify the process" of initiating a case for child support enforcement. (Id. ¶ 116.) The letter explains that the DCSE files a petition for child support much like an individual "walks into the court and files a petition on his or her own." (Id.) After the petition is filed, the court schedules a hearing and notices the parties. (Id.) According to the letter, "[t]he hearing is the fact-finding venue, where the court gathers the evidence presented by the parties," and then enters an order based on the evidence presented. (Id.) The individual's right to due process "comes during the court hearing." (Id.) Finally, the letter states that the paragraphs of the petition are "merely . . . allegation[s]," and "not meant to be a negative or discriminatory remark toward the respondent." (Id.) Joynes claims that the DCSE does not follow its own procedures, as set forth in the handbook on child support enforcement and, as a result, Meconi, Hayward, and Governor Minner violated his rights, and were a direct source of injury supporting his causes of action. (Id. ¶¶ 118-19.)

In August 2004, Joynes submitted two petitions to the family court: (1) a petition for modification of child support, and (2) a Rule to Show Cause petition. (D.I. 2 ¶ 120.) Joynes' Rule to Show Cause petition was forwarded to Commissioner Mary Ann Herlihy ("Commissioner Herlihy"), who set a court hearing on the petition for January 4, 2005. (Id. ¶ 121.) However, on October 25, 2004, Commissioner Herlihy dismissed the claim for failure to state a cause of action "without giving [Joynes] an opportunity to appear." (Id. ¶ 121-22.) Joynes appealed the ruling and, on November 17, 2004, had his appeal heard by the Honorable Jay H. Conner ("Judge Conner"). (Id. ¶ 123.) Judge Conner dismissed the appeal for failure to state a claim, "[d]espite the fact that

5

[Joynes] was entitled to have his case heard by the Family Court." (Id.)  At this point, Joynes "ceased seeking justice through the Family Court." (Id.)  Joynes alleges that the actions of Commissioner Herlihy and Judge Conner deprived him of substantive due process and denied him equal protection of the laws. (Id.)

On January 11, 2005, Joynes and Lewis appeared in the Family Court for a mediation/hearing concerning Joynes' petition for modification of the child support payment. (Id. ¶ 125.)  Lewis was represented in the action by Christine K. Demsey ("Demsey"), a family law attorney. (Id.)  The mediator requested pay stubs from the parties and compiled four child support orders; two based on a forty-hour work week and two based on a year-to-date income. (Id. ¶¶ 125-26.)  Joynes requested that the mediator use the child support order based on a forty-hour work week. (Id. ¶ 126.)  Lewis and Demsey disagreed, and asked the mediator to use the support order that included overtime. (Id. ¶ 127.)  It is not clear from the face of the complaint which order the mediator entered.  However, Joynes promised to take further legal action against Lewis and Demsey, outside of the Family Court. (Id. ¶¶ 129-30.)  In this action, Joynes claims that Lewis and Demsey violated his rights by using the Family Court, the Delaware Judiciary, and the Delaware DOJ to deny his constitutional rights. (Id. ¶ 135.)  Joynes also claims that Lewis and Demsey caused him to suffer a serious financial setback – he fell behind on rent, had his utilities turned off, and fell behind with his car payments. (Id. ¶¶ 136-39.)

Joynes' complaint also contains allegations with respect to the State Agency Defendants and the Ad Hoc Committee.  With respect to the State Agency Defendants, Joynes alleges that the following process deprives him of his constitutional rights: (1) the DCSE, through the Delaware DOJ, files a petition for child support based on unverified allegations by the "custodial" parent and

stating that the "non-custodial parent" is "absent" and, therefore, not supporting his or her children (D.I. 2 ¶ 169-70); (2) the Delaware DOJ forwards the petition to the Family Court without validating the information contained therein for accuracy (Id. ¶ 171); (3) the Family Court, through a mediator, issues a summons to the non-custodial parent, denies the non-custodial parent an opportunity to contest the petition, and seizes the non-custodial parent's property in violation of the Fifth and Fourteenth Amendments to the Constitution (Id. ¶ 172); and (4) the purpose of the State's denial of the non-custodial parent's constitutional rights is to "assure the continuation of the Federal Financial Assistance of their Child Support Enforcement Program," through depriving the non-custodial parent's due process rights, unconstitutionally taking the non-custodial parent's wages, and violating the non-custodial parent's rights to effective counsel and an impartial judge.  (Id. ¶ 174-78.)

Finally, with respect to the Ad Hoc Committee, Joynes alleges that it enables the other defendants to "accomplish their mission consistently."  (Id. ¶ 179.)  The Ad Hoc Committee, appointed by the Honorable Vincent Poppiti, then Chief Judge of the Family Court, evaluates the child support guidelines every four years, as required by Title IV-D of the Social Security Act.  (Id. ¶ 180.)  Joynes claims that the Ad Hoc Committee is made up of members who write the rules and then "sit on the bench and rule on the rules they . . . wrote."  (Id. ¶ 181.)  Joynes alleges that, by making their own rules and then ruling on them, the Ad Hoc Committee has "ensured that their rules will be 'set in stone,'" and violated his rights under the due process clause of the Fourteenth Amendment and the Sixth Amendment.  (Id. ¶ 183.)  According to the complaint, the Ad Hoc Committee's actions have allowed it to receive a "financial windfall" through a trail of "conspiracy and deception."  (Id. ¶ 185.)  To this end, Joynes claims that the Ad Hoc Committee "circumvents public scrutiny by having closed door meetings and deliberations," in violation of the First

7

Amendment.  (Id. ¶ 186.)

On December 15, 2005, Demsey and Lewis filed a Motion to Dismiss for Failure to State a Claim (D.I. 7.)  On December 29, 2005, the state defendants filed a Motion to Dismiss (D.I. 8) Joynes claims under the following theories: (1) the individual defendants in their official capacities, the State Agency Defendants, and Ad Hoc Committee are immune from suit under the Eleventh Amendment; (2) Commissioners Sackovich and Herlihy, Judge Conner, and Fitzgerald are entitled to judicial or quasi-judicial immunity from suit for their actions in connection with the child support proceedings; (3) Spizzirri is entitled to prosecutorial immunity for his actions in connection with the child support proceedings; (4) Joynes has failed to allege personal involvement by Meconi, Hayward, Governor Minner, and the individual Ad Hoc Committee members, as required by 42 U.S.C. § 1983; (5) the criminal statutes on which Joynes bases his claims do not confer a private right of action; (6) Joynes has failed to state claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985; (7) Joynes has failed to state a claim for a civil RICO violation; and (8) dismissal of the supplemental state law claims is appropriate and within the court's jurisdiction.

## III.   STANDARD OF REVIEW

The defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993).  Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true.  *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  In particular, the court

looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and

to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Twp.*, 838

F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions'

or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132

F.3d 902, 906 (3rd Cir.1997). A court should dismiss a complaint "only if it is clear that no relief

could be granted under any set of facts that could be proved consistent with the allegations." *See*

*Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)). However, *pro se* complaints are held to "less stringent standards than formal pleadings

drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt

that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## IV.    DISCUSSION

### A.    Sovereign Immunity

Joynes brings this civil rights suit against the individual defendants in their official and

individual capacities, the State Agency Defendants, and the Ad Hoc Committee. The individual

defendants contend that they are entitled to Eleventh Amendment immunity for claims brought

against them in their official capacities. The State Agency Defendants and the Ad Hoc Committee

content that they are entitled to immunity because they are agencies, or arms, of the State. A suit

against a state agency or state official in his or her official capacity is treated as a suit against the

state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is so because neither a state nor its officials

acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*,

491 U.S. 58, 71 (1989). While a state is normally entitled to sovereign immunity, Congress may

abrogate the state's immunity through a valid exercise of its power, or the state itself may waive its immunity. *See Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190, 195 (3d Cir. 2000).

Neither of the two above-mentioned sovereign immunity exceptions are relevant here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam*, 488 F. Supp. 775, 780 (D. Del. 1980) (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia*, 224 F.3d at 195. Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity. *See Ospina v. Dept. of Corr.*, 749 F. Supp. 572, 579 (D. Del. 1990). Therefore, the court concludes that Delaware has not clearly waived its immunity.

Finally, Congress has not abrogated the states' immunity for claims under Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Since Delaware's immunity has not been waived or abrogated, the court will dismiss Joynes' claims against the individual defendants in their official capacities, as well as his claims the State Agency Defendants and the Ad Hoc Committee.[3]

### B.    Judicial and Quasi-Judicial Immunity

As mentioned above, Joynes has brought claims against Commissioner Sackovich, Commissioner Herlihy, and Judge Conner. Joynes' claims against these defendants fail, however,

---

[3] The Ad Hoc Committee is properly considered an "arm of the state" for purposes of Eleventh Amendment immunity because its members are appointed by the Chief Judge of the Family Court, an arm of the state, and consist of Family Court Commissioners and Judges. Additionally, it functions to aid the Family Court in fulfilling its responsibilities under Title IV-D of the Social Security Act. *Cf. Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J. 1996) (finding that the Eleventh Amendment bars claims brought against a court committee established by court rule).

because judges[4] are absolutely immune from suits for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Moreover, judicial immunity can be overcome only if the judge has acted outside the scope of his or her judicial capacity or in the "complete absence of jurisdiction." *Id.* at 11-12. In the present case, Joynes' complaint contains no allegations that Commissioners Sackovich or Herlihy, or Judge Conner either acted outside the scope of their judicial capacity or in the complete absence of jurisdiction. Rather, Joynes' complaint expresses dissatisfaction with the judges' rulings. For example, Joynes alleges that Judge Sackovich erred in finding him liable for support because it was contrary to the proof he provided at the proceeding. (See D.I. 2 ¶ 96.) Joynes' complaint contains similar allegations with respect to Commissioner Herlihy and Judge Conner. Therefore, because Commissioners Sackovich and Herlihy, and Judge Conner are immune from suit for monetary liability, the court will dismiss Joynes' claims against them.

In a like manner, Mediator Fitzgerald is immune from suit. Even if the court does not consider Fitzgerald as a judicial official entitled to judicial immunity, at the very least, she is entitled to quasi-judicial absolute immunity. Quasi-judicial absolute immunity attaches when a public official's role is "functionally comparable" to that of a judge. *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)); *Harper v. Jeffries*, 808 F.2d

---

[4] Commissioners of the Family Court are entitled to judicial immunity because they perform most of the same functions as a Family Court judge. *See* Del. Code Ann. tit. 10, § 915(c) (Each Commissioner appointed by the Governor shall have, among other things, the power to: (1) hear any civil case within the jurisdiction of the Family Court; (2) order the issuance of legal process to compel the attendance of necessary parties and witnesses; (3) administer oaths and affirmations, and take acknowledgments, affidavits and depositions; (4) examine parties and witnesses; (5) accept pleas; (6) enter sentence for criminal felonies; and (7) impose sanctions).

281, 284 (3d cir. 1986) (finding that state parole board members were "entitled to quasi-judicial immunity when engaged in adjudicatory duties").  Factors in determining whether a public official's role is functionally comparable to that of a judge, thereby entitling her to quasi-judicial immunity, include: (1) whether the official performs a traditional adjudicatory function, in that she decides facts, applies law, and otherwise resolves disputes on the merits; (2) whether the official decides cases sufficiently controversial that, in the absence of absolute immunity, she would be subject to numerous damages actions; and (3) whether the official adjudicates disputes against a backdrop of multiple safeguards designed to protect the parties' constitutional rights. *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006).

Here, Fitzgerald is employed as a mediator by the Family Court.  Family Court Civil Procedure Rule 16 requires, in child support proceedings, "a mediation conference(s) with the parties . . . [to] be held by a Court staff mediator to identify the specific areas at issue and to attempt amicable settlement of all unresolved issues. . . ."  Family Court R. Civ. P. 16(a).  In other words, Fitzgerald's assigned tasks include identifying factual and legal issues, coordinating the parties' settlement efforts, and attempting to settle child support issues.  *See* Family Court R. Civ. P. 16(a). In order to accomplish her tasks, Fitzgerald must use her discretion or independent judgment, which has been described as "a key feature of the tasks sheltered by judicial immunity."  *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (holding that a court appointed mediator is protected by quasi-judicial immunity).  Clearly, Fitzgerald performs functions for the Family Court that are integral to the judicial process.  Therefore, the first *Dotzel* factor weighs in favor a finding of immunity.

Likewise, the second factor weighs in favor of immunity. "Although a mediator . . . makes no final adjudication, he must often be the bearer of unpleasant news – that a claim or defense may be far weaker than the party supposed." *Wagshal*, 28 F.3d at 1253. Additionally, because the losing party cannot sue the judge, who is cloaked with judicial immunity, the mediator's decisions may prompt the party to pursue damages against her in a second forum. *Cf. Butz*, 438 U.S. at 512 ("The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus.") Here, absent immunity, the parent disappointed by the results of the pretrial mediation conference might be determined to recoup his or her losses by filing a suit in federal court. *Wagshal*, 28 F.3d at 1253. Providing a court mediator with immunity will serve to obviate the temptation on the part of the losing party "to sue the messenger whose words foreshadowed the final loss." *Id.* Accordingly, this factor weighs in favor of immunity.

The third of the *Dotzel* factors, whether the official adjudicates disputes against a backdrop of multiple safeguards designed to protect the parties' constitutional rights, is also present. As previously discussed, here, Fitzgerald, as a mediator, serves to focus the issues and attempt an amicable settlement between the parties. If no settlement is reached at the completion of the mediation process, however, the court will schedule a trial in the action, during which an unsatisfied litigant could seek relief from misconduct by the mediator. Family Court R. Civ. P. 300(a). Indeed, these are the steps that Joynes took in the present case. First, Joynes participated in a mediation conference, which resulted in an interim child support order. (See D.I. 2 ¶¶ 79-80.) Dissatisfied with the result, Joynes requested a hearing in Family Court. (Id. ¶ 80.) His case was scheduled to be heard by Commissioner Sackovich on April 12, 2004. (Id. ¶ 90.) During his hearing, Joynes was able to present his views as to the propriety of Fitzgerald's interim support order. (Id. ¶¶ 91, 93-96.)

13

Thus, the court concludes that there are safeguards in place, such as a hearing on the mediator's child support order, to protect the parties' constitutional rights. Having determined that all three *Dotzel* factors weigh in favor of quasi-judicial immunity for Fitzgerald, and that she is, therefore entitled to quasi-judicial immunity, the court will dismiss Joynes claims against her.

### C. Prosecutorial Immunity

Spizzirri has moved to dismiss the claims against him on the ground of prosecutorial immunity. Spizzirri asserts that he acted in his prosecutorial capacity in Joynes' child support proceedings and, as such, enjoys absolute immunity. The court agrees.

Prosecutors are afforded absolute immunity for all activities relating to judicial proceedings. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). The Third Circuit has defined the scope of absolute immunity for prosecutors as follows:

> This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out of court behavior "intimately associated with the judicial phases" of litigation. *See id.*; *Fry* [*v. Melaragno*], 939 F.2d [832, 838 (9th Cir. 1991)] (activity occurring as part of presentation of evidence is absolutely protected). By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. *Imbler*, 424 U.S. at 430-31.

*Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992)). A prosecutor's decision whether to initiate a prosecution is protected by absolute immunity, because that decision "is at the core of a prosecutor's judicial role." *Kulwicki*, 969 F.2d at 1463-64 (citing *Imbler*, 424 U.S. at 430-31).

In the present case, Joynes appears to allege, at most, that Spizzirri engaged in malicious prosecution. (See D.I. 2 ¶ 15.) However, Joynes has presented no facts to support this allegation. Indeed, Joynes' complaint even states that Spizzirri was acting in his capacity as a prosecutor for the state. That is, Joynes alleges that "Spizzirri was prosecuting the case for Denise Lewis and the

Delaware Division of Child Support Enforcement." (Id. ¶ 92.) Consequently, no relief could be granted to Joynes under any set of facts that could be proven consistent with his claims against Spizzirri. As such, the court will dismiss Joynes' claims against Spizzirri.

### D.      Respondeat Superior

Joynes also brings claims against Meconi, Hayward, and Governor Minner for violating his civil rights. More particularly, Joynes alleges that Meconi, the Secretary of the DHSS, "is responsible for the administration of social programs in the State, including the administration of the Child Support Enforcement program." (D.I. 2 ¶ 10.) Joynes further alleges that Hayward, the Director of the DCSE, is "responsible for overseeing the Child Support Enforcement Agency program administration and implementation in the State of Delaware." (Id. ¶ 11.) Minner is the Governor of the State of Delaware. (Id. ¶ 24.) As previously discussed, Joynes alleges that he sent letters to Meconi, Hayward, and Governor Minner, on July 12, 2004, July 25, 2004, and July 27, 2004, respectively, regarding Lewis' claim that he failed to support his children, and the miscalculation of his arrearage by the Family Court. (Id. ¶ 114.) According to Joynes, Meconi and Hayward responded to the letters, but Minner "left it up to Hayward and Meconi to settle [his] questions." (Id. ¶ 116.) Both responses are partially reproduced in the complaint. (See id. ¶¶ 113, 115.)

As previously mentioned, Hayward's letter, dated July 27, 2004, discusses the procedures used by the DCSE to verify an agency application in order to prepare a support petition. (Id. ¶ 113.) Meconi's letter "attempt[s] to better clarify the process" of initiating a case for child support enforcement. (Id. ¶ 116.) The letter explains that the DCSE files a petition for child support much like an individual "walks into the court and files a petition on his or her own." (Id.) According to

the letter, "[t]he hearing is the fact-finding venue, where the court gathers the evidence presented by the parties," and then enters an order based on the evidence presented. (Id.) The individual's right to due process "comes during the court hearing." (Id.) Finally, the letter states that the paragraphs of the petition are "merely . . . allegation[s]," and "not meant to be a negative or discriminatory remark toward the respondent." (Id.) Joynes filed claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against Meconi, Hayward, and Governor Minner, based on the above-described letters, which were sent to Joynes after the support order was entered in the Family Court proceedings. These defendants have moved to dismiss the section 1983 claims against them, arguing that Joynes has failed to allege personal involvement by them in any deprivation of a federal right.

Additionally, Joynes alleges that the individual members of the Ad Hoc Committee violated his civil rights. Joynes does not make any specific allegations with respect to the individual members. In fact, there is no mention of the individual Ad Hoc Committee members anywhere in the complaint, other than the caption. The members are not even listed individually in Joynes' "Parties" section of his complaint, wherein he lists every other individual defendant. Instead, they are treated as one defendant: the Delaware Support Ad Hoc Committee. These defendants also move to dismiss Joynes' section 1983 against them based on lack of personal involvement in the alleged wrongs.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Here, Meconi, Hayward, Governor Minner, and the individual Ad Hoc Committee members do not dispute that they are state actors. Rather,

16

these defendants contend that they had no personal involvement in any violation of Joynes' rights. The Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  In other words, a plaintiff must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover.  *Rode*, 845 F.2d at 1207.  A plaintiff establishes a causal connection by showing that the defendants were personally involved in the alleged deprivation of his or her constitutional rights through allegations of either personal direction or actual knowledge and acquiescence.  *Id.*  Finally, a plaintiff must allege personal involvement with particularity, stating the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.3d 75, 80 (3d Cir. 1980)).

It appears from the complaint that Joynes named Meconi, Hayward, and Governor Minner defendants based solely upon their supervisory positions.  It is well established, however, that supervisory liability cannot be imposed under section 1983 on a respondeat superior theory.  *See Monell*, 436 U.S. 658; *Evancho*, 423 F.3d at 353 ("'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'") Supervisory liability may attach only if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.  *Sample v. Diecks*, 85 F.2d 1099, 1117-18 (3d Cir. 1989).

Here, nothing in Joynes' complaint indicates that Meconi, Hayward, or Governor Minner

17

were "the moving force behind" the alleged violations. Moreover, the complaint does not allege that any of these defendants were involved in the child support proceedings, or the entering of the child support order, which are the actions that Joynes' complains violated his constitutional rights. Finally, the complaint does not indicate that these defendants were aware of Joynes' allegations and deliberately indifferent to his plight. *Jones v. Delaware State Police*, No. Civ. A. 02-1637-KAJ, 2006 WL 1896200, at *4 (D. Del. July 11, 2006) (citing *Sample*, 85 F.3d at 1118). At most, Joynes complaint alleges supervisory liability for the actions taken by the DCSE and the Family Court in entering and enforcing the child support order. Indeed, the letters that Joynes cites support the court's conclusion. Joynes' letters were not sent to Meconi, Hayward, and Minner until after the alleged deprivation of constitutional rights occurred – i.e. after the child support proceedings were completed and the child support order was entered and enforced. Given the foregoing, the court concludes that Joynes' complaint fails to state a claim for civil rights violations upon which relief may be granted as to Meconi, Hayward, and Minner. Thus, the court will dismiss Joynes' section 1983 claims against these defendants.

The court will also dismiss Joynes' section 1983 claims against the individual Ad Hoc Committee members, because Joynes does not allege that they were personally involved in any deprivation of his civil rights. Joynes' complaint fails to state any allegations concerning any individual Ad Hoc Committee member, much less the particularized allegations of conduct, time, place, and persons responsible required to state a section 1983 claim. That is, Joynes' allegations of civil rights violations pertain only to the Ad Hoc Committee as a whole, and not to the individual members. For example, Joynes alleges that "[t]hey [the Ad Hoc Committee] have been able to establish vague and ignorant rules and laws pertaining to child support." (D.I. 2 ¶ 23.) These

allegations, however, are not sufficient to state a claim against the individual Ad Hoc Committee members.  Accordingly, the court will dismiss Joynes' section 1983 claims against them.

      **E.**      **Joynes' Claims Arising Under Criminal Statutes**

Joynes' complaint alleges that the defendants violated several criminal statutes, including 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 1503 (influencing or injuring officer or juror), 18 U.S.C. § 1512(b),(c),(d) (tampering with a witness, victim, or informant), 18 U.S.C. § 1581 (peonage; obstructing enforcement), 18 U.S.C. § 1584 (sale into involuntary servitude), and 18 U.S.C. § 1589 (forced labor).  These statutes pertain to criminal proceedings and do not confer jurisdiction as to the civil controversy described in the complaint.  *Nat'l Bank of Mattoon v. Daviditis*, 262 F.2d 884, 886 (7th Cir. 1959); *Sordean v. United States*, NO. C 94-2387 FMS, 1995 WL 86548, at * 2 (N. D. Cal. Feb. 24, 1995).  The statutes Joynes alleges that the defendants violated all impose criminal penalties on persons found guilty of violating their provisions.  The decision of whether to prosecute, and what criminal charges to bring generally rests with the prosecutor.  *See United States v. Batchelder*, 442 U.S. 114, 124 (1979).  Finally, a private cause of action is not authorized by any of the statutes that Joynes alleges the defendants have violated. *See Stern v. Halligan*, 158 F.3d 729, 731 n.1 (3d Cir. 1998) (finding no private cause of action under 18 U.S.C. § 241); *Thompson v. Kramer*, Civ. A. No. 93-2290, 1994 WL 725953, at * 15 (E.D. Pa. Dec. 29, 1994) (citing *Harberson v. Hilton Hotels Corp.*, 616 F. Supp. 864, 866 (D. Colo. 1985), for the proposition that no private cause of action exists under 18 U.S.C. § 1503); *Gipson v. Callahan*, 18 F. Supp. 662, 668 (W.D. Tex. 1997) (section 1512 does not provide a private right of action); *Turner v. Unification Church*, 473 F. Supp. 367, 375-75 (D.R.I. 1978) (no private cause of action under 18 U.S.C. § 1581, and no private cause of action generally arising out of the Thirteenth Amendment);

*Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 301 n.5 (D.D.C. 2005) (no private cause of action under 18 U.S.C. § 1584). Given the foregoing, the court will dismiss Joynes' claims against the defendants for violations of criminal statutes.

### F.    State Actors

Joynes also brings Section 1983 claims against Lewis and Demsey. Although Joynes claims that Lewis and Demsey are "cloaked 'under the color of law,'" neither of these defendants fit within the meaning of "state actor" under section 1983.

As previously discussed, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under "color of state law," a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49. Here, Lewis is a private individual who took legal measures to obtain child support for her and Joynes' son. Demsey is merely the lawyer who represented Lewis in the legal proceedings. Quite simply, these defendants are not "clothed with the authority of state law." *See Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d Cir. 2004). As such, the court will dismiss Joynes' section 1983 claims against Lewis and Demsey.

### G.    Joynes' Section 1981 and 1985 Claims

Joynes' complaint alleges that most, if not all, of the defendants violated his civil rights pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1985. Having already dismissed all claims against the Delaware State Agencies, the Ad Hoc Committee, Commissioners Sackovich and Herlihy, Judge Conner, Fitzgerald, and Spizzirri, the court will only address Joynes' claims as they pertain to the

remaining defendants, Meconi, Hayward, Governor Minner, Lewis, Demsey, and the individual Ad Hoc Committee members.

       1.    Joynes' Section 1981 Claims

Count Three of Joynes' complaint seeks to hold Meconi, Hayward, Governor Minner, Lewis, Demsey, and the individual Ad Hoc Committee members liable for violations of his civil rights under 42 U.S.C. § 1981(a), which states:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  In order to state a claim under section 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts. . . ." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citation omitted).

After having considered the allegations in the complaint, the court concludes that Joynes has failed to demonstrate intentional discrimination on the part of Meconi, Hayward, Governor Minner, Lewis, Demsey, or the individual Ad Hoc Committee members.  Joynes' complaint is completely devoid of any allegations concerning discrimination on the basis of race, including any allegation that is he a member of a racial minority.  Also absent from Joynes' complaint are any allegations regarding the one or more activities enumerated in the statute.  Indeed, the only allegation in Joynes' complaint regarding section 1981 is the language of the statute itself.  Therefore, the court concludes that Joynes has not stated a claim for the violation of 42 U.S.C. § 1981, and will grant the

defendants' motion to dismiss his section 1981 claims.

        2.        Joynes' Section 1985 Claims

Joynes has also brought conspiracy claims against Meconi, Hayward, Governor Minner, Lewis, Demsey, and the individual Ad Hoc Committee members, pursuant to 42 U.S.C. § 1985(2) and (3).  Section 1985 prohibits conspiracies motivated by racial or class-based discrimination.  The court will first examine Joynes' claim under section 1985(2), and then turn to his claim under section 1985(3).  In order to state a claim under 42 U.S.C. § 1985(2), which provides a cause of action against persons who conspire to obstruct justice, Joynes must allege that:

> two or more persons . . . conspired to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . ; or two or more persons conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).  The two categories in which a cause of action under Section 1985(2) will lie are "(1) when there has been obstruction of justice, including, for instance, intimidating or injuring a witness, and (2) when there has been a conspiracy for the purpose of impeding the due course of justice in any state or territory." *Altieri v. Penn. State Police*, No. Civ. A. 98-CV-5495, 2000 WL 427272, at *16 (E.D. Pa. Apr. 19, 2000) (citing *Messa v. Allstate Ins. Co.*, 897 F. Supp. 876, 881 (E.D. Pa. 1995)).  Joynes' complaint fails to state upon which category of Section 1985(2) he bases his claim.  However, an analysis under either category demonstrates that Joynes' Section 1985(2) claims must fail.

        Turning to the first category of Section 1985(2), Joynes has not alleged that there was any

obstruction of justice involving a witness or prospective witness in a federal court proceeding. Indeed, his complaint alleges only the defendants "had full knowledge of the wrongs conspired to be done as alluded to in 42 U.S.C. § 1985, or wrongs about to be committed, and having the power to prevent or aid in preventing the same, neglected or refused to do that which by reasonable diligence could have prevented."  (D.I. 2 ¶¶ 10-17, 20, 22-26.)  With respect to the second category of Section 1985(2), Joynes has not alleged any facts to support a claim that a conspiracy existed to obstruct justice in a manner that would deprive him of equal protection of the law.  *See Altieri*, 2000 WL 427272, at *16.  That is, although Joynes broadly alleges a conspiracy in his complaint, he has failed to allege specific facts that reveal how these defendants acted in concert to deprive him of his constitutional rights.

Likewise, Joynes has failed to state a claim under section 1985(3), which provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  In order to state a claim under section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)

23

(citing *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 835, 828-29 (1983); *Griffen v Breckenridge*, 403 U.S. 88, 102 (1971)).  Here, as with his section 1985(2) claims, Joynes merely states the language of the statute and makes broad allegations with respect to a conspiracy and the deprivation of his right to equal protection of the laws.  These allegations are not sufficient to uphold a claim for conspiracy under section 1985(3).  For these reasons, the court will dismiss Joynes' section 1985 claims against Meconi, Hayward, Governor Minner, Lewis, Demsey, and the individual Ad Hoc Committee members.

### H.     Joynes' Civil RICO Claims

Joynes alleges civil RICO claims against the defendants.  To advance a civil claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedema, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)).  A "pattern of racketeering activity" requires at least two "predicate acts," which may include mail fraud or obstructing justice.  *Id.*; 18 U.S.C. § 1961(1), (5).  After reviewing Joynes' complaint liberally, and in the light most favorable to him, the court concludes that it is devoid of any language that could be construed to allege a civil RICO violation.  In fact, the word RICO, or any reference thereto, appears in only one paragraph of Joynes' complaint – paragraph 8, in which Joynes states, in the form of a laundry list, the claims he is asserting against the defendants.  The complaint does not even discuss a "pattern of racketeering activity," as required by the Third Circuit.  Thus, the court concludes that it appears beyond doubt that Joynes can prove no set of facts in support of his civil RICO claims that would entitle him to relief.  Accordingly, the court will dismiss these claims.

### I.      Joynes' State Law Claims

24

Joynes' complaint brings state law claims against the defendants for intentional infliction of emotional distress and negligent infliction of emotional distress.  (D.I. 2 ¶ 8.)  The only basis for the court to consider these claims is under supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. Once a court dismisses a plaintiff's federal claims, it is within its discretion to retain jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367; *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 444 (3d Cir. 1997).  Section 1367 states, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3).  Here, the parties have not yet engaged in discovery or invested significant resources in litigating the state law claims in this forum.  Thus, declining to exercise jurisdiction in this matter "would not be unfair to the litigants or result in waste of judicial resources."  *Queen City Pizza*, 124 F.3d at 444.  Given the foregoing, the court will dismiss Joynes' state law claims without prejudice to his ability to bring them in state court.

Dated: September 30, 2006                                     /s/ Gregory M. Sleet                         
                                                                            UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY N. JOYNES,                      )
                                        )
                        Plaintiff,      )
                                        )
        v.                              )        Civil Action No. 05-332 GMS
                                        )
VINCENT P. MECONI, et al.,              )
                                        )
                        Defendants.     )
                                        )

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.    Demsey and Lewis' Motion to Dismiss for Failure to state a Claim (D.I. 7) is

      GRANTED.

2.    The state defendants' Motion to Dismiss (D.I. 8) is GRANTED.

3.    The court will dismiss Joynes' federal claims with prejudice.

4.    The court will dismiss Joynes' state claims without prejudice to his ability to bring

      them in a state court action.

5.    The Clerk of Court is directed to close this case.

Dated: September 30, 2006                        /s/ Gregory M. Sleet
                                                 UNITED STATES DISTRICT JUDGE